*IN THE UNITED STATES DISTRICT COURT*
*FOR THE WESTERN DISTRICT OF MICHIGAN*
*SOUTHERN DIVISION*

UNITED STATES OF AMERICA,

Plaintiff,

vs. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL,

Defendant.
______________________________________/

*MOTION HEARING*

*BEFORE THE HONORABLE RAY KENT*
*United States Magistrate Judge*

*Grand Rapids, Michigan, Thursday, March 14, 2024*

APPEARANCES:

For the Plaintiff: TIMOTHY P. VERHEY
U.S. Attorney
330 Ionia Ave., NW
Grand Rapids, MI 49501
(616) 456-2404

For the Defendant: PARKER DOUGLAS
Federal Public Defender
50 Louis St. NW, Ste. 300
Grand Rapids, MI 49503
(616) 742-7420

REPORTED BY: TRISHA N. CAMERON, CSR, RMR, CRR, RDR
Federal Official Court Reporter
128 Federal Building
Lansing, Michigan 48933

Grand Rapids, Michigan
March 14, 2024
2:04 p.m.

*PROCEEDINGS*

THE CLERK: The United States District Court fort western district of Michigan is now in session. The Honorable Ray Kent, United States Magistrate Judge, presiding. Please be seated.

THE COURT: This is 23-cr-44, United States versus Samuel Kuhl. Mr. VerHey on behalf of the United States. Mr. Douglas on behalf of Mr. Kuhl, who's not with us because he has been determined to be incompetent by the Department of Justice and is presently awaiting restoration therapy.

We're here on Mr. Douglas' motion to compel transport. I've read the motion. Mr. VerHey filed a brief in opposition. I've read that. I also -- I don't suppose either side got the slideshow, which Deputy Walkington provided to chambers.

I don't know if he was intending me to share that or not. So maybe I won't right now.

But, Mr. Douglas, I've read your brief. Anything else you want to say?

MR. DOUGLAS: Just in response to some of the representations in Mr. VerHey's brief. He suggests that there's no evidence of decompensation. I anticipate he'll

show you an exhibit that he's just handed me. It looked very much like the complaints that his uncle has called me repeatedly about. So I don't know that he can represent Mr. Kuhl actually wrote it. He may have copied it. I don't know.

But I would say if we were going to get into debating whether there's been decompensation or not, I have about an hour of phone messages from Mr. Kuhl that I could produce. I think it's absurd --

THE COURT: I think we won't go there.

MR. DOUGLAS: I don't think we should go there either, Your Honor.

But I would say that it's frustrating on the defense side just because when you have a client waiting, to think that you might have to retain an expert to show decompensation while your client is waiting, you know, beyond the transport time is a pretty incredible financial economics shift in the proceedings.

THE COURT: You're not going to have to do that.

MR. DOUGLAS: Okay. I didn't anticipate we'd have time to, so...

THE COURT: Perfectly reasonable anticipation. But wrong, as it turns out.

MR. DOUGLAS: I understand. And I would have brought a Jackson motion. But I think my readings of the cases say

most Courts are going with around four months as the outside. But they'll read it, I think, because of the 120-day language in the statute.

THE COURT: Okay.

MR. DOUGLAS: But I didn't bring that because I didn't -- I've had Judge Beckering deny a motion like that previously.

THE COURT: Yeah. Anything you want to say, Mr. VerHey?

MR. VERHEY: No. I mean, I wanted the Court just to know basically what I heard from the Bureau of Prisons after I got the defense's motion. We did receive a pro se lawsuit from the defendant signed by him that does --

THE COURT: Did he sue you?

MR. VERHEY: The Justice Department.

THE COURT: Oh.

MR. VERHEY: He's probably smart enough that he knows that there's nothing to get from me. But that's just -- to me, that just bears on whether he's sliding down the scale of functioning or getting better or staying about the same. I mean, he seems to be at about the same high level of operation as he was before. He doesn't appear to be getting worse.

And so my only point in pointing that out was it doesn't seem like he is the kind of person that is going off the deep end, so to speak, mentally to jump the line in front

of everybody else.

It looks like he's been designated to go to Butner in June. That is a long time.

But as I attempt to point out, there is no drop dead date for when somebody begins their four-month period that I'm aware of, and delay is built into our system. I mean, I just sat here for the prior proceeding and heard you tell somebody they weren't going to get sentenced for about four months, and that's just built into the system. It's unfortunate, but there it is.

So I don't think under the circumstances that waiting until June is violating any due process standard, not that that's an issue that's being teed up for the Court today.

THE COURT: Right. Okay. Thank you. Yeah. I wouldn't have authority probably to rule on such a motion anyway.

But I can tell you I've got a very nice slideshow here prepared by somebody in the Bureau of Prisons, which goes through the whole process of designation. Let me just see if I can find -- I'm sure in color it's pretty snazzy. Black and white, not so much.

The wait list issue. The BOP is acutely aware and shares concerns regarding the waiting period for defendants determined not competent to stand trial to begin receiving competency restoration services. Butner and Springfield both

have waiting periods. Carswell typically does not. Waiting period has always waxed and waned. Currently approximately eleven weeks.

I can tell you that I talked to Deputy Walkington last week, I think, and Mr. Kuhl was 23rd in line and he is now 19th. So he's moving slowly up the list.

There's not much I can do, as far as I can tell.

Just in general, workarounds the delay that don't work include voluntary surrenders. Not that that's an option for Mr. Kuhl.

Release on bond. Personal recognizance. You know, report. Get yourself to BOP for treatment. Obviously not an option for him.

Line jumping. Judicial and/or attorney demands for defendants to move to the front of the sequencing line -- list at BOP FMC bed space causes delays for every other defendant prioritized on the sequence list, which, of course, impacts all of those other cases.

So I -- Mr. Douglas, I don't -- I don't think I have any basis on which to order Mr. Kuhl to move up in the line.

Do you know if he was -- obviously he wasn't good, which is why, I think, the government moved originally.

MR. DOUGLAS: And I was a little surprised by what I heard since we stipulated incompetency, Your Honor.

THE COURT: Yeah.

MR. VERHEY: Defense moved and he went to a BOP facility and he was found incompetent by them.

MR. DOUGLAS: We both moved, for the record.

THE COURT: Yeah. I think it was -- I thought the government moved. Whatever.

You know, he's been found incompetent, and they want -- they've recommended restoration. I'm going with their recommendation.

So I wish he was there now. I wish I could get him there sooner. I don't think I can.

If you think he's entitled to other remedies, like -- this is -- you believe the speedy trial violation, then, you know, you'd have to seek relief from the district judge.

MR. DOUGLAS: I understand.

THE COURT: I certainly don't have authority to -- so respectfully, motion denied.

MR. DOUGLAS: Thank you, Your Honor.

THE COURT: You're welcome. Anything else we should talk about? Mr. VerHey?

MR. VERHEY: Not on my side. Thank you.

THE COURT: Mr. Douglas?

MR. DOUGLAS: No. Thank you, Your Honor.

*(Concluded at 2:13 p.m.)*

*C E R T I F I C A T E*

I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.

/s/ Trisha N. Cameron
Trisha N. Cameron, CSR, RMR, CRR, RDR
U.S. District Court Reporter
Lansing, MI 48933