*IN THE UNITED STATES DISTRICT COURT*
*FOR THE WESTERN DISTRICT OF MICHIGAN*
*SOUTHERN DIVISION*

UNITED STATES OF AMERICA,

Plaintiff,

vs. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL,

Defendant.
_____________________________________/

*OMNIBUS HEARING*

*BEFORE THE HONORABLE RAY KENT*
*United States Magistrate Judge*

*Grand Rapids, Michigan, January 13, 2025*

APPEARANCES:

For the Plaintiff: TIMOTHY P. VERHEY
U.S. Attorney
330 Ionia Ave., NW
Grand Rapids, MI 49501
(616) 456-2404

For the Defendant: SCOTT GRAHAM
Scott Graham, PLLC
1911 West Centre Ave., Ste. C
Portage, MI 49024
(269) 327-0585

REPORTED BY: TRISHA N. CAMERON, CSR, RMR, CRR, RDR
Federal Official Court Reporter
128 Federal Building
Lansing, Michigan 48933

Grand Rapids, Michigan
January 13, 2025
10:27 a.m.

*PROCEEDINGS*

THE CLERK: The United States District Court for the Western District of Michigan is now in session. The Honorable Ray Kent, United States Magistrate Judge, presiding.

THE COURT: Alrighty. This is 23-cr-44, United States versus Samuel Kuhl. Mr. VeryHey on behalf of the United States. Mr. Graham on behalf of Mr. Kuhl.

We're here -- we have one, two, three -- five matters set for hearing. And they are, a hearing on Mr. Kuhl's competency. Assuming that he is found competent, we would then move to an initial appearance, an arraignment, a pretrial conference, and then a bond hearing.

Back on August 16th, 2023, Mr. Kuhl's then counsel, the Office of the Federal Public Defender, filed a motion for a competency evaluation, which I granted in an order dated the following day, August 17 of 2023, committing Mr. Kuhl to the custody of the Attorney General for placement at a medical facility for purposes of determining whether or not he was then competent to proceed with the case.

Mr. Kuhl was sent to the Metropolitan Correctional Center, tested, examined there, and the psychiatrist or psychologist, I guess, in charge issued a report. Let's see

what the date is. November 8 of 2023, finding that Mr. Kuhl was not at that time competent to proceed in this case and recommending that he be committed again for an additional period with the Attorney General for inpatient evaluation and restoration to competency pursuant to 18 USC 4241(d).

I then committed, in fact, Mr. Kuhl for an additional evaluation and restoration treatment by order dated December 20 of '23, which resulted in a report from Evan Dubois, forensic psychiatrist with the Bureau of Prisons in Butner, North Carolina, which is where Mr. Kuhl was sent for restoration proceedings.

And Dr. Dubois' conclusion contained in his summary and opinion, PageID.239, quote, although the determination of Mr. Kuhl's competency is ultimately a decision for the Court, it is my opinion Mr. Kuhl is not suffering from a mental disease or defect that would impair his competency-related abilities. Further on, he has demonstrated rational, coherent, and goal-directed behavior in many areas, including as it pertains to attempting to resolve his legal circumstances in various ways. And concludes that although Mr. Kuhl apparently did not participate in all aspects of the assessment and treatment, it was Dr. Dubois' opinion that he has a factual and rational understanding of the proceedings against him and can properly assist in his defense if motivated to do so and so finds that he is competent to

proceed in this matter.

Mr. VeryHey, has the government received a copy of Dr. Dubois's report?

MR. VERHEY: Yes, we have, Your Honor.

THE COURT: Any objections to that report?

MR. VERHEY: No.

THE COURT: Mr. Graham, have you and Mr. Kuhl received a copy of Dr. Dubois' report?

MR. GRAHAM: Yes, Your Honor.

THE COURT: And do you have objections to the report?

MR. GRAHAM: We don't have any objections to the Court's consideration of the report. We disagree with the conclusions, but we don't object to the form or tendering or consideration.

THE DEFENDANT: I have to disagree. I have to disagree. It -- I feel I have --

THE COURT: Mr. Kuhl, you've got a lawyer who's speaking for you today. You're not going to be allowed to speak on your own behalf today until I make a determination --

THE DEFENDANT: Listen, people have changed everything on the record.

THE COURT: -- that you are competent.

THE DEFENDANT: I'm asking to speak now, please. I'm not being disruptive. I'm asking to voice --

THE COURT: I'm sorry, sir. I know you're not, but

you don't --

THE DEFENDANT: -- my opinion. You just asked a question of what I feel. I feel I need to speak on what I feel here today.

THE COURT: Mr. Kuhl, I can't consider anything you say until I determine that you're competent. That's step one. After that, we'll see.

THE DEFENDANT: You know that I'm competent. This whole proceeding was incompetent from the start. We know that. Everyone here knows that.

