*IN THE UNITED STATES DISTRICT COURT*
*FOR THE WESTERN DISTRICT OF MICHIGAN*
*SOUTHERN DIVISION*

UNITED STATES OF AMERICA,

Plaintiff,

vs. Case No: 1:23-cr-44

SAMUEL ALEXANDER KUHL,

Defendant.
_______________________________/

*MOTION HEARING*

*BEFORE THE HONORABLE RAY KENT*
*U.S. MAGISTRATE JUDGE*

*Grand Rapids, Michigan*
*March 6, 2025*

APPEARANCES:

For the Plaintiff: MR. JONATHAN C. ROTH
The Law Building
330 Ionia Avenue, NW
Grand Rapids, MI 49501-0208
(616) 456-2408

For the Defendant: MR. SCOTT G. GRAHAM
Scott Graham PLLC
1911 West Centre Avenue, Suite C
Portage, MI 49024-5399
(269) 327-0585

TRANSCRIBED BY: Genevieve A. Hamlin, CSR-3218 RMR, CRR
Federal Official Court Reporter
110 Michigan Avenue NW
Suite 601
Grand Rapids, MI 49503
(517) 881-9582

Grand Rapids, MI
March 6, 2025
1:33 p.m.

*PROCEEDINGS*

THE COURT: This is case number 24-cr-44, United States versus Samuel Kuhl. Mr. Roth subbing in for Mr. VerHey on behalf of the United States. Mr. Graham on behalf of Mr. Kuhl.

We're here on Mr. Kuhl's motion to proceed pro se. That appears in the Court's docket at ECF -- and I just -- my sweaty hand blurred the docket number. 87?

THE DEFENDANT: I believe so. I believe that's correct, Your Honor.

THE COURT: 87? Brenda, if you can take a quick peak just so we're sure?

MR. ROTH: Yes. 87 is the motion. 94 is the motion for the hearing.

THE COURT: Okay. Thank you.

All right. I have obviously read Mr. Kuhl's motion, 87. Mr. Roth, the government has not filed a response.

MR. ROTH: That's correct, Your Honor.

THE COURT: Does the government take any position?

MR. ROTH: No, Your Honor.

THE COURT: Okay. All right. Mr. Graham, anything that you wish to say before I begin? I have some questions

for Mr. Kuhl.

MR. GRAHAM: No, Your Honor, I have nothing before that occurs.

THE COURT: Okay. All right. Mr. Kuhl, do you still wish to proceed pro se?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Okay. Mr. Kuhl, have you ever been to law school?

THE DEFENDANT: No, sir.

THE COURT: Have you studied law?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Tell me about that. How have you studied law?

THE DEFENDANT: I've been into prison a few times but I never actually got interested in the law until now and I've taken every day that I've been incarcerated, that's all I do.

THE COURT: Okay. So in connection with this case you have been studying law which applies to this case; is that a fair statement?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Have you ever represented yourself in another criminal case?

THE DEFENDANT: No, sir.

THE COURT: Do you understand that in this case you are charged in count one with sexual exploitation of a minor?

The government is alleging that between May 13th and October 31st of 2021 that you persuaded or induced a 15-year old girl to engage in sexually explicit conduct.

THE DEFENDANT: Excuse me, Your Honor. I'd just like to state that they -- they allege that I used every means of influence over the minor. It has the word and preceding coerced within that indictment. It says employed, used, persuaded, induced, enticed, and coerced.

THE COURT: You know what, I'll do -- just so we get a clear record, which I think is what you're asking for --

THE DEFENDANT: Yes, Your Honor.

THE COURT: -- I'm going to read count one into the record.

THE DEFENDANT: Thank you.

THE COURT: So, in count one the government charges a crime it calls sexual exploitation of a minor. Between on or about May 13 and May 31, 2021, in the southern division of the Western District of Michigan, Samuel Alexander Kuhl knowingly employed, used, persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct which depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer. Specifically, the defendant used a 15-year old girl to engage in sexually

explicit conduct and received and stored photographs of that conduct using his Samsung and IPhone cellular phones, both of which were manufactured outside of the United States. So, do you understand the allegations against you in count one?

THE DEFENDANT: I believe that I understand what they are trying to allege. However, I feel that they are alleging it in an insufficient manner.

