UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FILED - GR
March 20, 2025 10:46 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: KB SCANNED BY: JW / 3-20

UNITED STATES OF AMERICA,
Plaintiff,

v.

SAMUEL ALEXANDER KUHL,
Defendant.

Case No. 1:23-cr-44

HON. JANE M. BECKERING

ORAL ARGUMENT REQUESTED

# MOTION TO DISMISS COUNT TWO AS UNCONSTITUTIONAL

Now comes Defendant Samuel Kuhl, proceeding pro se, to respectfully move this Honorable to dismiss Count Two as unconstitutionally vague and overly broad. This motion is supported by the attached Memorandum.

Respectfully Submitted,
S. Kuhl 61189510
S. Kuhl
1035 James
P.O. Box 845
White Cloud, MI 49349

# MEMORANDUM

## I. VAGUENESS

### A. LEGAL STANDARD

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). "A criminal statute is unconstitutionally vague if it defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement." United States v. Kernell, 667 F. 3d 746, 750 (6th Cir. 2012). "A fundamental principle in our legal system is that laws which regulates persons or entities must give fair notice of conduct that is forbidden or required." Fed. Communications Commission v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012)

"This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment." Fox Television stations, 567 U.S. at 253. "Even when speech is not at issue, the void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." Id. "Just as the overbreadth doctrine is designed to prevent self-censorship because of fear of a law's enforcement, the vagueness doctrine similarily ensures that a law

does "not" deter constitutionally protected and socially desirable conduct.'" Hardwick v. Heyward, 711 F.3d 426, 442 (4th Cir. 2013) (quoting United States v. National Dairy Products Corp., 372 U.S. 29, 36 (1963)).

18 U.S.C. §2422(b) "Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

## B. ARGUMENT

18 U.S.C. §2422(b) is unconstitutionally vague because, it does not clearly define what it prohibits and, it encourages arbitrary and discriminatory enforcement. These arguments should not be read as some justification or minimization of the harm caused to children through being preyed upon and mind manipulated to agree or assent to sexual conduct. That should most definitely be prohibited. Indeed, our Bill of Rights does not predicate one man's right to speak by reducing the autonomy of another. Abuses of the right of the freedom of speech deserve Congressional proscription, and there is no

argument that the framers ever intended to allow persons to be harmed just to allow others to speak freely.

However, to punish any person for exercising speech or expression that could be portrayed as enticing or inducing should not be proscribable, simply because some of the audience is under the age of 18. There are numerous examples of free speech and expression publicly displayed in our modern society that easily constitutes enticement or inducement to engage in sexual activity. Furthermore, one does not know whether it is the actual illegal sexual activity that §2422(b) proscribes or just the intent to achieve a mind state of assent. Moreover, it seems §2422(b) has no limit as to who it reaches regardless of age, nationality, venue, or citizenship, and is unclear as to whether a person must, know that he is persuading someone, know that the person he is persuading is under 18, know that the sexual activity behind the persuasion is illegal, or know all, some, or just one of these things. Due to the clear understanding that prostitution involves physical contact and "illegal sexual activity," although placed in the same context and language as prostitution, is not defined, one can not clearly be on notice as to what type of activity of a sexual nature is proscribed.

1. ~~Activity or Mind State Scienter~~ Strict Liability or Knowledge of Age / Illegality of Sexual Activity

Reading §2422(b) one may assume that the proscribed

conduct is to influence a person they know is a minor, to engage in any illegal sexual activity. However, the courts have not even decided as a whole whether knowledge of the victim's age is a requisite element of §2422(b) violations. As the Supreme Court has acknowledged, "the failure of persistent efforts to establish a standard can provide evidence of vagueness." Johnson v. United States, 576 U.S. 591, 598 (2015). The language of §2422(b) and the split decisions amongst the Courts, leaves one ~~certain~~ uncertain as to what the scienter requirement is, or in other words, what specificly the term "knowingly" applies to.

For instance, Utah's enticement statute uses "knowingly" in essentially the same place as the language of §2422(b). Utah Code Ann. §76-4-401(2)(b)(ii) reads "~~[a]n actor commits enticement of a minor if the actor 'knowingly':~~ "[a] person commits enticement of a minor when the person knowingly uses the internet or text messaging to: subsequently to the action under Subsection (2)(b)(i), by any electronic or written means, solicits, seduces, lures, or entices, or attempts to solicit, seduce, lure, or entice the minor or a person the actor believes to be the minor to engage in any sexual activity which is a violation of state criminal law." (2008 version) In State v. Gallegos, 220 P.3d 136, 2009 UT 42 (2009) held: "Utah's enticement statute prohibits an individual from 'solicit[ing], seduc[ing], lur[ing], or entic[ing]' a known minor." The statute and the Utah Supreme Court both have clearly underscored the word "knowingly" requires one to know or believe that their 'target' is a minor.

