IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v Case No: 1:23-cr-44

SAMUEL ALEXANDER KUHL,

Defendant.
_____________________________/

BOND HEARING

BEFORE THE HONORABLE RAY KENT
U.S. MAGISTRATE JUDGE

Grand Rapids, Michigan
February 19, 2025

APPEARANCES:

For the Plaintiff: MR. TIMOTHY P. VERHEY
U.S. Attorney
330 Ionia Avenue, N.W., Suite 501
Grand Rapids, Michigan 49503-2580
(616) 456-2404

For the Defendant: MR. SCOTT G. GRAHAM
Scott Graham, PLLC
1911 West Centre Avenue, Suite C
Portage, Michigan 49024-5399
(269) 327-0585

TRANSCRIBED BY: Lauret J. Henry, CSR-6469, RPR
Federal Official Court Reporter
410 West Michigan, Suite 137
Kalamazoo, MI 49007
(269) 720-9529

Grand Rapids, MI
February 19, 2025
10:06 a.m.

PROCEEDINGS

THE CLERK: The United States District Court for the Western District of Michigan is now in session. The Honorable Ray Kent, United States Magistrate Judge, presiding. You may be seated.

THE COURT: All right. This is 23-cr-44, United States versus Samuel Kuhl. Mr. VerHey on behalf of the United States. Mr. Graham on behalf of Mr. Kuhl. The matter is set here this morning for a bond hearing.

Mr. VerHey, is the government prepared to proceed?

MR. VERHEY: We are, Your Honor.

THE COURT: All right. Mr. Graham, what's your client's pleasure with respect to a bond hearing?

MR. GRAHAM: Your Honor, my client would like to move forward with the bond hearing. Your Honor, my client has just handed me and asked me to submit to the Court a two-page document captioned Motion to Proceed Pro Se. I think last time we were here he made a few different requests, and I think the Court told him essentially if you have these requests such as matters relating to representing yourself, you should submit them in writing. I don't know what the Court's pleasure is, whether it wants to look at this, not

look at it, have it filed through the clerk, whatever, I'm simply indicating it was given to me and my client has asked that it be submitted to you before we do anything else.

THE COURT: All right. Thank you, Mr. Graham. My pleasure would be that you file it in the clerk's office. I'll notify them to allow its filing because otherwise they would reject it because Mr. Kuhl is still represented.

MR. GRAHAM: Correct.

THE COURT: So maybe when we're done if you could take it down and file it, and then Judge Beckering will decide whether, you know, what to do next, whether she wants to decide it or refer it to me.

THE DEFENDANT: I need to try to do this speedily, Your Honor, so I can have an opportunity to assert my speedy trial right. The discovery has not been completely provided to me. There are redactions which are beyond personal identifying information, and I have been blocked access to this court through the conspiracy of these court-appointed attorneys, which as we all know are, you know, doesn't even need to be spoken on, but it is my wish to speedily decide this matter, hopefully today, so that I can move forward and request all the required discovery.

I have several motions here which I would like to submit to the Court that should have been submitted. I only have 14 days after the date of arraignment to request a bill of

particulars, which I will request, and the contemporaneously filed motions regarding the sufficiency of this indictment and the charges forthwith are actually sufficient pursuant to Federal Rule of Criminal Procedure 7. These motions will be filed as required pretrial under the Federal Rule of Criminal Procedure 12, and therefore I am asking that this matter here be expeditiously decided so that I will be provided with the correct and proper and full materials in order to adequately and sufficiently prepare my defense. Thank you.

MR. GRAHAM: Your Honor, I understand --

THE COURT: Does it say "expedited" on the face of the motion, Mr. --

MR. GRAHAM: No, Your Honor.

THE COURT: All right.

THE DEFENDANT: Excuse me, there is -- there is a portion there on the last page which says, specifically the last note, 9, I believe, is that I request to have this matter decided expeditiously so that I may assert my right to a speedy trial. It is the last numbered section 9 there before my signature.

THE COURT: Perhaps you could point that out to the clerk when you file it.

MR. GRAHAM: I will do so, Your Honor, and I think I understand your instructions so I'm set to go regarding a bond hearing today.

THE COURT: All right. Thank you.

