UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

United States of America,
Plaintiff,

v.

Samuel Alexander Kuhl,
Defendant.

Case no. 1:23-cr-44
Hon. Jane M. Beckering
Oral Argument Requested

FILED - GR
March 27, 2025 11:24 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: JW / 3-27

# MOTION TO DISMISS

Defendant Samuel Kuhl respectfully moves to dismiss the indictment on violations of IDRA, Due Process, Equal Protection, Abstention, Tenth Amendment, Speedy Trial Act, Sixth Amendment Speedy trial right, federalism, comity, and Fed. R. Crim. P. 48(b).

The attached brief is written as a habeas corpus petition I filed with Supreme Court but was returned to fix certain errors. Due to this Court's railroading and abuse of discretion and arbitrary, unconstitutional conduct forcing the deadline of pretrial motions deadline before I was ever allowed to proceed pro se I cannot adequately edit the motion in time with proper analysis and review. If the Court truly sticks to its deadline for pretrial motions none of the motions I filed are acceptable because they were filed on March 6, 2025 and pretrial motions deadline was March 5, 2025! So if you gonna railroad me DO IT FOR REAL! DO IT ALL THE WAY KILL ME LET'S GO

A federal indictment charging me with two offenses in violation of United States laws was returned on April 25, 2023 in the Western District of Michigan, Southern Division. Count one charges a violation of 18 U.S.C. § 2251(a), (e) and Count two charges a violation of 18 U.S.C. § 2422(b). See United States v. Kuhl, 1:23-cr-44-JMB (W.D. Mich).

Prior to the indictment being returned, Van Buren County of Michigan filed felony charges concerning the same conduct that is the basis of the federal indictment on February 22, 2023. Due to the cooperation of State and Federal law enforcement agencies, the Federal Government was aware of these State proceedings. See People v. Kuhl, 23000127FY.

I was already incarcerated in the Michigan Department of Corrections (MDOC) for a sentence of 48 months handed down by the Hon. Pamela Lightvoet of Kalamazoo County, Michigan, when the Van Buren County Charges were filed against. I was sentenced to the 48 months in Kalamazoo on December 12, 2022. That case is currently on appeal due to my sentence being invalidated because of a ruling on June 27, 2023 that I was incompetent when sentenced. See People v. Kuhl, 364888 (Mich. App. Sept. 19, 2023). The Federal Government was also aware of these facts.

After being arraigned, via zoom, on the Van Buren County charges while still in MDOC, on April 11, 2023, I was eventually

evaluated and deemed incompetent to stand trial in that case. This incompetency determination was made on May 24, 2023. The Federal Government was also aware of these facts.

On June 29, 2023 I was released from MDOC and remanded back to the Kalamazoo County Jail to await transport to a Center of Forensics Psychology (CFP) facility to undergo restoration for my State charges. The Federal Government was also aware of these facts.

Despite the ongoing criminal proceedings and me waiting to be transferred to a CFP facility due to being found incompetent, the United States took custody of me on August 11, 2023, completely halting the ongoing state proceedings.

At my initial appearance in Federal Court on August 11, 2023, questions were raised regarding my competency and the Magistrate Ray Kent adjourned the matter until August 16, 2023. No plea was enterred and a bond/detention hearing was not held. On August 16, 2023, Kent found reason to believe I may be incompetent to proceed and entered an Order the following day, August 17, 2023, committing me for an inpatient evaluation pursuant to 18 U.S.C. 4241(b) and §4247(b). Still no bond/detention hearing was held, but I was detained under Federal custody in the Newaygo County Jail.

Accordingly, I was transported via car by U.S. Marshals to MCC Chicago to undergo the evaluation ordered on August 23, 2023.

A letter from the BOP was entered on the docket in case no. 1:23-cr-44 on October 11, 2023 Doc. 22, regarding extension of the examination. On October 12, 2023, Dr. Priyanka Rao told me that the evaluation was done and the U.S. Marshals had been informed that I was ready to go back to Michigan.

I was transported by car back to Michigan from MCC Chicago on October 19, 2020. A report summarizing the evaluation and recommending I be found incompetent was placed on the docket November 20, 2023. A competency hearing was eventually held on December 18, 2023, which I was not informed of nor given an oppurtunity to attend. The report was stipulated to by my then counsel, Parker Douglas, although we never spoke about this and I was never provided with the report.

Magistrate Kent ordered me to be committed for four months to undergo restoration pursuant to 18 U.S.C §4241(d) on December 20, 2023. Kent issued another Order on December 27, 2023 demanding my transport to Federal Medical Center (FMC) Butner within 10 days to undergo the treatment ordered on December 20, 2023.

Upon realizing the wait time to be transported across the Nation is 6-8 months for treatment under §4241(d), my uncle Thomas Kuhl began contacting Parker Douglas to contest this excessive delay or allow me to go to a Michigan State facility like I was waiting to do already and probably would have been there by then. Parker

refused to do as my uncle and I asked, so my uncle filed a motion on February 5, 2024. After the court rejected the motion, I attempted to file it prose, but the court rejected that also on Februarry 22, 2023. See Doc. no. 30 and 31.

After several more complaints and a letter, Parker filed a Motion to Compel Transport on March 5, 2024 see Doc. no. 33. This motion was denied on March 14, 2024 see Doc. no. 38. My uncle and I tried to contact Parker several times to raise concern that he did not raise the specific issues and arguments that we asked.

During the rest of March and all of April and May, my uncle and I called and wrote Parker several times with concerns about due process, speedy trial, and the four month limit of §4241(d)(1), but were completely ignored. My uncle filed a Habeas Corpus petition which was subsequently dismissed because the issues in the petition must be addressed in the criminal proceeding. See Kuhl v. Mendham, 1:24-cv-00428-JMB (W.D. Mich. May 29, 2024). Thomas Kuhl filed a Motion for Reconsideration which was denied on July 17, 2024 by Judge Beckering.

My father, David Kuhl, and my uncle Tom filed another Habeas petition while the above referenced one was still pending on May 8, 2024 which was subsequently dismissed for the same reason. See Kuhl et al v. Garland, 1:24-cv-00485-JMB (W.D. Mich. June 20, 2024).

I attempted file suit for injunctive relief but the case was

dismissed by Judge Maloney on April 3, 2024, see Kuhl v. Bureau of Prisons, 1:24-cv-239 (W.D. Mich.).

My family filed a Writ of Mandamus in the Sixth Circuit Court of Appeals while both Habeas petitions were pending and that Writ has still not been decided. See In re Thomas Kuhl, 24-1506 (6th Cir.).

Eventually my uncle began contacting attorneys to seek advice and spoke with a Mark Kriger out of Detroit. Mr. Kriger said that my uncle had valid concerns and Kriger could not understand why Parker refused to file anything. Kriger took it upon himself to contact Parker to see what was going on. After multiple attempts, over a period of about 3 weeks, Kriger finally got in touch with Parker Douglas. Parker claimed he thought I was already at FMC-Butner and that it would be appropriate to file a motion regarding the arguments and concerns raised by me and my family. This conversation between Parker and Kriger took place on June 14, 2024.

On June 17, 2024 I was transported by private jet directly to FMC-Butner. While there, I filed a pro se motion to remove Parker which was granted. See Doc. no. 50 of United States v. Kuhl, 1:23-cr-44.

The court appointed Britt Cobb as counsel who subsequently moved to withdraw and Scott Graham was appointed to represent me. I wrote Scott explaining that I felt I was in federal custody in violation of the U.S. Constitution and laws. However, Scott never

wrote back or raised my concerns with the court.

