United States District Court
Western District of Michigan

FILED - GR
April 3, 2025 11:06 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: KB 4/3

UNITED STATES OF AMERICA,

Plaintiff,

v.

SAMUEL ALEXANDER KUHL,

Defendant.

1:23-cr-00044-JMB-1

DEFENDANT'S ~~PLAINTIFF'S~~ RESPONSE TO ~~DEFENDANT'S EXPEDITED~~ GOVERNMENT'S RESPONSE TO DEFENDANT'S EXPEDITED MOTION FOR DISCOVERY (R.123)

Defendant asserts that disclosure of discovery has been insufficient to allow Mr. Kuhl to adequately prepare a defense and understand the total facts of this case. Moreover, the discovery does not comply with Fed. R. Crim. P. 16 and is not consistent with the Protective Order. (R.71) Therefore Defendant responds as follows to the government's response (R.123) to his request for expedited discovery.

CONTESTING AND CLARIFYING GOVERNMENT'S FACTUAL SUMMARY

The motel search referenced by the government (PageID.771) resulted in only one ~~cell phone~~ laptop not multiple. The search of a residence shared by Deonte Mills and Mr. Kuhl referenced by the government (PageID. 772) did not result in multiple cell phones and laptops being found inside the residence. The officers took cell phones from Mr. Kuhl as well as cash and did not count the money

in front of Mr. Kuhl nor provide a receipt. Also, the officers initially lied and said, for over an hour repeatedly, that they received a "tip" that guns were being stored in the home. After Kuhl repeatedly refused to consent to a search of the residence and thoroughly inquired officers about this "tip" they abandoned this "tip" about guns and stated they were investigating fraud.

Several hours later, the officers received a search warrant to go in the home where they discovered no guns, one cell phone behind or inside the crack of a couch, and a Google Chrome Notebook Mr. Kuhl's neice used for school. This just shows the sneaky, unlawful, dishonest conduct the officers have engaged in relating to dealing with Mr. Kuhl. It just so happens this search occurred the day Mr. Kuhl had been released on a $50,000 cash/surety bond (10%) for possession of ammunition in relation to a bullet allegedly found in a backpack obtained during the motel room search previously mentioned. Originally, Kuhl was lied to by officers for multiple days that he was charged with murder, but then went to court to be arraigned on ammunition charge. Further, Mr. Kuhl is quite certain no one in Kalamazoo County has been given a $50,000 bond for a bullet charge alone.

The iPhone obtained by the Indiana State Police (ISP) referenced in the government's response (Page ID. 772) did not have a SIM card in it according to the ISP Incident Report.

Strangely, the Samsung Galaxy phone seized during the October 13, 2022 traffic stop by Wyoming PD, allegedly had SIM card taped to the back

which Mr. Kuhl knows is false. Additionally, an iPhone was taken during this October 13, 2022 traffic stop from Mr. Kuhl as well which has mysteriously gone missing, and is not referenced beyond the Wyoming PD report of the traffic stop. There is exculpatory evidence in one or both of these phones seized during this Wyoming stop. Furthermore, Kuhl did comply with officers during this stop and was arrested without probable cause, which is why the prosecutor that reviewed the arrest refused to pursue charges. Now that it has been clarified that this stop has been the sole incident from which this indictment charging sex offenses stems from, Kuhl will be moving to suppress evidence and asked to have the pretrial motion deadlin extended to do so.

The government claims that the MSP began reviewing the contents of the Samsung Phone (falsely stated to have a SIM card taped to it) seized by Wyoming PD during the October 13, 2022 traffic stop, and came across a string of messages that MSP Detective Gensterbloom "quickly realized ... could relate to sexual contact with a minor. Accordingly, Mr. Gensterbloom obtained an additional search warrant on November 9, 2022 to review the contents of the Samsung phone turned over to him by Wyoming for such evidence of sexual contact with a minor. However, Det. Gensterbloom did not obtain a search warrant for the contents of the Samsung phone when it was first given to him by Wyoming PD. The Wyoming PD search warrant was unconstitutionally overbroad and did not even list the Samsung phone as an item connected to any criminal conduct. This search warrant is attached, please see the phones specified under the bold statement: "And

to there seize, secure, ~~tabt~~ tabulate and make return thereof according to law the following property or things which have been used in the commission of, or which constitute evidence of criminal conduct:". Under this statement only two phones are listed "Coleman's phone" and "Kuhl's phone". Accordingly, the search warrant and affidavit specify that a "Blue Samsung cell phone w/ sim card taped to back" was collected from the vehicle, a "Green iPhone" was linked to Kuhl, and a "White iPhone in black case" was linked to Coleman. Thus, there was no authorization to seize, secure, tabulate and make return thereof anything inside the Samsung or the Samsung itself.

