UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FILED - GR
April 25, 2025 10:51 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: KB SCANNED BY: KB / 4/25

UNITED STATES OF AMERICA,
Plaintiff,

v.

SAMUEL ALEXANDER KUHL,
Defendant.

Case No. 1:23-cr-44
Hon. Jane M. Beckering
Oral Argument Requested

## MOTION TO DISMISS COUNT TWO

Now comes Defendant Samuel Kuhl, proceeding pro se, respectfully requesting this Honorable Court to dismiss Count 2 of the superseding indictment. The facts presented by the Government in the instant case - which (if true) make out a traditional, non-commercial wholly-local and private statutory rape offense - do not establish the type of conduct Congress ~~intendedto or~~ intended to or is allowed to target in enacting 18 U.S.C. §2422(b). Accordingly, 18 U.S.C. §2422(b) violates the Tenth Amendment to the U.S. Constitution and Count 2 must be dismissed, or it does not apply to Defendant's conduct.

## STATUTORY BACKGROUND OF 18 U.S.C. §2422(b)

Subsection (b) was originally added to §2422 by the Telecommunications Act of 1996. Pub. L. No. 104-104, §508, 110 Stat. 56 (1996). "However, the over-arching purpose of the Telecommunications Act is to end local telephone company monopolies and promote competition in local telephone

markets." Quick Communications v. Michigan Bell Telephone, 515 F.3d 581, 585 (6th Cir. 2008); see also Destek Group v. New Hampshire Public Util., 318 F.3d 32, 37 (1st Cir. 2003) ("A principal purpose of the Telecommunications Act is to increase competition in the market for local telephone services.")

Two years later, subsection (b) was amended as part of the Child Protection and Sexual Predator Punishment Act of 1998, a bill that was described as "a comprehensive response to the horrifying menace of sex crimes against children, particularly assaults facilitated by computers." H.R. Rep. No. 105-557, at 10 (1998). According to Congress, the statute sought to provide "law enforcement with the tools it needs to investigate and bring to justice those individuals who prey on our nation's children." Id.

§2422 originates from the Mann Act (White Slave Traffic Act), which was enacted in 1910. The act made it "an offense to knowingly transport or cause to be transported, etc., in interstate commerce, any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce any such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice." Caminetti v. United States, 242 U.S. 470, 485 (1917).

The Mann Act was enacted amidst reports that the importation of illegal aliens for prostitution and other immoral purposes was a most troubling aspect of the immigration problem. See Report Before Congress by the U.S. Commissioner General of Immigration on the Repression of the

Trade in White Women, S. Doc. No. 196, 61st Cong., 2d Sess. (1909). Moreover, it was not intended to regulate voluntary prostitution (responsibility for which remained with the individual states), but to prevent "panderers and procurers" from compelling women and girls against their wills and desires to engage in prostitution. See H.R. Rep. No. 47, 61st Cong., 2d Sess. (1909). U.S. v. Sabatino, 943 F.2d 94, 103 (1st Cir. 1991).

§2422(b) criminalizes all communications made using telephone or internet regardless of whether those communications are made entirely intrastate, as long as the communications are used to convince a ~~prion~~ minor to agree to prostitution or any other "illegal sexual activity." As mentioned above, subsection (b) was a response to the horrifying menace of sex crimes against children, particularly those facilitated by computers. Thus, Congress has labeled phone and internet services an instrumentality of interstate commerce, which must be free from immoral purposes.

18 U.S.C. §2422(b) Punishes All Communication Meant To Achieve A Mind State Of Assent Regardless of Intent

"The government must prove that the defendant intended to cause assent on the part of the minor, not that he acted with the specific intent to engage in sexual activity." U.S. v. Lee, 603 F.3d 904, 914 (11th Cir. 2010); see also U.S. v. Faust, 795 F.3d 1243 (10th Cir. 2015)

(holding that §2422(b) "criminalizes the sexual grooming of minors, regardless of any intent to consummate the illegal sexual activity."); U.S. v. Dwinells, 508 F.3d 63,65 (1st Cir. 2007) (rejecting the fact "that section 2422(b) should be interpreted to include, as an additional element of the offense, an intent that the underlying sexual activity actually take place").

The Inevitable Use of Internet and Cell Phones Today

"[T]exting is quickly becoming (if it has not already become) our primary method of communicating with friends and family." Thrower v. Universal Pegasus, Int'l Inc., 484 F.Supp. 3d 473, 490 (S.D. Tex. 2020); see also In re State for a Search Warrant, 2023 NY Slip. Op. 50589(U), No. B-134-2023 (N.Y. Crim. Ct. June 16, 2023) ("It is no overstatement that cellular telephones are ubiquitous in the United States.") (See footnote 1)

Indeed, ~~nearly~~ over a decade ago the Supreme Court recognized that cell phones were at that time already "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy" Riley v. California, 573 U.S. 373, 385 (2014). Accordingly almost all remote communication is made by phone services today and is thus within the excessive over-reach of the federal government under §2422(b). This is true regardless of location or commercial purpose.