THE COURT: Mr. Kuhl, to be found competent, disrupting the proceeding is not the way to get there. The way to get there is to let us continue, take the proceeding through to its conclusion, and if the evidence --

THE DEFENDANT: This report and proceeding is a violation of the law. The report is inadmissible. It has been submitted in violation of the law. It has been submitted in violation of my constitutional rights. It's been submitted in violation of my statutory rights. It's been admitted in violation of the rule against malicious vindicative retaliatory prosecution. Okay? That is the facts and that is what needs to be objected here today.

This proceeding is unlawful. It is unlawful, and I have asked to have it moot, to object to it.

I've only spoken with my attorney one time last night

for two hours. I never had a copy of any report from anywhere until last night. I never saw nothing from Chicago. You people have changed the record on everything here. Okay? We all know what happened here. Everyone knows the truth. Everyone knows about what's going on with my family.

I know that you used to be a public defender. I know that once I got rid of the public defender, the public defender turned around and appointed another person that they chose from their office, when they are supposed to be defending the public that you people say that I am against the public. I'm not against the public. You people are against the public. I know what's going --

Look at what happened with my family. When the -- everything here is clear as day. They are slowly but surely eradicating the -- it's -- I'm not a racist person at all. Okay? But what they're doing is they're slowly but surely erasing all of us, especially my brother. It's pure as day, man. I got the gentleman right there that you people took me from my mother and gave me to her brother that came and said, hey, you guys messed up, take these kids back, but they ran us down to the ghetto, and they got what they wanted, man.

THE COURT: Mr. Kuhl --

THE DEFENDANT: They got what they wanted.

THE COURT: -- I'm going to have you removed from the --

THE DEFENDANT: They got what they wanted.

THE COURT: -- courtroom here momentarily --

THE DEFENDANT: They got what they wanted.

THE COURT: -- if you can't control yourself and stop talking.

THE DEFENDANT: They got what they wanted, man. They got what they wanted, man.

THE COURT: All right. Are you done talking?

THE DEFENDANT: You know what I mean? Did you or did you not used to be a public defender, sir?

THE COURT: I sure did.

THE DEFENDANT: Didn't you -- didn't the people there obtain a report that I am supposedly a danger to the public?

THE COURT: We're not even remotely close to that issue yet. First --

THE DEFENDANT: How did you hold me for all this time without ever doing that? And why have you changed the record from me being a felon on federal probation weapons charge to now it's a sex charge? When originally I came in from the CPS, got attacked in MDOC, and all of my paperwork and everything that had to pertain to that came up missing? You know what I mean? Why? Why? Why when my mother came from CPS and told them, hey, you need to do a drug test on this person, whoa, whoa, whoa, why whenever the person from CPS gave us to all this stuff, why whenever my sister was, you

know --

MR. GRAHAM: Could I have a chance to address the Court?

THE COURT: One second.

THE DEFENDANT: I got to leave, man. We object to it. I don't know why he's not objected to it because it's all in violation of multiple laws. The Federal Rule of Criminal Procedure 48.

THE COURT: Mr. Kuhl, let your lawyer talk, please.

THE DEFENDANT: Sixth Amendment, speedy trial.

THE COURT: You're not helping yourself.

THE DEFENDANT: Speedy trial Act and constitutional right to a speedy trial.

THE COURT: Okay. I'm sorry, Mr. Graham. We're going to take Mr. Kuhl back --

THE DEFENDANT: Insanity Defense Reform Act, due process, abstention, the Fifth Amendment, everything. Everything, man. (Inaudible.) Call all your witnesses. I ain't got a witness on my list.

THE COURT: Take a seat, Mr. Graham, just for a moment. And could we get a deputy back in here after they have Mr. Kuhl secured.

Court Security Officer: Yes.

THE COURT: We're going to see if we can get some kind of video link back to the holding cell so that Mr. Kuhl

can at least hear what's happening here in the courtroom and see.

*(Recess taken at 10:37 a.m.)*

*(Reconvened at 11:17 a.m.)*

THE COURT: All right. We're back on the record in 23-cr-44, United States versus Samuel Kuhl. We broke because Mr. Kuhl was not able to stop interrupting the proceedings or unable to stop talking basically, and we were unable to go forward with the proceeding while he was being disruptive. I mean, I don't think -- I'm not -- I don't think he was being disruptive for the purpose of disrupting the proceedings. I think he simply was unable or unwilling to stop talking, and we can't go forward under those circumstances because the proceedings are recorded, and if people are talking over each other, it becomes unintelligible.

So we have set up a laptop with an audio and video link. Mr. Kuhl is in the marshals' lockup right now, but he can see and hear what is occurring here in the courtroom.

So my recollection of where we left off is Mr. Graham had said that he did not object to the report but disagrees with the report's conclusions.

So, Mr. VeryHey, does the government wish to offer additional evidence with respect to Mr. Kuhl's competence?

MR. VERHEY: Your Honor, I do think it would be helpful for you as the trier of fact on this issue to hear

from Dr. Dubois to elaborate somewhat on his report, and then I have a few items I would like you to consider that we would present through the case agent, Agent Buttery.

THE COURT: Okay. Before we -- who do you intend to call first?

MR. VERHEY: Dr. Dubois.