THE COURT: Okay. Fair enough. Count two the government charges a crime it calls coercion and enticement and attempted coercion and enticement. From on or about May 13 to October 31, 2021, in the southern division of the Western District of Michigan, Samuel Alexander Kuhl used facilities and means of interstate or foreign commerce to communicate with an individual under the age of 18 to attempt to knowingly persuade, induce, entice, and coerce that individual to engage in sexual activity for which any person could be charged with a criminal offense. Specifically, the defendant used cellular telephones and Facebook Messenger, all of which were facilities of interstate and foreign commerce, to communicate with minor one, a 15-year old female, in order to persuade, induce, and entice her to have sexual intercourse with him, conduct constituting third degree criminal sexual conduct under Michigan Compiled Laws Section 750.520d.

Do you understand the allegations in count two?

THE DEFENDANT: Again, I believe that -- I am not --

I am not -- I believe I understand what they are attempting to allege. However, it's insufficient and it's also duplicit, Your Honor.

THE COURT: Okay. And that's your --

THE DEFENDANT: My take.

THE COURT: Your take on the validity of the charges is a different question. This is just did you understand what they're alleging, not whether you -- not whether those allegations are legally sufficient or not, but just did you understand the allegations?

THE DEFENDANT: That is a difficult question to answer, Your Honor, due to the fact under the Sixth Amendment and the Fifth Amendment I am bound to be protected to, one, sufficiently be notified of what I am being accused of and, two, to be able to protect myself from future prosecution based on the same conduct or the same crime, basically, and double jeopardy. I feel that the way that this is worded on its face within its four corners is insufficient to do that, so for me to say that I understand what they are alleging would be contradictory to what really is the truth.

I understand the law and how that law is broken. I understand that. I completely understand that. However, I cannot honestly and lawfully say that I am sufficiently notified of what exactly -- how I am being accused of breaking that law, and I feel that the way that I am speaking is in --

should be sufficient enough to allow you to know that I can represent myself in this matter.

THE COURT: Mr. Kuhl, I have to be honest with you, I mean, my -- the impression I'm getting is exactly the opposite, and that is, if you don't understand -- I'm not -- again, to repeat myself, I'm not asking you to agree that these allegations are legally sufficient to charge you. I'm not suggesting that. I wouldn't ask you that question, or that there's evidence sufficient to charge you, I wouldn't ask you that question. I'm simply asking whether you understand the allegations, because if you don't understand the allegations, how can you possibly defend yourself against those allegations?

THE DEFENDANT: Well, Your Honor, that's half the issue why we're here today for me to represent myself is because the fact that the insufficiency, the ambiguity within the indictment, the omitting of certain language from the actual statute within the indictment and what is allegedly specified in the statement under the basic content of how the violation -- how the statute is violated, the offense, compared to what I have been provided with as far as discovery thus far does not adequately or sufficiently notify me of what they are alleging.

I understand completely the law and how it's stated, and I understand that they are saying that either one or

multiple minor females of the age of 15 or female was allegedly sexually abused by me. However, the exact content in which that occurred is not clear, and I can't say that it is and be honest with you today.

I understand how the law is broken. I understand that. I cannot understand by the face of this indictment if there is one minor, if there's two minors, if the attempted conduct is the same as the constituted conduct -- the alleged conduct that constitutes the completed offense. I can't tell by count one if I'm being alleged of receiving and storing photographs or am I being alleged of producing photographs with materials that were produced outside of the United States -- or that were transported in or -- in or affecting interstate or foreign commerce? I can't tell, did I persuade, use, employ, induce, entice, and coerce this female or did I use this female, allegedly, because the context in which the verb use is typically applied in violations of 18 USC Section 2251(a) is not a matter in which you would receive and store photographs of a minor engaging in sexually explicit conduct. The verb use is basically the most forceful or the most -- excuse me, the least forceful and the least -- it's typically where an accused surreptitiously records the minor or uses the minor without the minor being involved or actually aware that she was engaging in such visual depicting.

THE COURT: All right. Mr. Kuhl, based on your

answer I believe that you do understand the nature of the allegations against you, which is the question that I was trying to get an answer to.

Do you understand that if you're found guilty on count one, which is the sexual exploitation count under 2251(a), that there is a prison term which includes a mandatory minimum prison term of 15 years, a maximum term of 30 years, a fine of up to $250,000, supervised release following prison of not less than five years and up to the possibility of lifetime supervision, special assessments in the amounts of 100, 5,000, and a third in any amount up to $50,000.