Sadly, neither the federal enticement statute, §2422(b), or the federal courts have set a clear standard as to what must be known by a person accused of violating §2422(b). In several cases it has been held that the government is not required to prove that the accused knew the victim was a minor to get a conviction under 18 U.S.C. §2422(b). See United States v. Daniels, 685 F. 3d 1237 (11th Cir. 2012); United States v. Howell, 7:22-CR-55 (WLS)(M.D. Ga. Sep. 2023); United States v. Banker, 876 F. 3d 530 (4th Cir. 2017).

However, there are multiple cases that have held in order to get a conviction under §2422(b), the government must ~~proof~~ prove the defendant knew the victim was under the age of 18. See United States v. Cote, 504 F. 3d 682 (7th Cir. 2007); United States v. Meek, 366 F. 3d 705 (9th Cir. 2004); United States v. Dwinells, 508 F. 3d 63 (1st Cir. 2007).

Furthermore, it seems no Court has ruled that a conviction under §2422(b) requires proof that the sexual activity sought by his persuasion was known by him to be illegal. For instance, even if the court required proof that the defendant knew the victim was under 18, it is not required that the government prove the defendant knew the sexual activity he was persuading the minor to engage in was illegal. A case clearly on point is United States v. Montijo-Maysonet, 974 F. 3d 34 (1st Cir. 2020). In Montijo, the defendant had sex with a 13-year-old girl after he picked her up from a school to do so. The venue was Puerto Rico, where it is illegal to have sex with a minor under the age of 16. Montijo claimed he did not know the girl was under 16, but thought

that she was actually 16, and thus did not know having sex with her was a crime. Accordingly, Montijo argued it was not enough to prove only that he knew the girl was under 18, but to convict him under §2422(b), it must be proved Montijo knew the girl was under 16 and thus, he knew that he was enticing the girl to engage in illegal sexual activity. The 1st Circuit did not decide the issue because it held that ample evidence had been produced at trial for the jurors that Montijo knew the girl was younger than 16, i.e., picking her up from a middle school.

The fact this is even a meritorious inquiry into the scienter of §2422(b) renders the statute unconstitutionally vague. It chills people from seeking lawful sexual relationships, building families, and seeking out true love and happiness with a person who is under 18 but still able to legally consent to sex. Furthermore, depending on age and state, some minors under 18 can consent legally to sexual conduct and could marry if voluntarily and with premarital counseling. Intimate relationships involved in creating a family are a fundamental element of personal liberty and people have First Amendment rights to sexual expression. If a toddler can lawfully get a sex change, surely a middle-aged teenager should be able to freely express their sexual desires, if done so knowingly and voluntarily.

Due to the vagueness of what the term "knowingly" applies to in §2422(b), the statute is unconstitutional. "As a matter of ordinary English grammar, 'knowingly' is naturally read as applying to all the

subsequently listed elements of the crime. Where a transitive verb has an object, listeners in most contexts assume that an adverb (such as 'knowingly') that modifies the verb tells the listener how the subject performed the entire action, including the object." Flores-Figueroa v. United States, 556 U.S. 646 (2009). Applying Supreme Court precedent as well as common sense, §2422(b) should be read to require knowledge that the victim was a minor and knowledge that ~~that~~ the sexual conduct underlying the enticement was illegal. It would be absurd to interpret the statute any other way; clearly one knows when they are persuading or enticing another person regardless of age. However, the language of §2422(b) does not clearly define what must be done "knowingly" and thus does not define what is proscribed, and encourages discriminatory and arbitrary enforcement.

For these reasons, it is unclear whether the accused must know that he is persuading someone, that the person he is persuading is under 18, that the sexual activity underlying the persuasion is illegal, or all, some, or just one of the above. Further support is the fact that 18 U.S.C. §2251(a) omits the word "knowingly" before "employs," "uses," "persuades," etc. because it makes clear that §2251(a) does not require proof that the accused knew the subject of his visual depiction production was a minor, inherently making §2251(a), unlike §2422(b), a strict liability crime.

## 2. SEXUAL ACTIVITY UNDEFINED

The term "any sexual activity" being undefined in §2422(b) renders the statute unconstitutionally vague. Due to the other conduct listed in the same context as "sexual activity" being prostitution, it is reasonable and probable for a person of ordinary intelligence to think that "sexual activity" references physical penetration or touching of unclothed genitalia, and the production or request to receive a visual depiction of such.

However, due to a lack of definition and the broad interpretation of the courts, "sexual activity" has been used to apply to any crime of a sexual ~~regardle~~ nature regardless of venue/location or classification as a misdemeanor or felony offense. Due to the proximity of "sexual activity" to "prostitution," and the common definitions of "sexual activity"/"sexual act" in federal and state laws, the broad interpretation referenced above, leads to an ordinary person being ignorant as to what §2422(b) truly proscribes. Moreover, it encourages arbitrary federal enforcement discretion; if the federal government wants to double prosecute a defendant or otherwise bring a federal prosecution to subject the accused to the essentially inevitable denial of a bond in federal jurisdiction and the draconian sentences imposed under §2422(b), motivated by wanton and malice, they can do so with no limits, regardless of the severity of the underlying crime or punishment already possibly imposed by a State.