All right. Mr. Kuhl, we're going to have a bond hearing here in a moment. There are two issues in a bond hearing. The government bears the burden of proof on both of them. One issue is risk of nonappearance. That includes things like if I release a defendant on bond, can I be reasonably certain that he's going to appear as required in further proceedings in the case. It also includes the issue of whether I release a defendant on bond I can be reasonably certain that the defendant will abide by all the other conditions that I impose on the bond.

The government's burden on that issue is something we call a preponderance of the evidence. It means there's just slightly more evidence suggesting that a defendant is a risk of nonappearance than evidence to the contrary.

The other issue at play is danger to the community. Danger can take many forms. It can take the form of history of drug dealing, weapons, violence, other -- lots of other things.

THE DEFENDANT: I'm aware of these circumstances and the facts that you need to observe in order to deny or grant me bond, which we all know will be denied and this was a frivolous adjournment, as I stated previously; however, we will proceed.

THE COURT: The government's burden of proof on that

issue is something called clear and convincing evidence and requires more evidence by the government. The Rules of Evidence that apply to trial do not apply in a bond hearing, so things like hearsay, which would not be admissible if we're having a trial, are admissible in a bond hearing. In fact, even if the government has collected evidence against you illegally, and I don't have any reason to believe that it has, but even if it has --

THE DEFENDANT: Oh, it has. We all know that it has.

THE COURT: -- that evidence is probably admissible for our purposes here today.

Second, neither the government nor you have to produce evidence by putting witnesses on the witness stand. You can do it instead using the procedure we call a proffer. What that means is the lawyers tell me facts which I then consider as if they'd come from a witness on the witness stand.

Before I turn the floor over to Mr. VerHey, I'll note for the record that I have read the pretrial services report. It appears in the court record at ECF 18. After investigation, pretrial services department has concluded that there is no condition or reasonable combination of conditions to reasonably assure Mr. Kuhl's appearance and the safety of the community, and thus it recommends detention.

Mr. VerHey, the burden is on you. The floor is yours.

MR. VERHEY: Thank you, Your Honor.

I am going to be relying on the pretrial services report you just referred to. So factually I'll just summarize for the Court what things appear pertinent to me. First of all, we should start by recognizing that this is a presumption case under the Bail Reform Act 3142(e)(3)(E). There's a presumption a defendant like this should be detained because of the charge against him, which is a child exploitation charge. And so the burden is on the defendant to overcome that presumption. I don't see any way that that could be done here because the bond report goes on to point out that Mr. Kuhl's unemployed, he has no assets, no income. If I'm reading what his uncle said correctly, his uncle was willing to let him live with him for up to 30 days. I'm not sure what would happen after that. And then, of course, his abysmal criminal history shows me that you're not likely to see a worse supervision record than the one before you here.

This defendant has been convicted of nine separate juvenile offenses, 16 adult offenses. He's got multiple episodes of absconding from parole. He appears not to care whether he's under court supervision or parole supervision because there's also multiple situations where he's committed new crimes while under court supervision, and these new offenses, or these offenses, include weapons offenses, violence, resisting and obstructing police, multiple episodes

of that, and assault offenses. So all of that I think paints a pretty grim picture of somebody that you would expect to, A, abide by any rules that you might set for release, and, B, reasonably expect someone to appear in court, which is a rule that he would have to follow if he were released because there is just no basis for thinking that he would ever do such a thing. So based on that, I support the pretrial services conclusions that he ought to be detained here pending trial.

THE COURT: Thank you, Mr. VerHey. Mr. Graham.

MR. GRAHAM: Your Honor, for the purpose of this proceeding, we accept as correct the facts described within the report. I can't say that I have investigated them at a level that would cause me to agree during trial proceedings, but for today's purpose there's no challenge to those facts.

Your Honor, with the Court's permission I would proceed by way of proffer. I would proffer to the Court that -- and I do agree this is a presumption case. I would proffer to the Court that Mr. Kuhl's primary reason for seeking bond in this matter is to be able to fully participate in his defense. Mr. Kuhl, I would proffer, has worked around the clock in order to determine and raise issues relating to his defense, and he is hampered in doing that by being detained. He would take advantage of every asset, every bit of time he would have should he be admitted to bond.