A report dated October 25, 2024 and a Certificate of Restoration of Competency to Stand Trial signed on October 29, 2024 was filed with the Court from FMC-Butner. I'm not sure when the Court, prosecutor, and Scott Graham received the report. However, I did not leave FMC Butner until November 5, 2024. I was transported by bus to a BOP facility in Atlanta, Georgia. On November 12, 2024, I was transported to Cimarron Correctional Facility in Cushing, Oklahoma by a combination of bus and plane. I was transported back to Newaygo County Jail on December 6, 2024 by a combination of bus and plane.

Now, I am currently at Newaygo County Jail and have been since December 6, 2024. A competency hearing was ~~sent~~ set for December 18, 2024, but was then rescheduled for January 13, 2025. I wrote Scott stating that the hearing should not be allowed to be rescheduled because of all the delays already and that the report is inadmissible and the hearing was untimely and therefore in violation of the law.

On January 12, 2025 I met Scott Graham for the first time and we spoke for 2 hours. The next day we went to the Competency hearing and I had to verbally object to the report being entered on the record because Scott refused, despite my several requests. Mr. Kent then had me removed from the court and the hearing was subsequently adjourned.

Due to the fact that I currently deemed incompetent, and represented by counsel, the District Court for the Western District of Michigan will not allow me to file any motions myself. Furthermore, any petition for Writ of Habeas Corpus will be dismissed on the grounds that the issues raised in such petition must be raised in the original criminal proceeding. As noted above, I have been subject to these judicial restrictions, as well as my family. Additionally, although my issues are not frivolus, and I, as well as my family, have made numerous requests and demands of counsel to raise such issues, they refuse to do so and literally ignore us.

It is sadly, but clearly established, that defendants' pro se motions will be rejected when represented by counsel. See United States v. Cromer, 389 F.3d 662, 680 (6th Cir. 2004); United States v. Martinez, 588 F. 3d 301, ~~308~~ 328 (6th Cir. 2009); United States v. Howton, 260 F. App'x. 813, 819 (6th Cir. 2008). Even more clearly established is that an incompetent defendant cannot be tried. Drope v. Missouri, 420 U.S. 162, 171 (1974); Owens v. Sowders, 661 F. 2d 584, 585 (6th Cir. 1981); United States v. White, 887 F. 2d 705, 708 (6th Cir. 1989).

Being that America is a free nation, it operates against a background presumption of individual liberty. See the dissent of this Court's Justice Gorsuch ~~'s dissent~~, with whom Justices Sotomayor and Jackson joined in Pulsifer v. United States, 144 S. Ct. 718 (2024) Citing Wooden v. United States, 595 U.S. at 391-392, 142 S. Ct. 1063 (2022). The commitment of an incompetent defendant is clearly a deprivation of liberty and must

comport with due process. With that being said, this Court held that the "indefinite commitment of a criminal defendant solely on account of his lack of capacity to stand trial violates due process." Jackson v. Indiana, 406 U.S. 715, 92 S. Ct. 1845 (1972).

In the wake of Jackson and the acquittal of John Hinckley Jr., Congress enacted the Insanity Defense Reform Act (IDRA) to overhaul the provisions governing pretrial competency determinations. See United States v. Reeves, 690 F. Supp. 3d 531 (W.D. N.C. Sep. 5, 2023); United States v. Donnelly, 41 F. 4th 1102, 1105 (9th Cir. 2022). Under IDRA, once a court declares a defendant incompetent, the court then commits the defendant to the custody of the Attorney General; and the Attorney General must hospitalize the defendant to determine whether or not he can be restored to competency. See 18 U.S.C. §4241(d). However, several district courts and appeal courts have decided differently whether there are two periods of time allowed for the initial commitment of an incompetent defendant, or if the entire period of initial commitment is limited to the strict four month limit of §4241(d)(1).

The Ninth and Eleventh Circuits have upheld the constitutionality of the involuntary mandatory commitment based on its limited duration and reasonable relation to the commitment's purpose. See United States v. Strong, 489 F. 3d 1055 (9th Cir. 2007) ("By its own terms, §4241(d) caps a criminal defendant's initial commitment for incompetency to a period of no more than four months."); United States v. Donofrio, 896 F. 2d 1301 (11th Cir. 1990) ("The due process

requirements of Jackson are met because the statute itself requires that the period of commitment be 'reasonable' for that purpose. The statute limits confinement to four months, whether more time would be reasonable or not.") Even the Sixth Circuit, whose decisions the district courts of Michigan must follow, has held that an incompetent defendant's initial commitment under §4241(d) is valid only up to four months. See United States v. Baker, 807 F. 2d 1315 (6th Cir. 1986). The Honorable Dabney L. Friedrich of th district court for the District of Columbia, in my honest opinion, had the most logical and lawful interpretation of §4241(d). in United States v. Carter, 583 F. Supp. 3d 94 (D. D.C. 2022). There, the court held that a violation of the four month limit in 18 U.S.C. 4241(d)(1) must be remedied by dismissal of the charges, and, if necessary, civil commitment. I do not agree, however, with the court's interpretation of the Speedy Trial Act (STA) in Carter. Also see United States v. McCarthy, 703 F. Supp 3d (M.D. Fla. 2023)

As time has went on, courts have interpreted §4241(d) in a manner that is unconstitutional and contrary to congressional intent and precedent of this Court founded in Jackson v. Indiana (1972). This is because §4241(d) has been split into three periods of commitment instead of two. Under this interpretation, an incompetent defendant committed for treatment pursuant to §4241(d) has an indefinite period of commitment in a non-treatment facility, like a county jail, where he awaits transport to a treatment facility for a period of time not to exceed four months. See 18 U.S.C. 4241(d)(1). If, after these two separate periods of time, the court finds a substantial

probability that the defendant can be restored to competency in the near future, the defendant can be committed for an additional reasonable period of time until he is restored or the charges are dismissed according to law; whichever is earlier. See 18 U.S.C. § 4241(d)(2)(A) and (B).

It has come to the point that defendants within every federal district, except those within the Ninth Circuit, are waiting longer than the four months allowed for treatment before they are transferred to a medical facility for an additonal four months. This issue, as will be shown by examination of the cases cited below, has been ongoing for approximately two decades.

As noted above, several courts have upheld the initial commitment under 18 U.S.C. § 4241(d) to allow for an indefinite pre-hospitalization confinement receiving no restoration treatment. See United States v. Brodeur, 1:24-cr-10051-JEK (D. Mass. Sep. 19, 2024); United States v. Magassouba, 544 F.3d 387 (2nd Cir. 2008); United States v. Delorme, CR-19-2322 JB (D.N.M. Nov. 17, 2023); United States v. Reeves, 690 F. Supp. 3d 531 (W.D. N.C. 2023); United States v. Alhindi, 24-10595 (11th Cir. Dec 23, 2024); United States v. Rendon-Romero, 5:21-CR-436-D (E.D. N.C. Aug. 6, 2024); United States v. Curbow, 16 F.4th 92 (4th Cir. 2021); United States v. Mouton, 4:20-CR-00501 (S.D. Tex. June 7, 2023); U.S. v. Lewis, 484 F. Supp. 2d 380 (W.D. Penn. Mar. 22, 2007); U.S. v. Lara, 1:21-cr-01930-MLG-1 (D. N.M. May 5, 2023); United States v. Leusogi, 2:21-CR-32-TS (D. Utah Oct. 19, 2022); United States v. Raja, 1:21-cr-00368-TWP-MG-2 (S.D. Ind.