Further, the affidavit contains false statements and omits material facts that negate probable cause to search the Samsung or the Green iPhone. Mr. Kuhl asserts that he fully intends to challenge his detention, arrest, and seizure and search of the Samsung and Green iPhone resulting from the October 13, 2022 Wyoming traffic stop, and has tried to discuss such with Mr. Graham. This is noted to plea with the court to extend the pretrial motion deadline to allow Mr. Kuhl to do so. Because the lack of specificity within discovery and the indictment, Mr. Kuhl could not ascertain that the investigation leading to this indictment stemmed from this October 13, 2022 stop. Now that this seems clearly to be the case, Mr. Kuhl will be severely prejudiced by not being allowed to move for suppression of the evidence in this case.

The indictment specifies a timeframe between May 13, 2021 and October ~~13~~ 31, 2021 and that Mr. Kuhl allegedly received and stored

photographs of sexually explicit conduct during this timeframe. However, the government clearly states it intends to introduce videos associated with chats between Mr. Kuhl and "Minor 1" dated 5/19/22, 5/27/22, and 8/22/22 as evidence during trial. Clearly this is not what the indictment states the grand jury based its finding of probable cause upon. Therefore, the discovery creates ambiguity as to what the indictment is founded upon and what evidence was provided to the grand jury and should be dismissed, or at least the transcripts of the proceeding disclosed.

The government completely ignores Mr. Kuhl's request for the search warrant SA Buttery claims to have obtained for the ~~False~~ Facebook account prior to the second search warrant obtained on Feb. 8, 2023. This first search warrant was supposedly obtained in connection with an FBI Detroit case and SA Buttery references this search warrant in his application for the Feb. 8, 2023 search warrant. SA Buttery claims it is the same Facebook account in the application for the Feb. 8, 2023 search warrant. However, the government states it is a different account. (Page ID 774). Mr. Kuhl needs this Facebook account search warrant associated with the Detroit FBI case to review its validity and why SA Buttery would be looking at a conversation alleged to be between Mr. Kuhl and Minor 1.

Furthermore, the government contends Mr. Kuhl was removed for belligerent behavior on January 13, 2025 (Page ID. 774), yet Mr. Graham refused to raise Mr. Kuhl's concerns and has exhibited several other instances of ineffective assistance that have prejudiced

Mr. Kuhl substantially.

GOVERNMENT'S RESPONSE TO MR. KUHL'S DISCOVERY REQUESTS

1. Disclosure of Victim Statements

Mr. Kuhl needs to see the statements made by ~~defendant~~ the alleged victim because MSP claims to have conducted their interview before executing the additional search warrant for the contents of the Samsung phone turned over to them from Wyoming PD. However, MSP claims they received the search warrant before conducting the interview. Thus, depending on the interview, the MSP may defend an invalid search warrant based on this interview of the minor and were acting in good faith. For Mr. Kuhl to effectively challenge the MSP's additional search of the Samsung's contents, he needs to see what was said during this interview.

Additionally, the Protective Order does not state that the victim's statements will be withheld. It specifies that only PII will not be disclosed but this is untrue because PII is disclosed in the discovery. Moreover, the government has provided a partial MSP Incident report for Identity Theft and the MSP interviewed the alleged minor victim in relation to this fraud investigation. The government has redacted the summary of this interview which is not related to the subject matter of Enticement or Sexual Exploitation and must be disclosed.

Further, the government refers to the Jencks Act to justify not disclosing such material. However, this infers that the Defendant will try to use the victim's statements to attack her testimony at trial and impeach her. However, this case is predicated upon conversation between the minor and Mr. Kuhl and therefore, messages originally sent by the minor may contradict what she stated to officers during this interview and is material to Mr. Kuhl's guilt or innocence. To adequately implement and prepare such defense strategy, Mr. Kuhl needs to view these statements.

There are also a voluminous amount of texts the government contends that Minor 1 sent to Mr. Kuhl which have not been disclosed. Only synopsises of text conversations, that are within the partial MSP report, alleged to be beetween Minor 1 and Mr. Kuhl has been provided. These communications are outside of the timeframe specified in the indictment (May - Aug. 2022). None of the text messages from May - October 2021, that the government claims to ~~have~~ possess, have been provided to Mr. Kuhl. Only Facebook messages from April 2021 through July 2, 2021 have been disclosed. Also, viewing and listening to the MSP interview of Minor 1 may disclose coercion, leading, intimidation by MSP.