The same can be said of the internet which now offers a multitude

of platforms that allow private non-commercial communications via instant messaging. Almost every American today, that is physically and mentally capable of doing so, utilizes some form of the internet multiple times aday. Indeed, the law library in the Newaygo County Jail that Defendant uses to research the law is connected to the internet.

It goes without saying that we are "in a modern society, where one can hardly complete menial tasks without using a computer or the internet." U.S. v. Senke, 986 F.3d 300, 318 (3rd Cir. 2021) citing U.S. v. Holena, 906 F.3d 288, 292 (3rd Cir. 2018). "[T]his Nation, as well as the rest of the world, has experienced an era of rapidly changing technology and explosive growth in the use of the Internet. Today, millions of people across the globe utilize the internet on a regular basis for communication, news gathering, and commerce." Access Now, Inc. v. Southwest Airlines, Co., 227 F.Supp.2d 1312, 1314 (S.D. Fla. 2002).

## States Are Competent to Independently Punish Crimes Committed on the Internet

"Our records show that at least 2,000 agencies have purchased a range of products and services offered by mobile device forensic tool (MDFT) vendors. Law enforcement agencies in all 50 states and the District of Columbia have these tools. Each of the largest 50 police departments have purchased or have easy access to MDFTs." Koepke, Mass Extraction: The Widespread Power of U.S. Law Enforcement to Search Mobile Phones,

Upturn Toward Justice in Technology, page 8 (2020). "Since 2018, state agencies in Michigan have spent more than $1.1 million, and the Indiana State Police have spent at least $510,000 on MDFTs since 2015." Id. at 36. This Mass Extraction pubishing by Upturn shows the millions of dollars spent among state law enforcement agencies and the capability of the MDFTs they are buying. Quite suprisingly, Michigan seems to be the biggest spender at the time the book was published in October 2020.

Every State, including Michigan, punishes the use of a computer (which every smartphone is) to commit a crime. Michigan's punishment for using a computer to commit a crime varies depending on the maximum sentence of the underlying crime. See MCL 752.796, and MCL 752.797. Indeed, under Michigan law it is advised that a consecutive sentence may be imposed for using a computer to commit a crime.

The Federal Government Is One of Enumerated Powers

Congress does not exercise a general "police power," such power belongs to the States. Bond v. U.S., 572 U.S. 844 (2014). As James Madison wrote: "The powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the state governments are numerous and indefinite." The Federalist No. 45, page 292-93. "Perhaps the clearest example of traditional state authority is the punishment of local criminal activity." Bond, 572 U.S.

at 858; see also United States v. Morrison, 529 U.S. 598, 618 (2000) ("[W]e can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.").

The Constitutional Convention rejected language proposed by Gunning Bedford of Delaware that would have given Congress power "to legislate in all Cases for the general Interests of the Union, and also in those Cases to which the States are separately incompetent, or which in the Harmony of the United States may be interrupted by the Exercise of individual Legislation." Farrand, ed. 2 Records of the Federal Convention at 131-32 (Yale 1966). As Madison also wrote in Federalist No. 45: "The powers reserved to the several States will extend to all the objects which, in the ordinary course of affairs, concern the lives, liberties, and properties of the people, and the internal order, improvement, and prosperity of the State."

## Deeming the Entire Internet and Phone Services as Facilities of Interstate Commerce to Criminalize All Improper Use of Such Services Unconstitutionally Enlarges Congress's Limited Powers Due To The Technological Advances In Our Modern Society; Such Enlargement Runs Afoul of The Tenth Amendment

As the Supreme Court recognized almost 90 years ago: "Undoubtedly, the conditions to which power is addressed are always to be considered when the exercise of power is challenged. Extraordinary conditions may call for extraordinary remedies. But the argument necessarily stops short of an attempt to justify action which lies outside the sphere of constitutional authority. Extraordinary conditions do not create or enlarge constitutional power. The Constitution established a national government with powers deemed to be adequate, as they have proved to be both in war and peace, but these powers of the national government are limited by the constitutional grants. Those who act under these grants are not at liberty to transcend the imposed limits because they believe that more or different power is necessary. Such assertions of extraconstitutional authority were anticipated and precluded by the explicit terms of the Tenth Amendment," Schechter Poultry Corp. v. United States, 295 U.S. 495, 528-29 (1935).