THE COURT: Okay. Just for the record, Dr. Dubois is appearing by video from the federal -- Dr. Dubois, are you in the federal medical center in Butner?

MR. DUBOIS: Yes, I am, Your Honor.

THE COURT: So let the record reflect that his testimony will be taken via some audio video platform. I'm not sure which one. But he is in Butner, and we are here in Grand Rapids.

Mr. VeryHey.

MR. GRAHAM: Your Honor, could I -- before we begin, could I be heard?

THE COURT: Of course, yes.

MR. GRAHAM: Your Honor, at this point, in light of what has transpired today and where we are in the big picture, my request is going to be that we adjourn all the proceedings today. The reason is that Mr. Kuhl has some very specific ideas about what's happening today, challenges to those, to what's happening, has some theories. I've talked with him about those, and I think that I understand them. But in

fairness to him and to the possibility of him getting into a position where he would sit in the courtroom and sit through proceedings, I would ask that we adjourn for a reasonable period of time so I can work with him.

I would note one thing. I specifically had the chance to talk with him about that, about the question of adjourning and about the question of whether there would be any objection based upon delay, and he told me that he had no objection to adjourning. He wanted an adjournment to be able to talk more about theories about why the delay in getting from the original order for competency evaluation until today has taken as long as it has and theories about whether or not the whole proceeding could be challenged.

So based upon, you know, his opinion, my evaluation of the situation, my desire to have him here during any testimony, and the fact that he has no objection to a delay and, in fact, asks for that, I would ask the Court to adjourn these proceedings for a reasonable period of time. Thank you.

THE COURT: Mr. Graham, does an incompetent defendant have a right to be present in the courtroom for proceedings?

MR. GRAHAM: I believe the answer -- my -- I haven't researched this, but I believe the answer is yes.

THE COURT: Mr. VeryHey, what's the government's position on that question?

MR. VERHEY: I also have not researched that, Your

Honor. So I don't know the answer. I wouldn't even hazard a guess.

THE COURT: That's probably the safer course.

MR. GRAHAM: It would be another reason, though, to adjourn so that we could research that alone, but I don't have an answer.

THE COURT: Okay. All right. Fair enough.

Mr. VeryHey, do you have a response to the request for adjournment?

MR. VERHEY: I understand everything that Mr. Graham has said. The only alternative I can offer is it seems to me that since Dr. Dubois is here and ready to testify and Agent Buttery is here ready to testify, we could proceed at least with that portion. If the defense wants to get an adjournment before you ultimately decide the issue of competency to do whatever they want to do, I think that you would be able to do that.

What I hear Mr. Graham saying is they have some procedural arguments unrelated to the question of competency. That is whether it's a due process violation to go forward because of the delay that they say was too long. But we still have to get past this issue of whether he's presently competent or not.

So we can do it -- we can put on some proof today. We can adjourn the whole thing. I can see reasons for that,

if Mr. Graham wants his client there telling him things in Court. But I think you could do either one.

THE COURT: Okay. Thank you, Mr. VeryHey.

Mr. Graham, it's my position, and I think I'm right, that, you know, Mr. Kuhl -- well, let me back up and say this. I mean, I appointed you to represent Mr. Kuhl. He has counsel. He speaks only through counsel.

Right now he is incompetent. I mean, that is my finding. And until I find him competent, he remains incompetent. And I'm not going to permit him to speak in court -- I may not permit him to speak in court at all, even if he's ultimately found competent. After that finding, I may still not allow him to speak in my court at least because he has a very fine lawyer representing him. But I certainly am not going to allow him to speak while he is still -- has been ruled incompetent.

So I would impress that upon him when you're talking to him, which is just my way of saying I think this -- the sooner we get over that hurdle, the competency hurdle, there may be advantages for Mr. Kuhl. I don't know.

But I'm going to grant your request for an adjournment.

Mr. Dubois, apologize for not getting you on the witness stand today. All of us in this room, Mr. Graham by appointment, the rest of us by employment contract, are in the

same situation. So I hope you bear that in mind.

MR. DUBOIS: I certainly do. I understand, Your Honor. Thank you.

THE COURT: Okay. All right. Mr. VeryHey, anything else from the United States?

MR. VERHEY: No, sir.

THE COURT: Mr. Graham, any notion of how long? I'd like to put some kind of outer limit on how long the adjournment --

MR. GRAHAM: My request would be something like 30 days.

THE COURT: Okay. Mr. VeryHey, any objection to 30 days?

MR. VERHEY: I have to be out of town a little bit in the next 30 days. But assuming we can find a time that works for everybody, I don't object.

THE COURT: I'm going to be out of town some of that time as well. But okay. We'll say 30 days, and we'll schedule it when everybody is available.

MR. GRAHAM: Thank you, Your Honor.

THE COURT: All right. Court adjourned.

*(Concluded at 11:27 a.m.)*

*C E R T I F I C A T E*

I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.

/s/ Trisha N. Cameron
Trisha N. Cameron, CSR, RMR, CRR
U.S. District Court Reporter
Lansing, MI 48933