If these victims have incurred losses because they needed medical treatment or psychological counseling or things of that nature you could be ordered to pay restitution. In fact, you must be ordered to pay restitution, and upon conviction you will be required to register as a sex offender.

Do you understand the potential maximum penalties on count one?

THE DEFENDANT: I just have one question. Did you say lifetime supervised release?

THE COURT: Yes, sir.

THE DEFENDANT: How is that possible if the maximum penalty is imprisonment for 30 years, Your Honor?

THE COURT: Yeah. You know, Congress passed the law

and provided that for crimes like this, and there are other crimes in the system; for example, certain drug dealing crimes carry a supervised release maximum of up to life. This is simply a crime that Congress thought, you know -- apparently thought, I don't know what Congress thinks, that's for sure, but that Congress decided would have a supervised release period which is longer than the prison period.

THE DEFENDANT: Yes, I understand the --

THE COURT: Okay.

THE DEFENDANT: -- penalties.

THE COURT: Then count two, the coercion and enticement under 18 USC 2422(b), the maximum -- the minimum prison term is ten years, the maximum prison term is life in prison. Again, a $250,000 fine. Again, supervised release of not less than five years and up to lifetime supervision, special assessments in this case in the amount of $100 and $5,000, restitution and, again, you would be required to register as a sex offender.

So, do you understand the maximum penalties on count two?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if you're found guilty of these charges that Judge Beckering could order you to serve the sentence on count two consecutive to the sentence on count one?

THE DEFENDANT: If she so chooses, Your Honor.

THE COURT: Do you understand that there are advisory sentencing guidelines that may have an affect on your sentence if you're ultimately found guilty on either count?

THE DEFENDANT: Excuse me?

THE COURT: Sure. No. I'm happy to repeat it. Do you understand that there are advisory sentencing guidelines which Judge Beckering would consult if, in fact, you're convicted on either count in determining your sentence?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if you represent yourself, you are on your own; neither I nor Judge Beckering can tell you or even advise you about how you should try your case?

THE DEFENDANT: You say that I'm on my own, and I do have a few things to address with that. One is a question of if I needed to need an expert on an opinion, whether it be electronic forensics or, you know, a sexologist or an expert of some nature, am I allowed as a pro se defendant to move under the Criminal Justice Act to have the government or the Court pay for a valid and verified expert?

THE COURT: I have to say I don't know the answer to that question. It's possible.

THE DEFENDANT: That brings me to another matter here. You say I'm completely on my own. However, I just

viewed here Mr. Graham asked that specific question of (inaudible) artificial intelligence. I am at this time a pretrial detainee; is that correct?

THE COURT: Yes. You're in -- I ordered you held in custody pending further proceedings before Judge Beckering, right.

THE DEFENDANT: Okay. And had I been a pretrial released person still going through court I would have access to such things as artificial intelligence or things of that nature, specifically to help me with questions like I just asked you, and I am being hindered in accessing things of that nature even more so in the facility that I'm being held at. It would probably be like that in almost any facility, although some states are allowing minor internet access for, you know, resourcing -- how do I say it, educational purposes.

I am wondering, because this jail, they offer some things but they don't offer everything, they don't even allow you to get books from a publisher or anything, it's been hindering me from getting legal materials and investigating this case, and discovery, things of those nature on my own time because I can't be sent these things from any family member or anyone unless it's a lawyer or a Court, which is also hindering me from validly researching and educating myself and learning the facts and the circumstances of all of

this, so back to the point of you saying I'm on my own, I am wondering if there is any way -- because I don't know if you're aware I've addressed this issue with a civil suit in this court, which you are presiding over, which we won't touch on too much, but it basically addresses the issue of me being able to access legal materials outside of the law library and books to educate myself and mail that pertains specifically to my criminal case that I need to research and I need to understand so that I can adequately prepare my defense.

THE COURT: Let me make a couple observations and then I want to hear the rest of what you had to say on this subject, but number one, I have not yet seen -- I've been told that you filed a lawsuit or maybe two lawsuits, I don't know, but I haven't seen those yet. They haven't reached my desk so I don't know what you're asking for in them.

There's no question that, you know, a person who is in custody has access to fewer resources than a defendant who is not in custody and certainly fewer resources than a lawyer who has -- makes his living or her living, you know, accumulating and applying that information.

THE DEFENDANT: Right.

THE COURT: Continue.

THE DEFENDANT: So, I mean, even with this -- there's things in here that say they have a recorded statement, I believe, of me on January 29, 2022, to the Michigan State

Police?