In United States v. Shill, 740 F.3d 1347 (9th Circuit 2014), the Ninth Circuit upheld a conviction under 18 U.S.C. §2422(b) when the underlying crime was classified as a misdemeanor under Oregon law. Moreover, there was originally a split amongst Circuits as to the definition of "sexual activity," providing more support that §2422(b) is vague. The Seventh Circuit held that "sexual activity" under §2422(b) requires person-to-person contact. See United States v. Taylor, 640 F.3d 255 (7th Cir. 2011). Logically, the Seventh Circuit rationalized its ruling based on the federal statutory definition of "sexual act" under 18 U.S.C. §2246 being synonymous with "sexual activity" under §2422(b). However, other circuits have clearly rejected Taylor outright. See United States v. Fugit, 703 F.3d 248, 255-56 (4th Cir. 2012); United States v. Jakits, 23-3870 (6th Cir. Feb. 20, 2025).

While §2422(b) is quick to incorporate state sex crimes regardless of the state punishment or classification of the offense as misdemeanor or felony, ironically it does not incorporate state definitions of "sexual activity." In Jakits, the Sixth Circuit refused Jakits' argument that under Ohio law the conduct of using minors in a performance that shows them in a state of nudity did not qualify as "sexual activity" under Ohio law, and thus could not constitute illegal "sexual activity" under §2422(b).

Because of several states and even the federal code define "sexual activity" or "sexual act" as being on the more explicit hardcore spectrum of sex, §2422(b)'s lacking definition and differing decisions amongst the courts, one of ordinary intelligence cannot ascertain what is prohibited

under §2422(b). If the government failed to establish a case or get a conviction against someone for a separate crime they could just search through that person's belongings already seized to locate any possible conversations with a minor and build a §2422(b). Moreover, if the government did have a solid case for a crime against someone but were not satisfied by the applicable penalty they could then pursue finding evidence or conducting a sting operation to subject that person to the draconian punishment of §2422(b).

Furthermore, someone could build a relationship with a person who was underage and not intend to engage in what they understand to be "sexual activity" but agree to only kiss, hug, and lightly fondle each other until the minor comes of age. If they do this and communicate by phone and/or internet, as is inevitable today, the older person could be charged under §2422(b). A young man who is 20 years old could know a 17 year old maybe from previously going to school together or living near each other and go to a party. They choose to dance and the girl gyrates her body against his and does other sexually provocative dances involving the rubbing through clothing of genitalia and buttocks, which can constitute a sex crime under some states, and discuss it over phone or internet and plan on doing it again, the man could be prosecuted under §2422(b).

Music and dancing is embedded in culture and the nature of humanity since our existance and is fundamental to liberty and

freedom of expression. Some cultures' music and dancing are far more sensual and sexual in nature than others, but this should not be allowed to be proscribed by Congress.

A case that clearly displays another failure to establish a standard as to "sexual activity" in an almost identical statute as §2422(b) is United States v. Nagarwala, 17-CR-20274 (E.D. Mich. Jan. 14, 2018). In Nagarwala, two doctors were charged with violating 18 U.S.C. §2423(a),(e) for having parents bring their minor daughters from multiple states for surgeries constituting female genital mutilation (FGM). The defendant doctors argued that the government was impermissibly using Michigan's definition of "criminal sexual conduct" and the definition of "sexual act" from another federal statute to characterize the doctors' actions in committing, or conspiring to commit, FGM as "criminal sexual activity." This is because §2423 does not provide a definition of "sexual activity." While §2423(f) defines "illicit sexual conduct," that phrase is used in §2423(b)-(d) and "does not define (or even mention) the phrase 'sexual activity.'" Nagarwala at 7. The district court went on to state "while the government asserts that 'MCL §750.520b undoubtedly qualifies as 'sexual activity for which any person can be charged with a criminal offense,' Resp. Br. at 12, it is not apparent to the Court - and the government offers no convincing argument showing - that the phrase 'sexual activity,' as used in §2423(a), is synonymous with the phrase 'sexual conduct,' as used in §750.520b(1)(a)." Furthermore, the Nagarwala Court held that it is not apparent that the phrase "sexual activity," as used in §2423(a), is synonymous with the phrase "sexual act," as used in

§2246.

§2422(b) and §2423(a) use the identical phrase "any sexual activity for which any person can be charged with a criminal offense." "Sexual activity" is not defined any where in the federal code. "Attempting to define 'sexual activity' by borrowing definitions of similar but different words and phrases from other statutes, and by treating these different words and phrases as synonymous with 'sexual activity,' undermines the maxim that criminal statutes must be construed strictly." Nagarwala at 9. Thus, by not defining sexual activity, §2422(b) is unconstitutionally vague, because one does not clearly know what what underlying conduct they must abstain from enticing a minor to engage in. One could encourage a young lady to get an FGM operation using the phone or internet and be prosecuted.