I proffer to the Court that his uncle is -- his uncle

Thomas is extremely supportive, and I agree that he previously reported that Mr. Kuhl could stay with him for up to 30 days. I have attempted to gather additional information about where he might stay, and I don't have anything that goes beyond that. I would simply proffer to the Court that if he was admitted to bond and the time came when he didn't have a place to stay, his pretrial services officer could make a decision about whether or not bond should be continued or a request should be submitted to the Court to modify it. There are certainly a number of other options available, including Alternative Directions, KPEP, things of that sort, if the housing situation -- if other housing was not available.

I just wanted to make sure I clearly proffered to the Court that I believe he will have a place to stay for up to 30 days, but I don't want to proffer that I have confirmed he would have a place to stay beyond that. I have -- I have not done that.

I would agree that his current status is one of being unemployed, and the one thing I can't proffer to the Court is the status of other possible detention in other courts. I guess I don't think that matters for today's purpose. If he's got a warrant somewhere else, you know, doesn't much matter what the Court is going to do. He is going to have to be subject to that. So I just wanted to proffer to the Court that I've attempted to determine the status of those things

without -- without success that allows me to make a representation to you about what I think is precisely accurate.

Those are the facts that I can proffer to the Court, and that's what I have in regard to the, you know, the question of bond. As I said, I accept as correct the factual representations contained in the pretrial services report.

Thank you.

THE COURT: Thank you, Mr. Graham. The Court's consideration of bond begins with the Eighth Amendment to the Constitution, which prohibits excessive bail. The Eighth Amendment's protections are made statute in the bill of format beginning at 18 United States Code Section 3141, Section 3142 of which requires the Court to release a defendant on bond unless the Court concludes that there is no condition or combination of conditions that will reasonably assure the defendant's appearance and the safety of the community.

Certain federal crimes give rise to a presumption of detention. As Mr. VerHey points out, this is one of them. Section 3142(g) of the act lays out the specific facts that I am to consider in reaching my decision, including whether the crime charged involves a -- is classified as a crime of violence or a drug dealing offense, and it is classified as a crime of violence, am I not right, Mr. VerHey?

MR. VERHEY: It certainly is a child exploitation

offense, which I believe is its own category.

THE COURT: Okay. Obviously it doesn't involve drug dealing.

MR. VERHEY: Correct.

THE COURT: Second factor, weight of the evidence against the defendant. I don't know an awful lot about the evidence against Mr. Kuhl that forms the basis of these charges so I'm not in a great position to assess its weight, but it doesn't really matter anyway because this factor is given the least weight in my analysis because Mr. Kuhl remains cloaked with the presumption of innocence.

Other factors that I consider include the history and characteristics of the defendant, physical and mental condition, family ties, employment history, financial situation, community ties, history of drug or alcohol abuse.

Mr. Kuhl is, at least was at the time of filing of the pretrial services report, 31. Born in South Haven. His dad died in 1996; his mom passed in 2019. He lived with his grandmother for a period of time, was adopted by his uncle David, and moved in with him. He reports being physically abused by his aunt while he was living there.

THE DEFENDANT: I mean, you don't got to say all this shit. You already know it. Excuse me.

THE COURT: He is single. Mr. Kuhl has no kids. As pointed out, his uncle has agreed to take him in for 30 days

if I release him on bond. If I did release Mr. Kuhl, he would be released subject to all of the many conditions of the Adam Walsh Child Protection and Safety Act, although his -- I don't know if his uncle has agreed to remove any internet service from the home or not.

Mr. Kuhl does not have a U.S. passport. Has never traveled outside the United States. These facts go to the issue of whether he would flee the country to avoid prosecution. I don't see any reasonable likelihood he would flee the country. He's lived here his whole life. Nor do I find that he has the resources to do so.

Not much employment history. He's worked as a carpenter with his uncle off and on since '14. Looks like maybe worked at a Wendy's at some point. No significant assets, liabilities, monthly income, or expenses. Physical health is good. His mental health, of course he has a long history of mental health issues. Those are fully documented in the report following his competency assessment, so I won't go through all of that again at this point in time. He is -- I have found him competent to proceed in this matter based upon the unrebutted opinions of the Bureau of Prisons psychiatrist.

Substance abuse, not much. Daily marijuana smoker for much of his life, as are most of the people who sit in that chair.