May 17, 2023); United States v. Carter, 17-CR-190 (E.D. Wis. Oct. 16, 2019); United States v. Romero, 883 F.3d 1151 (9th Cir. 2016); United States v. Wazny, 3:21-CR-247 (M.D. Pa. Dec. 1, 2022); United States v. Smith, 764 F. Supp. 2d 541 (W.D.N.Y. 2011); United States v. Lee, 1:21-CR-20034 (S.D. Fla. Dec. 27, 2022); United States v. Yazzie, 2006 WL 2772636 (D. Ariz. 2006); United States v. Hernandez-Alvarado, CR-11-0777-PHX-GMS (D. Ariz. June 20, 2011); United States v. Lazaro-Cobo, CR-10-846-PHX-JAT (D. Ariz. Oct. 20, 2011).

I could continue to go on, but the list would be staggering. Regardless, of the outcomes, all of the cases above allow for an indefinite period of pre-hospitalization to be followed by a strict four month period of treatment for incompetent defendants committed pursuant to 18 U.S.C. §4241(d). Indefinite is defined as a time without a specific start, or, more often, a specific end. See Bouvier Law Dictionary (2012 Ed.). Also, the Merriam-Webster Dictionary defines indefinite as 1) not defining or identifying; 2) not precise; and 3) having no fixed limits. Interpreting 18 U.S.C. 4241(d) in a manner consistent with the cases above makes it unconstitutional and contrary to this Court's ruling in Jackson v. Indiana. The period of pre-hospitalization has no specific end and is consistently lasting longer than the four month period allowed for the purpose of the commitment. This period of confinement, depriving me and others of our liberty, bears no reasonable relation to the purpose of the commitment. Furthermore, there is no specific date upon which the four month treatment will begin using such

interpretation because it is unknown when the defendant will start receiving treatment. Therefore the treatment is indefinite.

I waited six months until being transported to FMC-Butner. I had not even been allowed a detention/bond hearing. Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action. Foucha v. Louisiana, 504 U.S. 71, 80, 112 S. Ct. 1780 (1992). Due process itself, reflecting the language of the Magna Carta, prevents arbitrary detention. The government was aware that I had been deemed incompetent by Kalamazoo County in case no. 2022-2031-FH sometime in late December of 2022 or early January 2023. As can clearly be seen, the Federal Government is experiencing substantial delays in the treatment and handling of incompetent defendants raising many constitutional concerns. Despite this knowledge, they decided to remove me from multiple ongoing criminal proceedings in Kalamazoo and Van Buren Counties of Michigan and disrupt my competency treatment and determinations to prosecute me on Federal charges for the same conduct already charged in Van Buren.

Multiple time limits under the IDRA were violated in this case. Firstly, the MCC Chicago evaluation under 18 U.S.C. §4241(b) and §4247(b) is to be limited to 30 days unless the Court grants an extension prior to the expiration of the 30 days. I arrived at MCC Chicago August 23, 2023, thus, the 30 days allowed expired on September 22, 2023. However, no extension order is shown prior to this date according to PACER. Actually,

no extension order is shown at all. The only thing on the record related to an extension is a letter from BoP entered on October 11, 2023, see Doc. no. 22. An extension allowed under §4247(b) is limited to 15 days in relation to §4241 evaluations to determine competency. This 45 day period expired on October 7, 2023, so even if an extension was granted the government exceeded the 45 days allowed as the BoP did not complete the evaluation and notify U.S. Marshals of such until October 12, 2023. Furthermore, the report was not provided to the district court until November 20, 2023 see Doc. no. 23. Remind you, during this period and to the present day, I am not detained under the Bail Reform Act.

Although the 45 days allowed for evaluation was done on October 7, 2023., it took over a month to complete and provide a report to the court. Then, after being reschuled multiple times, the competency hearing was held on December 18, 2023 a month after the district court received the report. Such delay was unnecessary, especially seeing as the report was simply stipulated to by both parties. I was not informed of the hearing, provided a copy of the report, nor allowed the oppurtunity to be present at the hearing. This is a violation of my due process rights and 18 U.S.C. § 4247(d). See United States v. Gillenwater, 717 F. 3d 1070 (9th Cir. 2013); Sturgis v. Goldsmith, 796 F.2d 1103, 1108-09 (9th Cir. 1986); United States v. Shawar, 865 F. 2d 856 (7th Cir. 1989); United States v. Hamilton, 107 F.3d 499 (7th Cir. 1997). I was not allowed to contest the finding of incompetency,

nor argue that I should be in the State medical facility.

After this unconstitutional hearing Magistrate Kent ordered me to be committed pursuant to 18 U.S.C. §4241(d) on December 20, 2023. However, no detention hearing was held. Subsequently, on December 27, 2023, Kent entered an order stating that I be transported to FMC-Butner within ten days. Although the transport order is convenient, the December 20th order committing me was enough to require my transportation in compliance with 18 U.S.C. §3161(h)(1)(F). See United States v. Turner, 602 F.3d 778 (6th Cir. 2010).

Although Parker was aware of the excessive delays in hospitalizing incompetent defendants committed under §4241(d), he originally told my uncle Tom that I would be gone in a week or two. However, after speaking to another inmate in my cell, I found out people are waiting at least 6 months and sometimes over a year to get to FMC's for treatment. I told my uncle about this and tried to call Parker several times to complain about not being at the hearing and the delay in transport that I was now anticipating. My uncle also called Parker and Parker refused to raise any motion with the court about our concerns unless I had not been transferred in approximately six months.

RECEIVED
FEB 12 2025
OFFICE OF THE CLERK
SUPREME COURT, U.S.

My uncle and I did not agree with this decision and I wrote and left messages letting Parker know. My uncle called as well and sent Parker a motion to file on my behalf in January of 2024 but when he spoke to Parker again, Parker became upset and

said that it was too early to file any motion concerning the delay in getting me to FMC-Butner.

At that time Parker was clearly blocking me access to the courts and providing ineffective assistance of counsel. Especially in light of the several split decisions amongst the nation and Sixth Circuit precedent in United States v. Baker (1986). Eventually after mailing the proposed motion to Parker and it still not being filed, my uncle filed a motion himself on February 5, 2024 on my behalf. See Doc. 30. I then tried to file the motion pro se, but again it was rejected. See Doc. no. 31. I then mailed the motion to Sharon Turek, Parker's boss, along with the order rejecting it and demanding it be filed.

On March 5, 2024, Parker and Turek filed a motion to compel transport, but it was a mockery and was only done to be able to say "I told you so". It did not address the possible speedy trial issues, due process concerns, IDRA violation issues, the fact I was already awaiting to go to a State treatment facility, or allowing me to go to a State facility instead. The fact that I was committed solely on account of being incompetent, especially without a detention hearing, for this indefinite period receiving no restoration treatment violated my due process rights and ran afoul of this Court's precedent in Jackson v. Indiana, as well as the December 27, 2023 order.

As of March 13, 2024 my uncle and I felt the speedy trial clock of 70 days had expired. However, we attempted to contact Parker numerous times to no avail. At the end of March, my

uncle Tom sent Parker another motion addressing the issue of the STA being violated and asked Parker to file it on April 1, 2024. Well, sad to say, Parker ignored this completely, as well as several more calls from me and my uncle.

Then the four month period of commitment allowed under §4241(d)(1) came and I still had not been transported. Again we tried contacting Parker multiple times at the end of April, and I sent a letter to the Public Defender Office to file a grievance against Parker in late April or early May 2024, but received no response. I even tried to speak to Parker but as soon as I said my name he hung up. An inmate in the cell with me, Jimmie Creekmore, was also represented by Parker and asked Parker to hold on one day when he had Parker on the phone. Jimmie then handed me the phone and I said "Hello, Parker?", and Parker said "yes," I said "this is Mr. Kuhl" and he immediately hung up. I called right back on my own phone account and of course Parker was unavailable.

Feeling that these circumstances were extraordinary and exceptional, my uncle and father filed petitions for habeas corpus as noted above. Judge Beckering ~~denied~~ dismissed both without ruling on the merits.