2. Identification of Incriminating Cell Telephones

While the government does explain that the Samsung was obtained by Wyoming Police during the October 13, 2022 traffic stop, and the iPhone was seized by ISP during an incident in 2021, they do not identify the phone #s associated with the phones or the service provider. Due to the lapse in time and the numerous cell phones taken from Mr. Kuhl it is impossible to know this info.

Mr. Kuhl needs this information to obtain phone records in order to challenge the government's evidence. For example, NO message shown in discovery thus far shows Mr. Kuhl requesting any sexually explicit photographs from Minor 1. If it is contended such requests were made by call, Mr. Kuhl will need to obtain phone records to see if a call was placed shortly before any alleged depiction of "sexually explicit conduct" was sent to him from Minor 1.

Additionally, the inconsistencies and falsities about SIM cards, specifically, ISP stating no SIM Card was in the IPhone and Wyoming stating falsely that a SIM Card was taped to the back of the Samsung phone, can be proven as false if phone #s and SIM Card ID #s are not consistent with what the phone company has on record for the phones' IMEI #s. This will clearly show misconduct by the law enforcement agencies and/or government involved in this case. Also, the MSP Incident report claims it received a BLU/GRN (blue/green) Samsung phone from Wyoming. However, Wyoming clearly identifies a Blue Samsung phone (w/ sim card taped to back) and a Green iPhone as being seized from the traffic stop and only alleges the Green iPhone is "linked to Kuhl." Where is the SIM card that was taped to the back of the Blue Samsung? Where is the green iPhone? Where is the SIM card that was inside of the Blue Samsung phone? Where is the Samsung Galaxy that ISP claims to have seized? Where is the SIM card that ISP claims was absent from the iPhone, does the government claim it magically appeared?

3. Disclosure of Search Warrants Relating to Incriminating Cell Phones

The government claims to have provided Mr. Graham with a copy of the January 25, 2023 search warrants and affidavits relating to the cell phones containing CSAM. (PageID. 776) However, Mr. Kuhl received only two search warrants and corresponding affidavits from Mr. Graham and the government thus far. One is the Wyoming PD search warrant and affidavit. The other is the Feb. 8, 2023 Facebook search warrant and application for such. Not even the MSP search warrant obtained to go through the contents of the Samsung phone provided to MSP by Wyoming PD was provided to Defendant. Neither was the January 25, 2023 search warrant and affidavit, nor the evidence obtained from this January 25, 2023, search warrant.

The government claims to have supplemented discovery after January 15, 2025 (PageID. 774 and 776), but Mr. Kuhl has received none of these supposed supplements. Mr. Kuhl has also requested warrants and affidavits relating to all devices suspected to be his. The government claims these were also provided to Mr. Graham (PageID. 776), but Mr. Kuhl has yet to receive them. Mr. Kuhl has only received synopses of text conservations for May–August 2022 prepared by MSP, and <u>nowhere</u> does Mr. Kuhl request sexually explicit photos or videos from Minor 1. Also, Mr. Kuhl has not been provided with the message(s) the government contends to present at trial under FRE 404(b) to show Mr. Kuhl allegedly attempting to persuade a second minor female to have sexual relations with him. (PageID 249).

As the government concedes, Rule 16 requires disclosure of any documents or tangible evidence in its possession, custody, or control. (Page ID. 776). All texts or Facebook messages between Mr. Kuhl and Minor 1 and the alleged second minor have been requested multiple times but have not yet been disclosed. These are documents and/or tangible evidence. So are the IMEI, Phone #'s, SIM Card ID #s, and specific models of the phones subject to forfeiture. Samsung Galaxy is not enough because there are several models of the Galaxy. Even the phones not subject to forfeiture must be identified to allow Kuhl to ascertain that SIM cards were not switched or phones searched prior to lawful authorization or beyond the timeframe allowed by the search warrant. For example, the Facebook search warrant was limited to 14 days or Feb. 22, 2023 to be executed. The messages are on paper. Who kept track of these message transcripts to make sure copies weren't made and the transcripts were not reviewed past Feb. 22, 2023?