The complexity of the internet today incorporates abilities far beyond that of an interstate railroad company used to transport goods and people across the country. Such railroad companies are the origin of the "channels of interstate commerce" phrase used by the Supreme Court in Caminetti, 242 U.S. at 491. Indeed, the internet can be utilized for commerce in a remote sense, however it is emphatically utilized for private communications between friends and family completely intrastate with no relation to commerce. The telephone service even more so.

"This 'link' to interstate commerce, which is tenuous at best, also

effectively gives the federal government unlimited jurisdiction, since there is very little in today's society that, when aggregated, would have no impact on interstate commerce. We have put aside common sense in order to federalize conduct which we believe needs to be punished." U.S. v. Joubert, 778 F.3d 247, 257 (1st Cir. 2015) (Circuit Judge Torruella concurring).

Accordingly, the government is not attempting to regulate commerce among the several states, or even the channels of such, but is instead exercising an unconstitutional general federal police power over all communication used to facilitate even state sex crimes that have no affect on interstate commerce. Thus, the federal government is turning every local statutory rape into a federal offense.

## 18 U.S.C. §2422(b) Does Not Punish Enticement As It Claims But Covers All Sexually Oriented Conversation With A Minor

It seems all courts have consistently held that §2422(b) prohibits the persuasion, or overcoming the will of a minor. Indeed, it seems the Supreme Court even recognized that the Mann "Act reflects the supposition that the women with whom it sought to deal often had no independent will of their own, and embodies, in effect, the view that they must be protected against themselves." Wyatt v. United States, 362 U.S. 525, 530 (1960). However, caselaw displays that it is not persuasion or

enticement that §2422(b) prohibits, it is any conversation by any means of facility of interstate commerce that is in furtherance of a sex crime of a minor regardless of the minor's willingness.

The Seventh Circuit upheld a district court's jury instruction that "The minor's willingness to engage in sexual activity is irrelevant because, by law, a minor is unable to consent to sexual activity" in a §2422(b) case. See U.S. v. Rossi, 21-3165, page 4 (7th Cir. June 22, 2022). The district court of Hawaii ruled the same way in U.S. v. Macapagal, 19-cr-00080-DKW-1 (D. Haw. Sep. 25, 2020); see also U.S. v. Nishida, 20-10238 (9th Cir. Jul. 26, 2021) (same); U.S. v. Jakits, 2:22-cr-194, page 12 (S.D. Ohio May 2, 2023) ("it is simply not 'a requirement of [§2422(b)] that the victims not initially be in a state of assent or consent to sexual activity.'") (quoting U.S. v. Peterson, 977 F.3d 381, 389-90 (5th Cir. 2020)).

Accordingly, §2422(b) punishes any criminal sexual activity with a minor, not the persuasion by use of a means or facility of interstate commerce. This type of general police power is not allowed to the federal government, but is reserved to the States. See U.S. v. Lopez, 514 U.S. 549, 584-85 (1995) (Thomas, J., concurring) "Indeed, on this crucial point, the majority and Justice Breyer agree in principle: The Federal Government has nothing approaching a police power." Thus, the question should not even be whether Congress meant to criminalize all illegal sexual activity with minors, but whether Congress has the constitutional power to do so. The answer is no!

## It is Appropriate To Refer to Basic Principles of Federalism Embodied in The Constitution to Resolve Ambiguity in a Federal Statute (Bond, 572 U.S. at 859)

In §2422(b), the ambiguity derives from the contradiction between two phrases in the statutory text. The phrase "knowingly persuade, entice, etc." and "any sexual activity" that is illegal. One cannot persuade someone to engage in any activity that, that someone (minor) cannot consent to in the first place. Thus, the federal government is reaching into every digital conversation, local and non-commercial matters not, to turn every instance of illegal sexual activity with a minor into a federal offense. This is regardless of whether the use of the remote communication was used to seek out minors and overcome their will or take advantage. If an individual already had developed an illegal intimate relationship with a minor in person, and at a later date they text each other and the minor says "I miss you," and the adult responds "I know me too," then the minor asks "are you still coming to see me later?" and the adult responds "of course I can't wait to make love to you again," the adult has violated §2422(b). This is a violation of §2422(b) regardless of location, persuasion, or commercial nexus.

Accordingly, ambiguity also derives from the phrase "using the mail or any facility or means of interstate or foreign commerce." Private conversations between two individuals is not using a means of interstate or foreign commerce because they are using private devices and private non-

commercial sectors of phone and internet personal communication services. There is no intent or knowledge of such communications affecting any other communications outside of their own, and indeed it does not. No other person or communication can utilize this private and secure sector of the phone or internet to correspond. Thus, such a broad reach of the phrase "any facility or means of interstate or foreign commerce" infringes upon the Several States' powers which "concerns the lives, liberties, and properties of the people, and the internal order, improvement, and prosperity of the State." Madison, Federalist No. 45.