THE COURT: I'll take your word for it. I don't have the answer.

THE DEFENDANT: I believe that's what it says. I'm not certain. And they have other things of that -- how -- I need to view possibly the body cam footage and things of this nature. I know that they obviously are claiming there is some visual depictions here that I won't be able to view myself. Maybe I would be in the presence of the government. I'm not certain.

THE COURT: Yeah. Probably not, because your viewing of them, I think, would constitute -- could constitute a new crime.

THE DEFENDANT: Right. And that's why I was coming to question am I allowed to have the expert opinion of an actual, you know, paralegal or someone that can adequately inform me of their opinion on these alleged visual depictions?

THE COURT: Paralegal would be a different thing. You're asking if you can get an expert to, let's say, hypothetically answer the question is this -- is this really my statement or something?

THE DEFENDANT: Or is this -- is this even -- and when I say expert, I'm probably referring more to a person legally, like an attorney.

THE COURT: You have one sitting right next to you.

THE DEFENDANT: Are they able to view this visual depictions -- those photographs? Because it says I received and stored photographs specifically.

THE COURT: A lawyer, a defense lawyer is permitted -- it is not a crime for a defense lawyer to review evidence.

THE DEFENDANT: However, if I pursue pro se am I still allowed to have that happen?

THE COURT: I don't know.

THE DEFENDANT: You see, here we go. And this is why, you know, I can represent myself and I want to and that's what I am going to end up happening here today, but I will be striving to exercise every possible right to adequately prepare my defense and every avenue that you probably have never seen an incarcerated defendant ever do before.

THE COURT: Well, that's what we're here for.

THE DEFENDANT: And I believe some of these issues are not specifically related to the case itself but raise an issue of constitutional muster or matter which possibly I may have to appeal to the Sixth Circuit if I feel that I cannot adequately prepare my defense based on the hindrance and the hinderings of being incarcerated and the access to what I have, so I'm just -- I'm just informing the Court of what I am -- you know, specifically I wanted to know would I be allowed to have him or someone else, an expert -- a qualified

licensed attorney view such depictions?

THE COURT: If I grant your motion to continue pro se in your own defense, my suggestion to you would be that you file a motion with Judge Beckering and ask whether, you know, the Court would fund an expert for you.

THE DEFENDANT: Okay.

THE COURT: I don't know the answer. I'm not wildly optimistic that the answer would be yes, but I just don't know, but the way -- once -- assuming that I do grant your motion, then, you know, the way you ask these questions of the Court is, of course, through a motion filed in conformance with, you know, the rules of criminal procedures and the Court's local rules, and that's how you'll get answers to questions like that question.

All right. I think we covered sentencing guidelines. You're on your own. Are you familiar with the Federal Rules of Evidence?

THE DEFENDANT: Slightly.

THE COURT: Well, the Federal Rules of Evidence are going to control what evidence ultimately -- assuming the case gets to trial, and I don't know if it will or not, but if it does, those rules largely will control what evidence the jury sees and hears at trial, so you'll need to get familiar with them if you're proceeding pro se.

And those rules, by the way, the Rules of Evidence, I

mean, they'll apply to the government but they also apply to you, and they won't be relaxed for you because you're appearing pro se, and you're going to be held to the same standard as you would if Mr. Graham represented you, so there's not one standard and one set of rules for a defendant who has a lawyer and another set of rules for a defendant who does not. It's the same set of rules and you have to comply with them.

Are you familiar with the rules -- Federal Rules of Criminal Procedure?

THE DEFENDANT: Fairly.

THE COURT: Also obviously will be very critical in resolving issues that are going to come up as your case moves along.

Again, you understand that those rules govern the way a criminal action is tried in federal court, that you're bound by those rules, and they will not be relaxed for your benefit; do you understand that?

THE DEFENDANT: I hope they will not be relaxed for the -- for you guys' benefit either.

THE COURT: Well, I -- none of this benefits me or doesn't benefit me. They won't be relaxed to the benefit of the United States, if that's what you're suggesting.

THE DEFENDANT: That's the United States there?

THE COURT: That is. Mr. Roth is the representative

of the United States, which is -- you understand is the government that is prosecuting you in this case, right?

THE DEFENDANT: Is he a representative for this alleged minor female or is he a representative of the United States?

THE COURT: If you look at the indictment you'll notice in the upper left-hand corner it says United States of America, plaintiff, versus Samuel Alexander Kuhl, defendant, so it is the United States who is the plaintiff in the case just as you are the defendant, and the rules won't be relaxed for either side.