Criminal statutes "must be strictly construed, and any ambiguity must be resolved in favor of lenity." United States. v. Enmons, 410 U.S. 396, 411 (1973). Because "sexual activity," as used in §2422(b), is not defined the statute cannot be strictly construed thus, failing to ~~kee~~ notify what is proscribed and encouraging discriminatory and arbitrary enforcement. Accordingly, §2422(b) is unconstitutionally vague and Count Two against Mr. Kuhl must be dismissed.

3. §2422(b) Applies To Any & Everyone

The languge of §2422(b) allows the statute's prohibition to reach

people and countries that are in no way connected to the United States. It also reaches to punish people both in and outside of the United States including minors; it also reaches people regardless of their cultural or religious customs and beliefs.

"The right to freedom of religion undergirds the very origin and existence of the United States." 22 U.S.C. § 6401(a)1. "Freedom of religious belief and practice is a universal human right and fundamental freedom articulated in numerous international instruments" 22 U.S.C. § 6401(a)(2). "Article 18 of the Universal Declaration of Human Rights recognizes that '[e]veryone has the right to freedom of thought, conscience, and religion. This right includes freedom to change his religion or belief, ~~of his choice~~ and freedom, either alone or in community with others and in public or private, to manifest his religion or belief in teaching, practice, worship, and observance.'. Article 18(1) of the International Covenant on Civil and Political Rights recognizes that '[e]veryone shall have the right to freedom of thought, conscience, and religion. This right shall include freedom to have or to adopt a religion or belief of his choice, and freedom, either individually or in community with others and in public or private, to manifest his religion or belief in worship, observance, practice, and teaching'. The freedom of thought, concsience, and religion is understood to protect theistic and non-theistic beliefs and the right not to profess or practice any religion. Governments have the responsibility to protect the fundamental rights of their citizens and to pursue justice for all. Religious freedom is a fundamental right of every individual, regardless of race, sex, country, creed, or nationality, and should

never be arbitrarily abridged by any government." 22 U.S.C. §6401(3).

In some states age of the accused does not matter as to sex crimes involving minors; the defendant does not need to be an adult. A girl or boy 15 years old can be punished for having sex with someone their own age. If the boy or girl uses the phone or internet to pursue the other person, he or she is subject to prosecution under §2422(b).

Specifically, §2422(b) states "[w]hoever, using the mail or any facility or means of interstate or ~~means of~~ foreign commerce," is subject to be prosecuted under the statute. According to the government, phone and internet services are facilities and means of foreign commerce. Thus, "whoever" could be a person in a foreign country such as Canada or Spain, and if that person uses the phone or internet to entice someone under 18 in their own country to have sex with them in violation of that country's laws, that foreigner could be prosecuted by the United States under §2422(b). It is some people's thoughts, and cultural and religious beliefs, in and outside the United States that a female that is naturally reached the point of being physically able to bear a child, she may exercise that capability freely and willingly with whomever she chooses. A man choosing to practice his religious belief and right to procreation could be punished under §2422(b) if he uses the phone or internet to do so with a mid-aged teen.

Alot of states allow minors to get married with parental consent such as California, Mississippi, and Oklahoma. In California if a female got married at 17 and then decided to start a sexual relationship,

with a man who is 20, outside of her marriage and the man uses the phone or internet to persuade her to come over sex he can be punished under §2422(b) for the underlying crime being a violation of CA Penal Sec. 261.5(a) Unlawful Sexual Intercourse. Citizens of Oklahoma could face the same fate. The age of consent in Oklahoma is 16, yet adultery is a crime under Okla. Stat. Title 21 §871 thus, a person who is 19 and otherwise legally have sex with another person who is 17 in Oklahoma and entices that person under 18 by phone or internet communications could be punished under §2422(b) if either of the people are married.

For the several states the age of consent differs as well as what can be charged as a sex crime. If there is a legal sexual relationship in one state between a 21 year old and 17 year old but they visit another state where there relationship is illegal they older individual could be prosecuted under §2422(b). For instance, if this couple were to be caught together in a traffic stop and the police had reasonable suspicion that a sexual relationship was going on and investigated, after establishing probable cause, the officer could arrest the older individual and obtain a search warrant for the older person's phone. Once they find enticing messages made between two people on vacation from a state where their relationship is legal, could now prosecute the older individual ~~to~~ under §2422(b). This is absurd and people would not clearly understand that their conduct in this circumstance is prohibited by §2422(b); even if they are on

notice, such enforcement is arbitrary and punishes liberty and socially desirable conduct.

The term "whoever," and the phrases "any sexual activity for which any person can be charged with a criminal offense," and "any facility or means of interstate or foreign commerce," result in §2422(b) being unconstitutionally vague. "Interstate or foreign commerce" being used by "whoever" can reach people who use the phone or internet that are in no way related to the United States. "Any means or facility of interstate or foreign commerce" is not known by a person of ordinary intelligence to be applicable to texting or instant messaging a next door neighbor or person across the street. "Any sexual activity for which any person can be charged with a criminal offense," allows fore the enforcement of §2422(b) when the underlying criminal offense is not even a federal law and may very well be unconstitutional.