All right. Other factors I consider include prior

criminal history and history of compliance while on supervision with other courts. I counted 11 juvenile cases. I generally don't consider juvenile cases in making my decisions. And I'm not going to put undue weight on them in Mr. Kuhl's case; however, many of those involve violence, including resist/obstruct a police officer, throwing objects at trains and cars, which can be incredibly dangerous. There's a home invasion charge which was ultimately dismissed. Another resist/obstruct police. Assault and battery. Attempted home invasion second degree. Disturbing the peace. Those last three all committed while on probation. Two felony controlled substance offenses as a juvenile. At least the first one was committed while he was on probation, as were some other convictions.

His adult history begins in 2009. He's charged with several crimes, including home invasion, larceny of a firearm, weapons, receiving and concealing firearms. He's on probation, juvenile probation, at the time he commits this crime. He's ultimately convicted of receiving and concealing firearms. He gets five months jail, two years probation under the Holmes Youthful Trainee Act. His -- that is in July of 2009.

May of 2010 his probation and the HYTA treatment are both revoked. He's sentenced to one to 10 years in prison. July of the next year he absconds from parole. The system works

through, his parole is ultimately reinstated. November of 2012 he absconds from parole again. Later reinstated. April 2013, absconds from parole. He's held -- his parole at that point is revoked. He's returned to MDOC custody for a period of time that I can't determine from the record. Released in 2014, absconds from parole in 2015.

November 2015 his parole is again revoked. He's sent back to MDOC custody. Released in 2017. May of 2017. September of 2017 he's returned to custody as a technical rule violator.

According to the state presentence report, which was reviewed in preparation of our report, Mr. Kuhl committed new criminal offenses while on absconder status from his parole supervision. 2009, and this is undoubtedly one of those as a number of the following offenses will be the offenses referred to in that paragraph, 2009 May he is again charged with assault/resist/obstruct a police officer. He gets two years probation. Again, under HYTA. May 2010, probation violation, probation and HYTA revoked.

May 2009, felony delivery of looks like marijuana. May 2010 probation revoked. He was on probation when he committed that offense. One, two, three misdemeanors later in 2009 all committed while on probation.

April 2010 he's charged with possession of meth and ecstasy, a felony. I can match these up so we're not

repeating. Committed that offense while on parole. And then the history all the abscondings and returns to custody, reinstatements, revocations, returns to custody, are imposed in both this case and the 2009 receiving and concealing firearms cases.

July 2011, attempted resist/obstruct. He was on parole when he committed that offense. November, possession of cocaine less than 25 grams. On parole when he committed that offense. A misdemeanor. Another controlled substance possession less than 25 grams in December of 2012. On parole when he committed that offense. July 2013, police officer fleeing, possession of heroin, habitual offender third. He gets one to two -- one year two months to 10 years in prison, released in 2014. June 2015 absconds.

November 2015, parole revoked, returned to custody. 2017 -- he's released, 2017 back to prison as a rule violator. He was on parole when he committed that offense. July of 2015, police officer assault/resist/obstruct, habitual offender third. Again, he's -- the penalties are imposed concurrently by MDOC for the absconding and being returned to custody, released, violated, returned to custody. On parole when he committed that offense.

Later in 2015, obstruct police. On parole when he did that. Finally, August 2015, police officer fleeing. Got one year four months to 20 years. Absconds, parole revoked,

returned to custody, on parole when he committed that offense.

September 2015, uttering and publishing, a felony. Got one to 14 years in prison. Released on parole in 2017. Returned in September of that year as a rule violator. On parole when he committed that offense.

September 2017, assault with a dangerous weapon, felonious assault, habitual offender third. He got one to eight years in prison. He was on parole when he committed that offense. November '21, resisting law enforcement, false information out of Chesterton, Indiana. We don't know what the resolution of those charges were.