After being transferred to FMC-Butner on June 17, 2024, I successfully moved to get Parker removed. I tried to get Scott Graham to contest my detention due to it being beyond the four month period allowed under §4241(d)(1), but was only ignored. I wrote the district court informing them I should not be held at Butner beyond October

14, 2024 because that would be my 120th day at FMC-Butner, but my pleading was rejected. However I stayed at Butner 21 days beyond the 120 day limit, and spent at least 30 days amongst different facilities being transported back to Michigan.

Then, a competency hearing set for December 18, 2024 got extended without my knowledge or consent to January 13, 2025. I wrote Scott demanding he challenge the extension and raise issues of my due process and speedy trial rights being violated. To no surprise, my letters were ignored by Scott Graham, and no issues were raised.

On January 12, 2025, I met and spoke to Scott Graham for the first time. This was a day before my court date on January 13, 2025, and although we spoke for two hours and I gave him a 25 page motion outlying reasons to challenge the admissibility of the report and the proceedings as a whole. Scott refused to do so forcing me to do myself. Now the hearing has been adjourned, the report was not objected to being entered on the record, I'm still in federal custody under nothing but a §4241(d) commitment order, and my State cases are still unresolved.

This Honorable Court has jurisdiction to grant this Writ of Habeas Corpus under 28 U.S.C. §2241(a), as well as the All Writs Act 28 U.S.C. §1651. Writ of habeas corpus for discharge from imprisonment has been rightfully issued by a Justice of this Court. A Justice has the right to refer the matter to entire Court for its determination, where the case involved eventual exercise of appellate jurisdiction. Ex Parte Clarke, 100 U.S. 399, 25 L. Ed. 715 (1880). Although not an application for

Certiorari, I believe the Court should use a similar analysis in this matter. Certiorari will be granted where a clash of opinions in Courts of Appeals requires settlement of question. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S. Ct. 456 (1951). Partly because of different conclusions by Courts of Appeals, writs of certiorari will be granted. Shapiro v. United States, 235 U.S. 412, 35 S. Ct. 122 (1914). Certiorari is granted in cases where there is real and embarrissing conflict of opinion and authority between Courts of Appeals. NLRB v. Pittsburgh S.S. Co., 340 U.S. 498, 71 S. Ct. 453 (1951). This Court will grant certiorari to review judgment of U.S. Court of Appeals where it is contrary to decision of Court of Appeals for another circuit, and there is a need for uniform rule on point. Commissioner v. Bilder, 369 U.S. 499, 82 S. Ct. 881 (1962).

Here, we have split decisions amongst the Circuits and the district courts. One issue is that of the proper interpretation of the STA. Specifically, whether 18 U.S.C. §3161(h)(1)(F) applies to transportation to a place of hospitalization after being found incompetent and committed pursuant to 18 U.S.C. 4241(d). I feel that it does, and that 18 U.S.C. §3161(h)(4) applies to the time an incompetent defendant is being treated and evaluated, as well as the actual judicial proceedings concerning competency, not to the excessive delay in transporting a defendant to receive treatment and attend such judicial proceedings.

It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding if it may be, any construction which implies that the legislature was ignorant of the meaning of the

language it employed. Montclair v. Ramsdell, 107 U.S. 147, 2 S.Ct. 391, 395 (1883). Both provisions §3161(h)(1)(F) and (h)(4), to be applicable, require the delay to be "resulting from" the stated event - transportation and mental incompetence respectively. "In interpreting the resulting from language, the court noted that 'while an excludable ~~delay~~ event need not cause an actual delay to be applicable, a given exclusion must actually be the cause of the excludable event to be applicable.'" United States v. Dellinger, 980 F. Supp. 2d 806 (E.D. Mich. 2013) (quoting United States v. Sparks, 885 F. Supp. 2d 92, 100-101 (D.D.C. 2012)). The delay in my transfer did not "result from" me being incompetent. It resulted from the failure to take me to FMC-Butner, because of ordinary institutionalized delay and this is not sufficient to overcome the presumption of unreasonableness under §3161(h)(1)(F). See United States v. Castle, 906 F.2d 134 (5th Cir. 1990); United States v. Jervey, 630 F. Supp. 695 (S.D. NY 1986); and United States v. Noone, 913 F.2d 20 (1st Cir. 1990).

Although the latter three cases above concern defendants being transported to places of examination to determine if they were competent or not, it is irrational to believe "that Congress was less concerned about incompetent defendants than it was about defendants whose competency had not yet been determined. In both cases, trial cannot proceed until competency is established, and both classes of defendants appear equally worthy of Congressional concern for prompt adjudication." Dellinger, 980 F. Supp. 2d at 813.

However, several courts have held that the delays in transportation, no

matter how long or unreasonable, are excludable under §3161(h)(4). See United States v. Bauman, 07-20052, 2008 WL 5111135 (D. Kan. Dec. 4, 2008); United States v. Lewis, 484 F. Supp. 2d 380, 390-391 (W.D. Pa. 2007); United States v. DeGideo, CR 04-100 (E.D. Pa. May 18, 2004); United States v. Romero, 883 F.3d 1151 (9th Cir. 2016); United States v. Perry, 116 F. 4th 578 (6th Cir. 2024).

Other courts have held that while the delay is not excludable under §3161(h)(1)(F), it is excludable under §3161(h)(4). See United States v. Pendleton, 15-13617 (11th Cir. Dec. 9, 2016); United States v. Patterson, 872 F.3d 426 (7th Cir. 2017).

While the inconsistencies are most substantial amongst the district courts insted of the Courts of Appeals, I feel these rulings allowing the delays in transportation like mine are embarrassing for the courts, are contrary to Congress' intent, and run afoul of the rules governing statutory interpretation.

Multiple courts have ruled consistent with that of *Dellinger* and *Sparks*, finding that delays like mine are not excludable under any provision of the STA and §3161(h)(1)(F) applies. See United States v. Black, 21-CR-009-GKF (N.D. Okla. Nov. 22, 2022); United States v. Hernandez-Amparan, 600 F. Supp. 2d 839 (W.D. Tex. 2009); United States v. Olivas, 21-MJ-2051-MAT (W.D. Tex. Nov. 17, 2022).

"Section 3161(h)(1)(F) applies to transportation 'to and from places of examination or hospitalization,' without specifying the underlying reason for the 'examination or hospitalization.' If that provision was not meant to apply to transportation 'to and from places of examination or

hospitalization' for purposes of competency restoration, the language should have evidenced such a distinction." Dellinger, 980 F. Supp 2d at 813. The fact that the transportation states specifically "places of examination or hospitalization," and §4241(d)(1) states the Attorney General "shall hospitalize" the incompentent individual, clearly and logically infers that Congress intended §3161(h)(1)(F) to apply to ~~transfer of~~ transportation of incompetent defendants to places of hospitalization.

"The purpose of construction being the ascertainment of meaning, every consideration brought to bear for the solution of that problem must be devoted to that end alone.... It must be that, not something else. Not, for instance, an oppurtunity for a judge to use words as 'empty vessels into which he can pour anything he will - his caprices, fixed notions, even statesmanlike beliefs in a particular policy." Felix Frankfurter, Some Reflections on the Reading of Statutes, Col. L. Rev. Vol. 47, No. 4 page 529 (1947). The provision states hospitalization, and competency restoration necessarily requires hospitalization.

To interpret §3161(h)(4) as trumping §3161(h)(1)(F) with respect to hospitalization for restoration, but not so as to competency evaluations, would effectively rewrite the statute. See Magistrate Green's report and recommendation in United States v. Perry, 1:20-cr-0163 (Nov. 22, 2022 W.D. Mich.). Although the report was objected, I feel Green's analysis and determination is logical and consistent with Congressional intent. and rules of statutory interpretation.