4. Disclosure of All Details Regarding Fraud Investigations of Kuhl

SA Buttery refers to searching the Facebook account associated with Mr. Kuhl prior to obtaining the February 8, 2023 search warrant. Buttery claims to have observed conversation between Mr. Kuhl and Minor 1 as a result of that first Facebook search warrant connected to an FBI Detroit case. However, it is not clear if Buttery stating he observed this alleged conversation while initially executing the Detroit case

Facebook search warrant or if he went back and reviewed the messages obtained by the Detroit case search warrant to look for conservation between Mr. Kuhl and Minor 1. Why was ~~Mr. Kuhl~~ SA Buttery searching the Facebook account in connection with a Detroit case? How old was this supposed search warrant? Who maintained the transcribed messages to make certain the time limit to review them was followed? Was there even a time limit? What was this mysterious FBI Detroit case about? Why would SA Buttery be rummaging through this conversation between Minor 1 and Mr. Kuhl anyways? Was there even probable cause for such Facebook search warrant?

These questions and information are important because the statement by SA Buttery in his application for the February 8, 2023 search warrant specifically states he observed messages between Minor 1 and Mr. Kuhl on this Facebook account due to a previous search warrant. This previous search warrant is connected to the FBI Detroit case. Without this statement the nexus between the Facebook account, Mr. Kuhl, and Minor 1 is severely lacking. Therefore, Mr. Kuhl must be afforded ample oppurtunity to analyze this search warrant and affidavit as well as the facts underlying its request.

Then the government references a first Facebook search warrant obtained by MSP Det. Gensterbloom, but the MSP does not reference searching any Facebook associated with Kuhl for fraud. (PageID.777) SA Buttery does not reference any Facebook search of an account associated with Mr. Kuhl that was executed by MSP. SA Buttery references his

previous search of the Facebook account in connection with this Detroit case and has personally observed messages between Minor 1 and Mr. Kuhl on that account. Thus, the claim by the government that this investigation "has no demonstrable bearing on the present charges" (Page ID.777) is contradicting the material statement in SA Buttery's Feb. 8, 2023 search warrant application. The demonstrable bearing is the fact that these Facebook messages are critical to the government's case, and without Buttery's statement stemming from the Detroit case search warrant, the Facebook would have been lacking the requisite nexus to Mr. Kuhl and Minor 1. Moreover, the Facebook would not have even been known of. MSP claims to have searched Minor 1's Facebook and found no messages between her and Mr. Kuhl.

## SUMMARY AND CONCLUSION

For these reasons, and those stated in Mr. Kuhl's original motion for Discovery (R.98), Mr. Kuhl requests the following:

1. MSP interview with Minor 1 in relation to Identity Theft Report and ~~CSP~~ CSC report. If not both, at least Identity Theft Report. The government provided the report in discovery and thus opened the door for this interview to be unredacted. It is not PII and is not related to the subject matter of the testimony of Minor 1.
2. The search warrant and affidavit for Facebook account "Shane Shane" in connection with FBI Detroit Case. Also the facts and reports underlying

this Detroit case and its nexus to the Facebook account.

3. Phone #, IMEI #, SIM ID #, and specific model of, the iPhone obtained by ISP, the Samsung Galaxy obtained by Wyoming PD, the Samsung Galaxy S21 obtained by ISP, the Green iPhone obtained by Wyoming PD.
4. The SIM CARD ID # of the SIM Card allegedly taped to the back of the Samsung obtained by Wyoming PD.
5. A complete transcript of all text and Facebook messages between Minor 1 and Mr. Kuhl in the government's possession, custody, or control, or in the possession, custody, or control of law enforcement.
6. Evidence logs and property logs showing how such phones, flashdrives, facebook, messages, and other evidence/property related to this case was maintained.
7. Complete MSP Incident Reports # 0000087-22 (Identity Theft) and 0000091-22 (CSAM) including search warrants and affidavits.
8. January 25, 2023 search warrant and affidavit for two cell phones allegedly belonging to Mr. Kuhl, as well as a picture of these two phones.
9. All body, dash, and interior vehicle cam footage from the Wyoming Oct. 13, 2022 traffic stop.
10. Cam footage/recording of Mr. Kuhl's statement to MSP referenced in the Government's pretrial conference statement. (R.66) Supposedly dated 1/29/22.
11. Any exculpatory evidence, including but not limited to Minor 1's criminal history, evidence of sexual relations with older men. Or any such evidence whether exculpatory or not.

Respectfully submitted,

S. Kuhl March 31, 2025

S. Kuhl 61189510
1035 James
P.O. Box 845
White Cloud, MI 49349

Samuel Alexander Kuhl #61189-510
Newaygo County Jail
P.O. Box 845
White Cloud, MI 49349






FOREVER / USA

Clerk of the Court
U.S. Dist. Court
399 Fed. Bldg.
110 Michigan NW
Grand Rapids, MI 49503

THIS MAIL HAS ORIGINATED FROM THE NEWAYGO COUNTY JAIL

LEGAL MAIL

49503$2363 C040