## 18 U.S.C. §2422(b) Does Not APPLY To DEFENDANT's CONDUCT AND/OR Its APPLICATION VIOLATES The Tenth Amendment

Since the end of 2020 state and federal law enforcement agencies seized over 50 cell phones alleged to be utilized and controlled by Mr. Kuhl, as well as a handful of computers. Defendant is not meaning to negate from the overwhelmingly negative impact crimes of a sexual nature have on minors. However, Mr. Kuhl is not the type of individual Congress sought to bring to justice under the Child Protection and Sexual Predator Punishment Act: individuals who prey on our nation's children. This brings me back to the fact that throughout all of the electronic devices seized over a span of two years, only one instance of an ongoing sexual relationship with a minor is alleged and before the

Court in the instant case.

Moreover, as the Government contends and discovery shows, the minor involved in this matter repeatedly portrayed herself as 17 years old, which is above the legal age of consent in Michigan. According to the Gonvernment, and viewing discovery, Mr. Kuhl and Minor 1 became involved in an intimate relationship for multiple months before Minor 1 eventually claimed that she was 15 years old. Multiple times Defendant ceased communication with Minor 1, however, after some time Minor 1 would reinitiate contact and Mr. Kuhl made the wrong decision to reengage in an illegal sexual relationship with Minor 1 according to the Government.

Over this span of approximately 15 months, the relationship between Minor 1 and Mr. Kuhl seemed to have ups and downs and at times Defendant acted in a rude chauvinistic manner. Clearly such conduct is reprehensible and deserves punishment, especially in this instance involving a minor. However, Mr. Kuhl was not seeking out children to exploit them and while the accusations here are unacceptable, this conduct is not within the federal government's limited powers.

Indeed, the MSP was conducting their own investigation and did not seek assistance from the federal government or refer the case to them for federal prosecution. Mr. Kuhl was charged under Michigan law with 7 felonies relating to the same conduct alleged in the federal indictment. The FBI only became aware of this matter due to listening to Defendant's jail calls pursuant to a fraud investigation. During

the call, Mr. Kuhl sought advice from a lawyer to help sue police officers of Wyoming PD in Kent County for unlawful arrest on Possession With Intent to Deliver Marijuana and Resisting and Obstructing an officer. The Wyoming Prosecutor refused to pursue either charge, but kept two cell phones Mr. Kuhl had to investigate further. When Mr. Kuhl was arrested, police seized 10 debit cards with different names, and thus got a search warrant against both of Mr. Kuhl's phones to search for evidence of crimes, although the warrant was not clear as to what crimes.

Wyoming PD supposedly located evidence of fraud and turned the phones over to the Michigan State Police (MSP). While MSP was searching through the phone contents further they supposedly "came across" a text conversation that appeared to be possible evidence of sexual contact with a minor. This launched a separate investigation into Mr. Kuhl for Criminal Sexual Conduct (CSC). Mr. Kuhl was unaware of these events when he made the call trying to bring suit against Wyoming PD. Upon hearing the jail call, Special Agent Buttery told his partner John Stolsonburg who contacted Wyoming PD. Wyoming informed Stolsonburg about the fraud evidence and that the matter had been turned over to MSP. Stolsonburg then contacted MSP and learned of the CSC investigation and this is how the federal government became involved.

The federal government is turning a state offense of statutory rape/ CSC into a federal offense because they allege the communications between Minor 1 and Mr. Kuhl were made using text and Facebook messenger

which are encompassed in the excessive reach of the phrase "facilities or means" of interstate commerce. This reading would "render traditionally local criminal conduct a matter for federal enforcement and would also involve a substantial extension of federal police resources." U.S. v. Bass, 404 U.S. 336, 350 (1971).

Accordingly, Mr. Kuhl is not the type of individual Congress sought to federally prosecute, nor is his conduct. Mr. Kuhl has a substantial amount of knowledge and resources within the internet underground. Mr. Kuhl is not seeking to brag or glorify such, nor is he seeking to incriminate himself. However, he is only attempting to underscore the fact he's never even attempted to use these resources to seek out children to sexually exploit or find child pornography or anything else harmful to children. Indeed, such people should be prosecuted for using the broad expanse of the internet for such purposes. However, Mr. Kuhl and Minor 1 are both residents of Michigan and Mr. Kuhl was not seeking out children to sexually prey on them. Thus, this excessive reach of the federal government and 18 U.S.C. § 2422 is not constitutional in this instance and Count 2 should be dismissed.

Respectfully submitted,

S. Kuhl

S. Kuhl 61189510
1035 James P.O. Box 845
White Cloud, MI 49349