All right. Mr. Kuhl, I must advise you that in my opinion a trained lawyer would defend you far better than you can or could defend yourself. I think it's unwise of you to try to represent yourself. You're not familiar with the law. You're not familiar with court procedure. You're not familiar with the Rules of Evidence. I strongly urge you not to try to represent yourself.

Now, in light of the penalties, which we've covered, that you might suffer if you're found guilty and in light of all the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by a lawyer?

MR. ROTH: I apologize, may I interrupt for just a moment, just because this references the penalties. The one

thing the Court did not mention is that there's a criminal forfeiture as well, and just for completeness I wanted to mention that; the two cellphones.

THE COURT: Okay. So, in addition to potential life in prison your cellphones may also be -- ownership of them may be transferred to the United States at the end of the case. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. I'm going to reread that portion, that paragraph I just read.

Now, in light of the penalties that you might suffer if you're found guilty and in light of all the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by a lawyer?

THE DEFENDANT: Yes.

THE COURT: Is your decision entirely voluntary?

THE DEFENDANT: Yes.

THE COURT: I find that Mr. Kuhl has knowingly and voluntarily waived the right to counsel. I will, therefore, permit the defendant to represent himself.

Mr. Graham, would you consider serving as standby counsel in this matter?

MR. GRAHAM: Yes, Your Honor.

THE COURT: All right. Mr. Kuhl, I'm going to

appoint Mr. Graham as standby counsel. Now, what does that mean? What it means is Mr. Graham will be available should you change your mind and you get down the road, you know, a couple weeks or a month and you say, wow, I'm in over my head, you know, I can't get the information I need to defend myself because I'm in jail, Mr. Graham will pick up and take over from you.

What does standby counsel not mean? It doesn't mean that Mr. Graham's your law clerk. You know, you can't call Mr. Graham and say, Mr. Graham, I need a case that stands for this proposition or, Mr. Graham, I need you to prepare a motion on this point, so he's there standing by in the event you change your mind, but he does not work for you, he's no longer your lawyer representing you in this matter, and he's under no obligation to do what you ask him to do or tell him to do unless and until -- and even then he's under -- his only obligation is to do what his education and training and experience tells him is his duty in a particular situation, but he's going to continue as standby so that if you change your mind, he'll be there.

THE DEFENDANT: I just -- you said that I'm not allowed to ask if I know a case or if I reference a certain -- any material written by a law scholar or something like that I'm not allowed to have that provided to me via standby counsel?

THE COURT: What I'm saying is you can ask Mr. Graham anything you want to ask him. I'm not going to be involved in your communications after this moment so I suppose you can ask him anything you want. What I'm saying to you --

THE DEFENDANT: But he's not required to do this.

THE COURT: He's not required to do any of those things. What he's doing -- what he is agreeing to do by agreeing to take this standby counsel appointment is to be there to pick up your defense if you change your mind and decide you want a lawyer.

THE DEFENDANT: Now, what if I need access to those materials? What if there are things that I know specifically that I need or I do need to ask questions about matters that aren't specifically laid out in the law library or I don't know the exact case, because, as everyone knows, searching in the law library you have to be very innovative or, you know, creative in the terms that you search because it's (inaudible) and you can't hit the exact thing, you know, reading through a thousand cases before you come across what you see, so I'm just wondering, you know -- I guess I'm just trying to file a motion maybe, and then there's also issues, like I was saying, recordings or video footage, things that aren't allegedly sexually explicit or pornographic materials that are specifically related to discovery and evidence being used against me or the investigation, if I want to challenge the

sufficiency of different parts of that how am I able to view those things and be able to adequately defend against them and prepare to defend against all of those things and analyze whether or not it could be attacked or should be attacked?

THE COURT: There's more than one question there but I'll answer one of the questions this way, if there's your statement, your alleged statement to police that you mentioned earlier, I can't remember the date, if you haven't seen that and you want to see that, my suggestion would be your first inquiry would be with Mr. VerHey who -- is he going to continue to take the lead on this case?

MR. ROTH: Yes, Your Honor.

THE COURT: Okay. So reach out to Mr. VerHey and say, Mr. VerHey, can you send me a copy of my statement of this date? So, in terms of evidence, questions about evidence, because Judge Beckering doesn't know what the evidence is in the case but obviously Mr. VerHey does, so if there are questions about evidence, my suggestion would be your first attempt to contact and resolve that issue be with the government, be with Mr. VerHey.