For instance, Oklahoma makes it illegal to "look upon" "the body or private parts of any child under sixteen (16) years of age in any indecent matter or in any manner relating to sexual matters or sexual interest." Ok. Stat. Title 21 §1123 A. 4 Lewd or indecent proposals or acts as to child under 16. Once again, in America "twerking" and other sexually provocative dances are popular and embedded in some cultures. There is even a song referencing girls twerking and saying "bet you can't do it with a d*** in you;" and people obviously find sexual interest in watching a girl twerk. All the time girls that are

mid-aged teens are posting twerk videos publicly and doing so in "boy shorts" or "daisy dukes" or "booty shorts" that show vast amounts of the buttocks. So if a man persuades a girl to perform this dance and he does for his sexual interest by way of text or internet messages he can be prosecuted under §2422(b).

For these reasons §2422(b) is unconstitutionally vague as it does not clearly notify a person of average intelligence what it prohibits. It also allows for arbitrary and discriminatory enforcement especially upon people of the urban/~~[illegible]~~ hip-hop culture. Thus, Count Two of the pending indictment must be dismissed. "Whoever" reaches people of any age, region, and religion in the entire world.

4. No Intent to Actually Engage In Illegal "Sexual Activity" - Only Proscribes Enticement

~~Although~~

Although §2422(b) states that whoever "knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity" that is illegal, that statement is not as clear as it seems. While it unequivocally says "knowingly... entice or coerce any individual" "under 18" to engage in prostitution or any sexual activity," it is not required to prove the accused ever actually intended ~~[illegible]~~ to engage in "sexual activity" with the minor. See United States v. Spiegel, 22-12097 (11th Cir. Sep. 5, 2023); U.S. v. Berg, 640 F.3d 239 (7th Cir. 2011); U.S. v. Hughes, 632

F.3d 956 (6th Cir. 2011); United States v. Faust, 795 F.3d 1243 (10th Cir. 2015); United States v. Brand, 467 F.3d 179, 202 (2nd Cir. 2006). No person of common sense or ordinary intelligence could fathom that §2422(b)'s language did not require the intent "to engage in any sexual activity."

One may argue that Congress ommitted the phrase "with intent that the indivual" before "engage" in §2422(b), but specifically used the "with intent" phrase in §2423. However, a deeper analysis is required to view the phrases of actus reus between the two statutes and apply common sense. §2423's actus reus is mobilizing either the minor or the accused himself in interstate or foreign commerce, while §2422(b)'s actus reus is persuasion, enticement, etc. Traveling can occur for many reasons, however the travel becomes criminal when it's intent is to engage in "illicit sexual conduct" or "criminal sexual activity" under §2423. When you are persuading or enticing someone you are already intending that they do something you want therefore the intent is inherent and inevitable; persuasion or enticement to engage in sexual activity to any normally intelligent reader clearly implies that one intends to engage in the sexual activity. Yet, it is possible that someone only wanted to see if they could get a person to assent or agree just for theirs own self esteem and satisfaction without actually intending to go through with what the other person agreed to. This is exactly what "catfishers" do, as a matter of fact, it is exactly what police do in sting operations for §2422(b). While the undercovers obviously claim they are not

the ones enticing or persuading, but they target sexually labeled chats usually specifically for adults and seek out men looking for cyber companionship. Some of these men may not even truly intend to meet anyone and only do it as a fantasy or to combat loneliness. The officers see this and portray themselves as a minor possibly open to companionship and sexual relations thus leading on these men by arousing hope or desire (enticing) ~~them~~ in them. It is not illegal to be attracted to a minor or to engage in sexually explicit conversation, however if one intends to engage in actual "criminal sexual activity" with that minor and takes steps to actually engage in that "criminal sexual activity" then it is illegal.

A minor could, as a joke or to fill a void of self-esteem or self satisfaction, create a fake persona and catfish a man and build a strong cyber relationship. The minor portrays themself as a 20 year-old and begins an online relationship with another 20 year old and it consists of sexual conversation where the actual 20 year-old continues to try to persuade the illusive minor acting as a 20-year-old to meet and build a physical relationship. The actual 20-year-old is now subject to being prosecuted under §2422(b). While this "catfish" hypothetical may fit better in the previous section of this motion, it still shows that §2422(b) is unconstitutionally vague.

If only prohibiting the attempt to achieve a mind state of assent without ever intending to actually engage in "sexual activity," then §2422(b) is in violation of Due Process and Equal protection rights. Moreover, it runs

afoul of the rights to liberty and free speech.