March of 2022, assault with a dangerous weapon, felony firearms, possession of firearms by a felon, habitual offender fourth, sentenced to two to 15 years. I guess that would be on counts -- on Count 1, but that's consecutive to the mandatory two year -- I think it's two-year terms on the felony firearms count. This, of course, is the case -- the conviction, I don't know the status, but the notes we have suggest that conviction was overturned after Mr. Kuhl was determined to be incompetent in the state system. On the other hand, and I'm not sure what this means, and, Mr. Graham, I'm not asking you to tell me, but just so you know, you probably already do know, but in the -- and maybe this is what you were referring to in your proffer, the -- this case in Kalamazoo, Mr. Kuhl was denied bond. Will remain in custody

until his competence is considered to be restored by the State of Michigan. There's a court hearing set for March 16 of this year at 9 a.m. So, you know, I'm not sure what will ultimately happen with that conviction.

Finally, the last criminal case in our record is from November of '22, police officer resist/obstruct causing injury, assault/resist/obstruct a police officer, habitual offender. Appears maybe that case is still pending.

All right. Based upon all the evidence before me, I find the government has met its burden of proving both that Mr. Kuhl is a risk of nonappearance. Mr. Kuhl has never, as far as I can tell, complied with conditions imposed by any court at any time on any of these cases. He's always -- almost always committed new crimes while he's on supervision either by courts or by -- on parole from MDOC, and thus there is no condition that I could impose that would ensure that he would comply with the conditions of bond and appear as required since he has a history of absconding. And, second, the very same behavior of repeatedly committing crimes while on supervision makes him by definition a danger to the community, and many of those crimes involve violence and drugs and other things that pose a risk to the community.

So Mr. Kuhl will remain in custody pending further proceedings before Judge Beckering. I believe there is a -- a final pretrial and trial date has now been set, although I

didn't print out the last page of the docket sheet, if anybody can help me out. Let me see. It was just very recently. Brenda, would you be able to -- maybe Mr. VerHey has it.

MR. VERHEY: Came in yesterday, Your Honor, and I didn't -- oh, here it is, ECF 84.

THE COURT: All right. Judge Beckering issued an order on February 18 setting final pretrial and jury trial. Let's see, final pretrial conference scheduled for April 8, 2025, at 2:30 p.m. Trial to follow beginning April 15, 2025, at 9 a.m. in her courtroom here on the sixth floor.

She requires other actions to be taken in preparation for trial. Those are all laid out in the order.

Mr. VerHey, anything else here this morning?

MR. VERHEY: No, Your Honor. Thank you.

THE COURT: Mr. Graham?

MR. GRAHAM: No, Your Honor. Just to make sure I'm clear, though, I'm going to immediately go to the clerk's office and file the document Mr. Kuhl gave me and then let things run -- run their course from there.

THE COURT: Yes. Judge Beckering -- and I'll, as I said, contact the clerk's office when I leave the bench, tell them to allow the filing. The motion will be brought to Judge Beckering's attention and she will decide, you know, how she wants to proceed from there.

MR. GRAHAM: I have nothing else. Thank you.

THE COURT: All right. Thank you. We'll be adjourned.

THE DEFENDANT: May I just ask that the government be forced to disclose full discovery under the Federal Rule of Civil -- or Criminal Procedure 16?

THE COURT: Yes, there's two ways that you can do that. Number one --

THE DEFENDANT: I can't do anything, Your Honor, except for speaking to you today, because nothing will be heard, although I've given Mr. Graham a motion regarding these specific issues. There was a warrant, a search warrant issued January 25, 2023, coincidently by you. I would like a copy of the search warrant, the affidavit, and the evidence seized thereof.

There are several redactions which are beyond what was supposedly agreed in this personal -- or in this protective order, which I did not agree to, nor was I made aware fully of what was in it before it was filed and agreed to, and also I have not agreed to reciprocal discovery, although it has been agreed to on my behalf. How can I agree to reciprocal discovery if I have not even received full discovery and they continue to withhold that discovery from me? How am I to prepare my defense if they will not present to me what is gonna be used against me in the key, key, key -- (unintelligible).

THE COURT: At this point, you remain represented by Mr. Graham.

THE DEFENDANT: I understand that.

THE COURT: And Mr. VerHey's obligation is to produce discovery to Mr. Graham.

THE DEFENDANT: Yeah.

THE COURT: We're done.

(Proceedings concluded at 10:41 a.m.)

C E R T I F I C A T E

I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.

/s/ Lauret J. Henry
Lauret J. Henry, CSR, RPR
U.S. District Court Reporter
Kalamazoo, MI 49007