Additionally, I request this honorable Court to follow its own precedent

and apply the rule of superfluities, the cardinal rule of statutory construction under which a statute should be interpreted so as not to render one part inoperative. Colautti v. Franklin, 439 U.S. 379, 392 (1979); see also Ysleta del Sur Pueblo v. Texas, 142 S. Ct. 1929, 1939 (U.S. 2022) (quoting Corley v. United States, 556 U.S. 303, 314 (2009)).

The term hospitalization is not specifically defined or expressly identified to exclude hospitalization for restoration, therefore it is proper to start with the assumption that the legislative purpose is expressed by the ordinary meaning and applies to any hospitalization, including that required under 18 U.S.C. §4241(d). See Richards v. United States, 369, U.S. 82 S. Ct. 585 (1962) and Russello v. United States, 464 U.S. 16, 104 S. Ct. 296 (1983). If the STA were to be interpreted in a manner consistent with that of the Sixth Circuit in Perry, F. 4th 578 (2024), and allow the three periods of time under 18 U.S.C. §4241(d), the exact issue outlined in Footnote 4 of Dellinger, 980 F. Supp 2d 806 (E.D. Mich. 2013), will continuously be encouraged and allowed.

The title which covers §3161, Speedy Trial Act, derives from the constitutional right to a speedy trial under the Sixth Amendment. While it is true an incompetent defendant cannot be tried, he still must not be negligently and arbitrarily delayed in his legal proceedings with no protections while continuously being deprived of his liberty. The title of a statute and the history leading up to its adoption, as aids to statutory construction, are to be resorted to only for the purpose of resolving doubts as to the meaning of the words used in the act in case of ambiguity.

See Fairport, P. & E.R. Co. v. Meredith, 292 U.S. 78 L.Ed. 1446 (1934). While the phrase "resulting from" is not ambiguous or difficult to understand, it is being misapplied. Sitting around after being found incompetent because the government refused to transport me, despite court order, does not result from me being incompetent. True I would not have needed the transport had I not been found incompetent, but the delay is not resulting from any relation to my competency because nothing related to my return to competency can happen until I am transported. Thus, following the time limit of §3161(h)(1)(F) ensures this period of delay, bearing no reasonable relation to restoring my competency, can not be unreasonably long.

Look to Justice Gorsuch's dissent, in which Justices Sotomayor and Jackson joined: "Suppose you are left with a reasonable doubt about whether a defendant or the government has the better reading of the law. In circumstances like that, another rule of construction supplies an answer. It is lenity. The rule of lenity is perhaps not much less old than construction itself." Pulsifer v. United States, 601 U.S. 144 S.Ct. 218 (2024); U.S. v. Wiltberger, 18 U.S. 76, 5 Wheat 76 (1820); Wooden v. United States, 595 U.S. 142 S. Ct. 1063 (2022). Courts construe ambiguous penal laws with lenity because a free nation operates against a background presumption of individual liberty. Pulsifer, 601 U.S.; Wooden, 595 U.S. Hence, the issues of the STA addressed in this pleading should be construed with lenity.

Not only has the STA been violated, but so have my due process

rights, the IDRA, the abstention doctrine, my rights under the Tenth Amendment, my speedy trial right under the Sixth Amendment, and the rules and principles of comity and federalism.

As was held by this Court in Jackson v. Indiana (1972), the indefinite commitment of an incompetent defendant solely on account of his incompetency violates due process. As noted above, the purpose behind the IDRA being enacted, was to comply with the ruling in Jackson. However, it is being interpreted by courts in a way that completely defeats this purpose. Not only is the interpretation being employed by numerous courts around the country allowing for an indefinite period of commitment, this period bears no reasonable relation to competency restoration.

Here, I've been held over 17 months in federal custody and have not been allowed a bail proceeding. At least one year of this period is the government's responsibility. After my return to Newaygo County Jail from the BOP psych evaluation at MCC-Chicago, I sat in Newaygo County Jail for 8 months. Two months were spent waiting for the evaluation report to be provided to the court and a competency hearing. Six more months were spent after the hearing, at which I was found incompetent, awaiting transport under 18 U.S.C. § 4241(d). During this period I was not held under the Bail Reform and I was not receiving any restoration treatment. As was held in United States v. Smith, 764 F. Supp. 2d 541 (2011 W.D.NY), "If there is no time limitation on defendant's commitment to the custody of the Attorney Genearal, then § 4241 is likely unconstitutional." citing Jackson v. Indiana. Although the court made this

finding, it interpreted §4241 in the exact manner which would make it unconstitutional.

The Ninth Circuit strayed from its logic of interpretting §4241(d) in United States v. Donnelly (2022). Originally, as noted above, the Ninth Circuit upheld §4241(d)'s constitutionality in Strong, 489 F.3d (2007), because the statute "caps a criminal defendant's initial commitment for incompetency to a period of no more than four months." However, Donnelly did not uphold this strict time limit and avoided a clear interpreation of §4241(d). Instead, it decided that whether or not there was a period allowed for commitment prior to the four month period allowed, such period could not last longer than the four months. While the Circuit Judge Watford concurred, he wrote separately that "I think Congress plainly imposed four months as the outside limit on the entire period a defendant is committed to the custody of the Attorney General for treatment and evaluation, inclusive of any pre-hospitalization delay." This ruling in Donnelly has led to ~~protect me and others~~ myself and others being deprived of our constitutional right to equal protection. The incompetent defendants of the Ninth Circuit are being admitted to FMC's at a faster rate than all others around the nation. See United States v. Reeves (W.D.N.C. Sep. 5, 2023).

Applying common sense, as we see early on by the cases of Strong (9th Cir. 2007); Baker (6th Cir. 1986); Donofrio (11th Cir. 1990) and less so, but even recently in the Honorable Watford's concurring in Donnelly, and the decision in Carter (D.D.C. 2022), §4241(d) obviously limits the

entire period of commitment to four months. Also, the decision in McCarthy, 703 F. Supp. 3d 1377 (Nov. 22, 2023) supports this common sense. As Frankfurter wrote on page 531 of, Some Reflections on the Reading of Statutes, "To say 'We agree to all the generalities about not supplying criminal laws with what they omit, but there is no canon against using common sense in construing laws as saying what they obviously mean,' is worth more than most of the dreary writing on how to construe penal litigation." (quoting Holmes, J., Roschen v. Ward, 279 U.S. 337, 339 (1929).

I feel that applying common sense, as well as the analysis and rules of statutory construction, the interprepations in Carter (D.D.C. 2022) and McCarthy (M.D. Fla. 2023) of §4241(d) are the most logical and correct. The purpose of the IDRA and its time limits were to protect an excessive and unconstitutional deprivation of liberty as to incompetent defendants while criminal charges remained pending over ~~their~~ their heads. Either dismissal and release or commencement of civil commitment was meant to be the remedy, as is consistent with the ruling in Jackson v. Indiana.

"The meaning of a statute is to be looked for, not in any single section, but in all the parts together and in their relation to the end in view." Justice Cardozo in Panama Refining Co. v. Ryan, 293 U.S. 388, 433, 439 (1935), dissenting. As to the end in view with respect to the IDRA, it is to determine competency efficiently in compliance with due process. It is also to ensure if found incompetent, the manner in which a defendant's return to competency, or determination that restoration is not possible is done efficiently and in compliance with due process. Further, these ends are to

conclude the pending charges, whether by conviction, acquittal, or dismissal. And, as clearly established, any deprivation of liberty requires due process. See Jones v. United States, 463 U.S. 354, 361, 103 S. Ct. 3043 (1983). The words "not to exceed four months" forecloses extensions. And if no extension has been given as required by 18 U.S.C. §4241(d)(2), then what must occur is dismissal as is required under §4241(d)(2)(B) because not even an extension, let alone restoration has "occurred earlier." See 18 U.S.C. §4241(d)(2).