THE DEFENDANT: Okay. Now, obviously there's timeframes here and things of that nature and I've been raising the issue that the discovery is being withheld from me. I've got a few motions I'll be submitting today that address multiple issues here. I'm wondering when is this

stuff going to be provided to me?

THE COURT: I don't know the answer to that question. If you file a motion today, the motion will go to Judge Beckering, as I think you know by now, right, everything is going to go to her because it's her case. She may decide them on her own. She may refer them to me and they'll be decided in due course, which is the only answer I can give you.

THE DEFENDANT: And I would like to state that the delay here is intentional and prejudicial to me and prejudicial to me being to efficiently and adequately prepare myself in this matter. I've been addressing this from the last time, and I attempted to the time before that and was withdrawn from the courtroom. I need to be able to see what is being used against me to adequately prepare against that, and all the while that I don't have these things and standing by looking like a deer stuck in the headlights the government is able to go over them at will, which is completely unfair, and I believe that it is possibly prosecutorial misconduct and illegal.

THE COURT: Again, you know how to raise those issues.

THE DEFENDANT: I've been trying but --

THE COURT: Well, you haven't been able to file motions on your own because you had a lawyer. Now you're on your own. What you seek, you're going to have to go out and

get it, and you're going to have to do that in conformance with the rules and the law.

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Roth, anything else from the United States?

MR. ROTH: No, Your Honor. Thank you for your time.

THE COURT: Mr. Graham, thank you for your service and thank you for agreeing to act as standby.

MR. GRAHAM: Yes, Your Honor.

THE COURT: Mr. Kuhl, did you understand everything that happened in court here today?

THE DEFENDANT: I was just -- one thing I wanted -- you said if I needed a copy of that statement.

THE COURT: I was just trying to come up with an example --

THE DEFENDANT: Right.

THE COURT: -- that we would both understand.

THE DEFENDANT: One area that I'm touching on specifically is they say this is recorded, audio and video recorded. Would I be able to -- I want to be able to view that. I need to see the body language of the people questioning me, my own body language, make sure it's the entire video in the statement there and, you know, if it actually occurred when they said it occurred and if I was appropriately Mirandized or whatever the issue might be, I

want to be able to view the actual audio recorded, video recorded statement under -- you know?

THE COURT: Again, I can't -- I'm not your lawyer, okay, so I'm not -- I can't give you advice, but I'm trying to be as helpful as I can be understanding that we now each have separate roles and we -- we have all along, but we each have to stay in our lanes, okay? But my suggestion to you would be, first, ask when you get back to Newaygo, if I get a -- I don't even know what medium this thing would be provided in, but if I get evidence in the form of a videotape in my case, is there a place where I can watch that? I don't know the answer, but that's your first stop. Again, my suggestion is going to be go to the person who has what you need first, and if you don't get it there and if there is a legal basis for you to have it, how do you go about getting it? What do you do?

THE DEFENDANT: I would file a motion, Your Honor.

THE COURT: That's exactly right.

THE DEFENDANT: And I guess I would have to try to file a motion for injunction against Newaygo county to force me -- force them to allow me to view such materials?

THE COURT: You know, I'm not -- I don't know that they have an obligation to make equipment available to you because it's not Newaygo county who's prosecuting you. I mean, that's where you're being lodged under contract to the

marshal service.

THE DEFENDANT: Which is the United States marshal service.

THE COURT: You know, so I take no position on, you know, you seeking an injunction against Newaygo county, but I think, you know, just like you want the statement, the first stop I would say would be with the folks who have it, and that would be the U.S. Attorney's Office. If you want to view a video, you're in Newaygo county jail, if they have a device you can watch that on and they're willing to let you do that, that would be my first stop if I were you.

All right. Mr. Kuhl, good luck to you, sir.

THE DEFENDANT: Thank you.

THE COURT: We're adjourned.

THE DEFENDANT: If I need these filed, I can just send them down to the clerk's office?

THE COURT: Again, now you're representing yourself so you're going to have to sort that out.

THE DEFENDANT: Okay. Sure thing.

*(Whereupon, hearing concluded at 2:12 p.m.)*

*C E R T I F I C A T E*

I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.

/s/ Genevieve A. Hamlin
Genevieve A. Hamlin, CSR, RMR, CRR
U.S. District Court Reporter
Grand Rapids, MI 49503