The United States Army Court of Criminal Appeals (CCA) originally held that enticement of a minor to engage in "criminal sexual activity" under §2422(b), requires that the accused must intend that the minor, ultimately, actually engage in criminal sexual activity as a result of that enticement. However, that common sense logical holding was overturned. See United States v. Schell, 13-5001 (CAAF July 8, 2013). Schell had been communicating with an undercover ~~minor~~ cop acting as a minor online. Eventually the communications turned to a sexual nature and "Taylor," the purported minor, and Schell set up a time and place to meet for the purpose of engaging in sexual intercourse. Later Schell cancelled the meeting due to timing issues and fear that his girlfriend would get mad. After several months of not reinitiating contact with "Taylor," the police decided to prosecute Schell for attempting to entice the minor under §2422(b). Schell pled guilty but due to statements at the sentencing hearing the CCA set aside the enticement offense, holding that §2422(b) prohibits people from luring "children out to actually engage in illegal sexual activity" as opposed to those "who simply encourage or incite children to assent to the possibility of illegal sex." This decision was wrongly declared erroneous in the Schell proceeding citing above. An en banc CCA even clearly understood §2422(b) to require intent by the accused to commit the "criminal sexual activity" underlying the enticement and obviously so would any person of common sense and ordinary intelligence. Any other interpretation of

the statute ~~results in~~ leads to the absurd result being reached by many courts today. To avoid this absurd result the court should deem §2422(b) unconstitutionally vague.

Moreover, the Court should look to the legislative history due to these absurd results. If "the language... leads to an absurd result, the court may look at the legislative history of the statute to help determine the meaning of the language." In re Corrin, 849 F. 3d 653, 657 (6th Cir. 2017); see also United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'") (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982).

Here, the ~~[illegible]~~ courts have not applied the plain language of §2422(b) which prohibits "whoever" from using "the mail or any facility or means of interstate or foreign commerce" to "knowingly persuade, induce, entice, or coerce" a minor "to engage in" prostitution or criminal sexual activity. It doesn't say to "agree" or "assent" to engage in, it says "persuade, induce, entice, or coerce... to engage in" sexual activity. Thus, the plain language clearly requires the goal of the persuasion was to engage in "criminal sexual activity," not just see if you can achieve a mind state of assent with no intent to commit the underlying offense; this is an absurd result!

Even trying to uphold this absurd result is not supported by

§2422(b)'s legislative history. This interpretation that no intent to engage in "criminal sexual activity" with the minor crosses the vague line that divides judicial interpretation from judicial legislation. See Fallon, As-Applied and Facial Challenges and Third-Party Standing Harv. L. Rev. Vol. 113, No. 6, pp. 1333 (2000). Congress intended the statute to address those who lure children out to actually engage in illegal sexual activity. H.R. Rep. No. 104-652, §508, at 1130 ("Section 508 would amend [§2422(b)] to prohibit the use of a facility of interstate commerce... for the purpose of luring, enticing, or coercing a minor to engage in prostitution or a sexual crime for which a person could be held criminally liable or attempt to do so.") Clearly the statutes purpose is stop people from committing sex crimes with children by persuading those children to engage in such by use of internet or phone service. To think Congress intended or even thought to prohibit and punish people for just talking to a minor to get them to say "okay" to illegal sex, but not to intend to actually have that illegal sex with such minor is absurd and arbitrary. See United States v. Lebowitz, 676 F. 3d 1000, 1013 (11th Cir. 2012) ("the Government [must] prove beyond a reasonable doubt that Lebowitz intended to engage in criminal sexual activity with [a minor]"). Other courts have read the plain language of §2422(b) to prohibit what it clearly says, only to be overturned by a court engaging in judicial legislation and essentially going against

the statue's language and legislative history. See United States v. Winckelmann, 70 M.J. at 407 n.4 (noting that "the military judge incorrectly instructed the members that the substantial step must be toward actually engaging in sexual activity rather than a substantial step towards enticement alone.") (CAAF. 2011).

By making §2422(b) only a mind state or thought crime it is overly broad and vague. It infringes upon the Constitutionally protected right to freedom of expression. If the internet and phone service constitute means or facilities of interstate commerce, surely cable television and radio broadcasting do also. The MTV show Teen Moms may entice minors to want to get pregnant and gain fame and publicity by being on the show. Movies such as That's My Boy, starring Adam Sandler who played a 13 year-old student who slept with and had a child with his teacher, can certainly be enticing to teens and minors to want to engage in sexual activity. There is no specificity that "whoever" must personally communicate with a minor. Minors create social media accounts and lie about their age and add random adults as friends all the time. Adults post all types of posts and pictures enticing and encouraging sexual activity which could be enticing to minors and that person knows such content is enticing. Regardless if anyone in these circumstances actually intends to engage in illegal sexual activity he or she can be prosecuted under §2422(b) for enticing a minor to assent

or want to engage in sexual activity.

Courts hold that a substantial step must be made toward enticement but the circumstances and context of these cases are in regards to substantial steps toward engaging in sexual activity. Such circumstances most usually consist of the accused moving to meet up with the minor which is far beyond a substantial step toward achieving a mind state. A person who even asks a minor to engage in sex, and then after the minor refuses or displays uncertainty, continues to try to reason with the minor has completed the substantial step of achieving a mind state; nothing else is required. Most times, especially in cases involving undercops, the ficticious minor does not refuse or express uncertainty and therefore no persuasion actually takes place. Regardless, it is unconstitutional to prohibit a person from speaking or otherwise expressing themself to achieve a mindstate to agree to a crime but actually have no intent to commit that crime.