The general purpose of the four month period and the language "shall hospitalize" is to require the Attorney General to limit the period of commitment and make sure the commitment bear a reasonable relation to competency restoration. Waiting six months or more in a jail receiving no treatment for restoration does not comply with either purpose. Thus, by not adhering to 18 U.S.C. §4241(d)(2)(B), would be to read to render §4241(d)(1) "insignificant, if not wholly superfluous." Carter, 583 F. Supp. 3d at 103 quoting TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S. Ct. 441 (2001). "The general purpose is a more important aid to the meaning than any rule which grammar or formal logic may lay down." Holmes, J., in United States v. Whitridge, 197 U.S. 135, 143 (1905).

To make matters worse, my delay in transportation was extended to appease the government's choice to prioritize 9th Circuit defendants before me. On June 17, 2024, aboard the ~~private~~ plane were two federal detainees being transported to FMC-Devens for restoration from California. One had been waiting about two months and the other three. This is

completely unfair and violates my right to equal protection as well as all other defendants committed under §4241(d) who aren't from the Ninth Circuit.

Even counting from the day I arrived at FMC-Butner, June 17, 2024, my stay there exceeded the four month time as did the completion of the report. Clearly §4241(d)(1) says a "reasonable period of time not to exceed four months as is necessary to determine" if the defendant can be restored or not. Thus, the Attorney General must make his determination through his authorized individuals and provide that determination via a report to the court. "The statute does not provide for 'two separate periods for evaluation and report preparation.'" United States v. Valdovinos-Hernandez, 2:23-mj-00733-NJK (D. Nev. Nov. 6, 2024) (quoting United States v. Rojas, 3:21-cr-00020-MMD-CSD, 2023 WL 5428665 (D. Nev. Aug. 23, 2023). I did not leave Butner until November 5, 2024 and the report is dated October 25, 2024, while my 120 days at Butner was done October 15, 2024. The Warden did not sign and issue the Certificate until October 29, 2024. Thus, the evaluation and report are in violation of my due process rights, the IDRA, and my right to a Speedy trial under the STA and Sixth Amendment, and therefore should be inadmissible. Also, due to the fact I was not allowed my right, under 18 U.S.C. § 4247(d), to be present at the December 18, 2023 competency hearing. This makes the entire commitment, evaluation, and report in violation of my due process rights and this case should be dismissed. ~~[illegible]~~

This excessive delay in transporting incompetent defendants is not extraordinary and did not just sneak up on the government and Attorney General, but has been years in the making and reasonably foreseeable. Also, the Attorney General has the authority to contract with a State, a political subdivision, a locality, or a private agency for the hospitalization of a person committed to his custody under the IDRA. See 18 U.S.C. §4247(i)(A); United States v Reeves, 690 F. Supp. 3d 531, 537 (Sep. 5 2023 W.D. N.C.)

However despite this knowledge, Congressionally authorized solution, and the fact I was already committed to State custody awaiting transportation to restoration treatment facility, the Federal government decided to disrupt and stop that State criminal proceeding, stripping the State and myself of our interests and rights. Thus, the State was preempted of its sovereign power and authority, protected by the Tenth Amendment, abstention doctrines, and the rules and principles of comity and federalism, to determine my competency, treat, and prosecute me.

Not only was the state of Michigan's rights and interests infringed upon, but also my own. As this Court instructed in Bond v. United States, 564 U.S. 211, 131 S. Ct. 2355 (2011): "The limitations that Federalism entails are not therefore a matter of rights belonging only to the States. States are not the sole benificiaries of federalism. See New York, supra, at 181, 112 S. Ct. 2408, 120 L. Ed 2d 120. An individual has a direct interest in objecting to laws that upset the constitutional balance between the National Government and the States when the enforcement

of those laws causes injury that is concrete, particular, and redressable. Fidelity to principles of federalism is not for the States alone to vindicate.

"The recognition of an injured person's standing to object to a violation of a constitutional principle that allocates power within government is illustrated, in an analogous context, by cases in which individuals sustain discrete, justiciable injury from actions that transgress separation-of-powers limitations. Separation-of-powers principles are intended, in part, to protect each branch of government from incursion by the others. Yet the dynamic between and among the branches is not the only object of the Constitution's concern. The structural principles secured by the separation of powers protect the individual as well.

"In the precedents of this Court, the claims of individuals-- not of Government departments--have been the principal source of judicial decisions concerning separation of powers and checks and balances." (Slip Opinion at 10).

Although Bond concerned a woman challenging a statute, too broadly applied, as unconstitutional pursuant to the 10th Amendment and the principles of federalism, the logic in the analysis, as stated by this Court, can be used to challenge actions by the government that transgress separation-of-powers limitations, by an individual who sustains a discrete justiciable injury from such governmental actions. Because the government removed me from State custody while awaiting transport, during ongoing criminal proceedings, to a treatment facility, my protections under the laws and Constitution of Michigan, as well as those of the United States, were violated.

Michigan has its own procedures to deal with the criminally accused who have been deemed incompetent. See MCL 330.2020-2044. The care, commitment, and treatment of the mentally incompetent has historically and traditionally been left to the States pursuant to their parens patriae or general police power. See United States v. Cohen, 733 F.2d 128 (~~D. D.C.~~ D.C. Cir. 1984); United States v. Duhon, 104 F. Supp. 2d 663 (W.D. La. 2000); Swayne v. LDS Social Services, 670 F. Supp. 1537 (D. Utah 1987); Addington v. Texas, 441 U.S. 418, 426 (1986). At times a State's laws and Constitution protect an individual's rights beyond the level required by the U.S. Constitution. Thus, the federal government took away those protections from me. My rights to due process, speedy trial, and counsel of choice ~~was~~ were stripped from me with respect to the State of Michigan and my ongoing proceedings. After 15 months from the date of a finding of incompetence, if not restored my case must be dismissed. It has been over 15 months and I'm not even given the oppurtunity to address my State matters because the federal government has preempted the competency proceedings. Also, my family retained counsel for me in the State case which carried less of a punishment than the federal matter for the same conduct and now my family cannot afford a federal attorney and I'm being sold out and poorly represented. Further, any due process owed to me in Michigan is basically void because the government has halted the proceedings. Any speedy trial rights in Michigan have also been infringed upon. All this has occured because the government interrupted and enjoined the ongoing State criminal proceedings, knowing I'd been deemed incompetent and committed for

treatment, and knowing the major issues and delays in the federal system as to dealing with incompetent defendants.

I feel the abstention doctrine should apply and the Federal Government abstain from prosecuting this case and release me to the custody of the State of Michigan. "Under the Younger abstention doctrine, a federal court may not interfere with or enjoin a criminal prosecution, a civil proceeding akin to a criminal prosecution, or a civil proceeding involving orders 'uniquely in furtherance of the state court's ability to perform its judicial function.'" Scott v. Blanton, 5:24-cv-139-TJC-PRL (M.D. Fla. May 13, 2024) (quoting Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 72-73 (2013). There is an ongoing criminal proceeding for CSC Third Degree in Van Buren County and related charges, alleging I had sex with one female that lives in the state of Michigan. I was deemed incompetent and a judicial order was entered mandating I be treated at a State Psychiatric Facility. The Federal government now came to prosecute me because allegedly I communicated with this girl through private texts and messages on Facebook which is a facility of interstate commerce. This allegedly happened 3 or 4 years ago and the girl was supposedly 15 at the time and I was 29. Regardless, the State prosecution was ongoing and the Feds enjoined and disrupted that ongoing State proceeding even though they knew I had been found incompetent.