These contradictory and ambiguous interpretations provide clear proof that §2422(b) is unconstitutional. To be penalized for expressing oneself to only achieve a certain mind state in a minor, or anyone for that matter, is unconstitutional. "Through the history of American constitutionalism, there has been wide debate about which (if any) 'remedies' for constitutional violations are constitutionally required, but never about the proposition that a

defendant cannot be sanctioned without the authority of a valid law." Fallon, As Applied... Harv. L. Rev. 113 No. 6. pp 1332-1333 (2000) citing Fallon & Meltzer, New Law, Non-Retroactivity, and Constitutional Remedies, 104 Harv. L. Rev. 1731, 1779-91 (1991), and Harrison, Jurisdiction, Congressional Power, and Constitutional Remedies, 86 Geo. L.J. 2513, 2516-18 (1998). Thus, Count Two must be dismissed.

5. Terms Of Actus Reus Undefined

It is a "cardinal ~~rule~~ principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001); see also Daniel v. Cantrell, 375 F. 3d 377, 383 (6th Cir. 2004) ("We avoid interpretations of a statute which would render portions of it superfluous."). By not defining persuasion, induce, entice, or coerce §2422(b) is unconstitutionally vague.

Although this argument has been rejected it deserves a closer examination. Many of these terms' definitions contain the other, especially in law dictionaries. Black's Law Dictionary (6th Ed. 1990) defines "persuade" as "[t]o induce one by argument, entreaty or expostulation into a determination, decision, conclusion, belief or the like; to win over by an appeal to one's reason and feelings, as into doing or believing something". Black's Law Dictionary (6th Ed. 1990) defines "entice" as "[t]o wrongfully solicit, persuade, procure, allure,

attract, draw by blandishment, coax or seduce.... To lure, induce, tempt, incite, or persuade a person to do a thing." The Oxford English Dictionary defines induce as "[t]o lead by persuasion or some ~~other~~ influence or motive that acts upon the will; to lead on, move, influence, prevail upon (anyone) to do something." Webster's New World College Dictionary (4th Ed. 2001) defines coerce as "to restrain or constrain by force." "Coercion is any force, threat, harm, compulsion, restraint, or influence intended to diminish ~~free~~ the free will of an individual and to cause ~~[illegible]~~ them to do or to refrain from doing any thing." Bouvier Law Dictionary 2012 Ed.

A person cannot distinguish between these terms other than coerce, which leads one to believe that only by force or threat or extortion or argument, they can violate §2422(b). Furthermore, all these terms imply they are done to make or convince a person to do something, however §2422(b) is being vaguely interpreted so that no intent to actually do the underlying conduct is required, thus violating due process to be put on notice as to what a law prohibits.

Moreover, it leads to confusion and potential non-unanimous jury verdicts. It also fails to distinguish whether just asking to engage in criminal sexual activity with a minor is prohibited, and makes the terms superfluous and insignificant due to the substantial overlap and synonymy of the conduct and definitions of these terms.

As previously mentioned, most times in ficticious minor cases

especially, there is no reluctance or uncertainty displayed and thus no persuasion, enticement, or coercion occurs. People are being prosecuted for seeking out sex with minors without even violating the conduct vaguely proscribed by §2422(b). Such a law was contemplated and discarded by Congress. See the "contact amendment" H.R. Rep. No. 105-557, at 687 (1998).

The lack in defining these terms leads to inadequate notice and confusion as well as non-unanymous jury verdicts. For these reasons Count Two must be dismissed.

## II. AS APPLIED

As the government contends and the partial discovery seems to show, Mr. Kuhl and this minor victim began a relationship with the minor continually claiming she was 17-years-old and thus able to legally engage in sexual intercourse with defendant. Moreover, while evidence displays Mr. Kuhl pursuing the female, it does not show that she was reluctant but actually willing. The only issue seemed to be conflicting time schedules and therefore Mr. Kuhl did not have to overcome the will of the minor. Several times throughout the texts provided the girl states she wants to hang out and wants to meet up but she had work or school. After several time conflicts it seems Mr. Kuhl was being strung along or catfished and he expressed frustration due to the fact being white in an environment

and upbringing around mostly black people he has always been looked at and treated as an inferior weaker "white boy" by his peers. The female is black, as are many females Mr. Kuhl has lived around his entire life, and he felt maybe she was playing him because he was white as has happened many times. This has resulted in Mr. Kuhl feeling less than and unwanted, resulting in him trying to hide these insecurities behind an armor of a tough and thuggish demeanor which is truly a facade. Mr. Kuhl is actually a nerd and has a huge heart but being taken advantage of by those around him has caused him to put up a shield as if he has no feelings. This is compounded by his familial upbringing by the woman planted into his family by the CPS. Also the culture and customs of those around him which is slowly being pushed upon the world all at behest of the powers that be. Finally, Mr. Kuhl feels wanted and somewhat confident in himself and of course its all a trap all a ploy to complete their plan. There is no escape, no hope, no truth, no love here humanity is doomed. This had to be done from the start they knew I was too intelligent. It doesn't matter. It seems at some point the girl tells Mr. Kuhl that she is not 16 or 17 and Mr. Kuhl says "wait so you're 16?" but this was not responded to as far as the portion of discovery shows and this conversation is mentioned only in SA Buttery's application for search warrant. Multiple times it seems Mr. Kuhl and the minor had stopped talking and the girl would reach back out and reinitiate contact