Although Federal Courts have a strict duty to excercise jurisdiction that is conferred upon them by Congress, these are circumstances when they must abstain from doing so. See Quackenbush v. Allstate Ins. Co., 517 U.S.

706, 716 (1996); Cohens v. Virginia, 19 U.S. 264, 404 (1821). However, Cohens concerned whether a federal court, specifically this Court, had the right to review the judgment of a State Court, by Writ of Error. This Court held that is authorized to do so. Quackenbush concerned the Federal interests under the Federal Arbitration Act in a civil suit to allow a federal court to exercise jurisdiction over the suit even though it was originally brought in State Court. The Court held that it could exercise jurisdiction at least over the arbitration issue, and that it would be possible to stay the proceedings pending the outcome of the State. Federal abstention is not adhered to usually in civil proceedings when a substantial federal interest is concerned. Prosecution of a crime for which the same conduct is already being prosecuted in the State is discretionary and is not a substantial enough federal interest especially in these circumstances.

A similar argument was brought with respect to the federal government abstaining from prosecuting an individual already charged in the state for the same conduct, while the state prosecution was still ongoing. However, the defendant did not seem to assert his own rights and interests under the abstention doctrine and the court did not consider them in its analysis. That case is United States v. Esposito, 371 F. Supp. 3d 288 (April 1, 2019 M.D. La.). In Esposito, the government argued the Younger abstention is inapplicable because there was no interference with the state criminal proceedings. Specifically, that the federal prosecution did not enjoin, disrupt, or dictate the course of the State proceedings. I disagree with that argument as a whole, but even more so in my case. Treatment of the mentally ill is traditionally left to the states and I had been deemed incompetent before the Federal

government brought their indictment. Multiple State criminal proceedings were ongoing and had issued court orders for me to undergo restoration treatment in a State Facility. This Court extended Younger Abstention to particular civil proceedings that are akin to criminal prosecutions (see Huffman v. Pursue, 420 U.S. 592 (1975)), or that implicates a State's interest in enforcing the orders and judgmets of its courts. Sprint Communications v. Jacobs, 134 S. Ct. 584 (2013).

"[I]n our federal system, States possess primary authority for defining and enforcing criminal laws, including those prohibiting the gravest crimes." Torres v. Lynch, 578 U.S. 452, 136 S.Ct. 1619, 1628 n.9, 194 L. Ed. 2d 737 (2016). "We have also spoken of comity and Federalism. The States possess primary authority for defining and enforcing criminal law[s]. In criminal trials, they also hold the initial responsibility for vindicating Constitutional rights. Federal intrusions into State criminal trials frustrate both the states' sovereign power to punish offenders and their good faith attempts to honor Constitutional rights." Brecht v. Abrahamson, 507 U.S. 619 (1993). See Cohens v. Virginia, 6 Wheat. 264, 426, 428 (1821) (Marshall, C.J.) (stating that Congress "has no general right to punish murder committed within any of the States," and that it is "clear... that Congress cannot punish felonies generally"); Lugar v. Edmonson Oil Co., 457 U.S. 922, 936 (1982) ("Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power").

United States v. Lopez, 514 U.S. 549 (1995), is not an abstention case, but the principles set forth in Lopez are applicable to this case. The opinion in

Lopez sets forth many concepts and principles that apply here. The Constitution creates a Federal Government of enumerated powers. See Article 1, Section 8.

"The principles of limited national powers and state sovereignty are intertwined. While neither originates in the Tenth Amendment, both are expressed by it. Impermissible interference with state sovereignty is not within the enumerated powers of the National Government, see New York, 505 U.S., at 155-159, and action that exceeds the National Government's enumerated powers undermines the sovereign interests of States." See Lopez, 514 U.S. at 564 (1995).

"Perhaps the clearest example of traditional state authority is the punishment of local criminal activity." Bond v. United States, 572 U.S. at 858 (2014). See also United States v. Morrison, 529 U.S. 598, 618 (2000) ("[W]e can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.").

In Savoy v. Gusman, 15-4906 SECTION "A" (4) (E.D. La. Mar 1, 2016), a pretrial detainee under State criminal charges brought a federal habeas corpus under 28 U.S.C. §2241 to challenge the jurisdiction of the State of Louisiana because it was violating the federal government's authority over interstate commerce and interstate communications. Although federal constitutional questions were raised and the FBI originally was contacted and investigated the case, the federal court chose to abstain from interfering in an ongoing criminal proceeding where Savoy had not exhausted all State avenues for relief. "It is well-settled

that a federal court should not interfere in pending state court criminal proceedings absent the threat of irreparable injury that is both great and immediate." Savoy at page 5 citing Younger v. Harris, 401 U.S. 37, 46 (1971). There was no threat to the United States of irreparable injury that was great and immediate to justify disrupting my ongoing state criminal proceedings. I was incarcerated with no bond and Court ordered to be treated for mental health in a secure CFP State facility. As this Court stated in Ohio Bureau of Empl. Servs. v. Hodory, 431 U.S. 471, 97 S. Ct. 1898 (1977): "Younger and these cited cases express equitable principles of comity and federalism. They are allowed to allow the State an oppurtunity to "set its own house in order" when the federal issue is already before a state tribunal." ~~State~~ Due to Bond v. United States (2011) and New York v. United States, 505 U.S. (1992) it is clear that "federalism is more than an exercise in setting the boundary between different institutions of government for their own integrity." Bond 564 U.S. at 211. "State sovereignty is not just an end in itself: 'Rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power.'" New York 505 U.S. at 181 quoting Coleman v. Thompson, 501 U.S. 722, 759, 111 S. Ct. 2546 (1991) (Blackmun, J., dissenting)). Thus, an individual, being protected by comity and federalism, which are principles upon which Younger abstention is based, must have the right to argue that his ongoing state criminal proceedings should not be interrupted by the federal government. Especially when the charges in the State are based upon the same conduct of the federal indictment, and the state has found the individual

incompetent and issued a judicial order committing him to a State mental facility for restoration. "Federalism secures the freedom of the individual." Bond 564 U.S. at 221.

"Just as the separation and independence of the coordinate branches of the Federal Government serves to ~~protect~~ prevent the accumulation of excessive power in any one branch, a healthy balance of power between the states and the Federal Government will reduce the risk of tyranny and abuse from either front." Gregory v. Ashcroft, 501 U.S. 452, 458, 111 S. Ct. 2395 (1991).

In Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), the Supreme Court again addressed the issue of Federal Courts abstaining from hearing a case over which it did have jurisdiction. Althoug this was a civil case, the logic and reasoning behind abstention apply in this case. This Court started by noting that abstention from the exercise of Federal jurisdiction is the exception not the rule. However, the Court ultimately held that it should abstain for a variety of reasons.

The Court went through various abstention categories and ruled: "Although this case falls within none of the abstention categories, there are principals unrelated to considerations of proper Constitutional adjudication and regard for Federal-State relations which govern, in situations involving the contemporaneous exercise of concurrent jurisdiction, either by Federal Courts, or by State and Federal Courts. These principals rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." At page 808.

In assessing the appropriateness in the event of an exercise of concurrent jurisdiction, a Federal Court may also consider such factors as the inconvenience of the Federal forum; the desirability of avoiding piecemeal litigation; and the order in which the jurisdiction was obtained by the concurrent forums. See Colorado at page 800-801.