stating "hey this is ______" or something very similar and the two would start back talking again. While Mr. Kuhl's alleged relationship with this girl is illegal it does not constitute overcoming her will as §2422(b) seems to vaguely prohibit. When the minor lies and continuously seeks out the relationship and the communications made by the accused pursuing and engaging in the relationship are impossible not to use in today's society, prosecution under §2422(b) is not proper. While Mr. Kuhl is wrong under the allegations, his conduct does not constitute a violation of §2422(b) and he should not be prosecuted under such. Mr. Kuhl has seen all his life teens having relationships with adults usually females with older men and at least 7 out of 10 of Kuhl's female peers had a child before the age of 18 thus it is common in the environment Kuhl was raised for mid-aged teens to engage in sexual relations with adults. Moreover, the female Kuhl allegedly engaged in sexual activity with was 15 at the time frame of this indictment and would have been legally able to consent within a few months under Michigan law. The woman put into Kuhl's life by the CPS to take custody of him raised Kuhl and his siblings to believe once a male or female is capable of reproducing they're able to exercise that natural right with whomever they choose. Although Kuhl was raised under these customs and beliefs, he has not been one to prey on or even find interest in children. The unique and exceptional circumstances of this case should not be subject to prosecution under §2422(b).

# III OVERBREADTH

It is necessary to incorporate by reference all arguments previously mentioned in this motion due to the overbreadth and vagueness doctrines being so intertwined. Just as the overbreadth doctrine is designed to prevent self-censorship because of fear of a law's enforcement, the vagueness doctrine similarily ensures that a law does not deter constitutionally protected and socially desirable conduct. Hardwick v. Heyward, 711 F. 3d at 442 (4th Cir. 2013) (quoting U.S. v. National Dairy Products Corp. 372 U.S. 29, 36 (1963).

For the reasons already stated throughout this motion, §2422(b) is overlybroad. By incorporating all state laws on any person it possibly encompasses unconstitutional state laws that don't pass constitutional muster. Further, what a couple may do legally in one state as to their sexual relationship and communications, may become illegal if they simply travel to another state on vacation. To punish only the intent to achieve a state of mind through speech when no underlying criminal activity is intended, is overbroad and unconstitutional. By not setting a clear and equal Federal standard for the "criminal sexual activity," §2422(b) violates Equal Protection because some states impose greater restrictions on the legality of sexual relations than others. By not defining that one must personally or through a

direct intermediary entice or induce the minor, §2422(b) prohibits protected speech and expression in some instances. The Supreme Court has recognized that "some broadly written statutes may have such a detterent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." Members of City Council of City of LA v. Taxpayers For Vincent, 466 U.S. at 798 (1984) (citing Thornhill v. Alabama, 310 U.S. 88 (1940)). "The overbreadth doctrine allows plaintiffs to attack the constitutionality of a statute or ordinance, 'not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others before the court to refrain from constitutionally protected speech or expression." Virginia v. Am. Booksellers Association, 484 U.S. 383, 392-93 (1988).

For all of the reasons throughout this motion, §2422(b) is unconstitutionally broad and therefore Count Two of Mr. Kuhl's indictment must be dismissed.

## IV. CONCLUSION.

Due to the infringments placed upon the, 1st Amendment's right to freedom of expression and speech, Due Process Clause and Equal Protection Clause of the 5th Amendment, and the encouragement

of arbitrary and discriminatory enforcement implicated by §2422(b), Count Two of Mr. Kuhl's indictment must be dismissed. If the Court declines this motion, Kuhl asks in the alternative that the jurors be allowed to read §2422(b) and answer the questions below as to what they understand the statute to prohibit and the requirements to contain a conviction.[1]

1. Does the statute require the accused to have the intent to actually engage in the illegal sexual activity with the minor that is the underlying reason for his persuasion?
2. Must the accused know that the minor was under 18?
3. Must the accused know that the minor was also under 16 if the underlying sexual activity is illegal only if the minor is younger than 16?
4. Please describe what you believe facility or means of interstate commerce to be.

[1] These questions can be subject to amendment upon agreeance between Kuhl and his adversarial parties.

Respectfully Submitted,

S. Kuhl March 14, 2025

S. Kuhl 61189510


GRAND RAPIDS MI
49599 #10 AM
TUE 18 MAR 2025
MAIL HAS ORIGINATED
NEWAYGO COUNTY JAIL
49503
MAIL

Samuel Alexander Kuhl #61189-510
Newaygo County Jail
P.O. Box 845
White Cloud, MI 49349

Clerk Of the Cou
U.S. District Co
399 Federal Bldg
110 Michigan NW
Grand Rapids, M

LEGA