The delay and ambiguity in regards to the treatment of incompetent defendants and the IDRA renders the Federal forum inconvenient in this case. Also, permanent arrangements, if required, for the mentally ill must be made with the states. See U.S. v. Ecker, 489 F.Supp. 2d 130 (D. Mass. 2007). Here, I was already found incompetent and ordered by the court to undergo treatment in a State facility, protected by a clearer and more logical procedure that is more in line with the Constitution under the State forum rather than the federal forum. It is also more expensive and is more costly to tax payers to undergo a federal prosecution. Further, the matter was completely local and the federal jurisdiction is an arbitrary excessive reach of authority in an area typically left to the States. Thus, the inconvenience of the Federal forum weighs in my favor.

Additionally, the fact that the State charges cover the same transgressions as those of the federal statutes statutes this would simply be piecemeal litigation to not abstain. Also, the State was the first to obtain jurisdiction, therefore both factors of piecemeal litigation and the order of jurisdiction weigh in my favor.

Younger abstention is to apply so that federal courts do not interfere

with state criminal proceedings. Although in the context of a civil suit to invalidate an ongoing state prosecution, the logic and grounds to abstain apply here as in Younger.

"Generally, Younger abstention is properly invoked where: (1) there are on-going state judicial proceedings at the time the complaint is filed; (2) the proceedings implicate important state interests; and (3) the proceedings provide adequate oppurtunity to raise constitutional challenges." Abdullah v. Harrington, 51 F. 3d 271 (6th Cir. 1995). There were multiple on-going state criminal proceedings and judicial orders mandating my commitment and treatment for competency restoration; it is the State's right and sovereign power to implement and enforce criminal law, and the care and treatment of the mentally ill is historically the State's responsibility; and, any and all constitutional challenges could have been raised and litigated in the State courts and still inevitably subject to review by the federal courts if proper. Hence, Younger abstention is appropriate here.

"Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is a pending in a state court presenting the same issues... between the same parties." Brillhart v. Essex Ins. Co. of America, 316 U.S. 491, 495 (1942). While pertaining to criminal prosecutions, this federal prosecution is uneconomical and vexatious. Especially considering the competency factor. The State and Federal statutes cover the same type of acts. Although the people of Michigan and the United States are not the same parties by text, they are one and the same in this context.

The People of Michigan are citizens of the United States and the federal government only began this investigation into a sex crime after listening to my call to an attorney seeking advice to sue Wyoming City police for unlawful arrest. Upon hearing of this the federal government reached out to the Wyoming police in hoping to uncover more evidence for their fraud investigation. The Wyoming police told the federal government evidence of fraud was on my phones and they turned everything over to Michigan State Police (MSP). Upon learning this, the federal government reached out to the MSP who informed them that a further search of my phone revealed evidence of sexual abuse toward a minor and gave a copy of the entire contents of the phone download to the federal government. Thus, the people of Michigan are prosecuting me for an alleged criminal sexual act against a Michigan resident, and the United States is prosecuting me on behalf of that same Michigan resident who is inherently also a United States citizen.

This Court has observed that "various types of abstention are not rigid pigeonholes in which Federal Court must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." See Pennzoil Company v. Texaco, Inc., 481 U.S. 1 (1987).

Although there are cases that provide authority for the proposition that a federal court should not abstain from criminal prosecutions, these cases are inapposite to the circumstances here. In United States v.

Burcham, 91 F. App'x 820 (4th Cir. 2004), the Fourth Circuit rejected the defendant's argument that the district court erred by conducting a recovation hearing during the pendency of state criminal proceedings regarding the alleged new law violations in contravention of the Younger abstention because younger does not apply to federal criminal prosecutions. However, Burcham was already under the jurisdiction of the federal government because he was on supervised release, thus the federal government was first obtain venue and had to uphold a sentence already imposed which consisted of a term of supervised release. Also, the case of United States v. Geiger, 263 F.3d 1034 concerned a federal indictment brought after the state criminal proceeding was finished And although it cited Abbate v. United States, 359 U.S. 187 (1959), Abbate is also inapposite here because it also concerned a federal prosection brought after the state criminal proceeding was done. Here, the federal government literally interfered and delayed an ongoing state criminal proceeding even though a court order had been issued finding me incompetent and committing me for treatment. Further, United States v. Dicter, 198 F. 3d 1284 (11th Cir. 1999) misapplies because it refers to ongoing state investigation to revoke the defendant's medical practice license not a criminal state proceeding concerning the same alleged criminal conduct. United States v. Pirtle, CR 02-1891 BB (May 19, 2003 D. N.M.) is inapposite because it discusses the state pursuing collection of due child support but does not clarify whether the state actually had a criminal ongoing proceeding for that due child support.

Also, the state's collection supposedly began after the federal criminal prosecution for the child support was brought. Additionally, United States v. Long, 324 F.3d 475 (7th Cir. 2003), like Geiger and Abbate, is not applicable because the federal indictment was brought after the state conviction.

For these reasons, this Court should release Mr. Kuhl and the federal court should dismiss this indictment and abstain from exercising its very questionable jurisdiction to allow the State of Michigan to enforce its criminal laws and continue its criminal prosecution free from interference from the federal courts.

With respect to the reasons for not submitting this petition to the Western District of Michigan, the most obvious and justifying is the fact that it will be dismissed for the same reasons the petitions my uncle and father submitted were: failure to exhaust available remedies. However, as shown within this petition I have no available remedy because I am currently deemed incompetent, I'm represented by counsel, and counsel repeatedly refuses to address these non-frivilous concerns. It is a settled principle that a writ of habeas corpus may not be used... as a substitute for the ordinary proceedings of a trial court. United States v. Bowler, 62 F.3d 397 (5th Cir. 1995). However, "if there is no oppurtunity to obtain redress... or if the corrective process is so clearly deficient as to render futile any effort to obtain relief" the exhaustion requirement can be excused. See Duckworth v. Serrano, 454 U.S. 1, 3 (1981). Although many courts have adopted 'the general rule that §2241 is not a proper avenue of relief for federal prisoners awaiting

Federal trial," the only exception is where the defendant cannot seek relief in the pending criminal case. Medina v. Choate, 875 F.3d 1025, 1026, 1029 (10th Cir. 2017). Under the circumstances presented here I cannot seek relief in the pending criminal matter.

This matter should be dismissed on grounds of STA violations, Sixth Amendment Speedy Trial violation, Due Process violation, IDRA violation, Equal Protection violation, Abstention, Federalism and comity, separation of powers, Tenth Amendment, and Fed. R. Crim. P. 48(b).

Upon expiration of §4241(d)(1) order, and in absence of a §4241(d)(2)(A) order, it is the Attorney General who lacks authority to hold me in further custody under 4241(d); under such circumstances, the Attorney General must restore me to status quo ante my §4241(d)(1) confinement. United States v. Magassouba, 544 F.3d 387 (2nd Cir. 2008). My status quo ante the §4241(d) confinement is state of Michigan custody, although I would've been free by now, because I'm not detained in federal custody under the Bail Reform Act.

The only excuse for these attorneys and judicial officers refusing to raise or consider me and my family's concerns, is the fact they are conspiring against me in concert with the CPs and Elites. As I pointed out, by not objecting to alleged 4241(d) timing violations the Court will say I waived my right to do so. See United States v. Ryan, 52 4th 719 (8th Cir. 2022). Why will no one listen? This isn't a conspiracy? Please stop this continuous carriage of manifest injustice and grant me the relief I respectfully request.

Respectfully Submitted,

S. Kuhl March 21, 2025

S. Kuhl 61189510

1035 James

P.O. Box 845

White Cloud, MI 49349

S. Kuhl 6118951O
1035 James
P.O. Box 845
White Cloud, MI 49349




THIS MAIL HAS ORIGINATED

Clerk of Court
399 Federal Bldg.
110 michigan NW
Grand Rapids, MI 49503

LEGAL MAIL