*IN THE UNITED STATES DISTRICT COURT*
*FOR THE WESTERN DISTRICT OF MICHIGAN*
*SOUTHERN DIVISION*

UNITED STATES OF AMERICA,

Plaintiff,

vs. Case No: 1:23-cr-44

SAMUEL ALEXANDER KUHL,

Defendant.
_______________________________/

*ARRAIGNMENT*

*BEFORE THE HONORABLE SALLY J. BERENS*
*U.S. MAGISTRATE JUDGE*

*Grand Rapids, Michigan*
*April 25, 2025*

APPEARANCES:
For the Plaintiff: OLIVIA KAY GHISELLI
TIMOTHY VERHEY
330 Ionia Avenue NW
P.O. Box 208
Grand Rapids, MI 49501
(616) 456-2404

For the Defendant: SAMUEL ALEXANDER KUHL, Pro se

Standby Counsel: MR. SCOTT G. GRAHAM
Scott Graham PLLC
1911 West Centre Avenue, Suite C
[!ADDRESS-B2]
Portage, MI 49024-5399
(269) 327-0585

TRANSCRIBED BY: Genevieve A. Hamlin, CSR-3218 RMR, CRR
Federal Official Court Reporter
110 Michigan Avenue NW
Suite 601
Grand Rapids, MI 49503
(517) 881-9582

Grand Rapids, MI
April 25, 2025
10:01 a.m.

*PROCEEDINGS*

THE CLERK: Court calls case number 23-cr-44.

THE COURT: Good morning, everyone. We are on the record this morning for an arraignment on a superseding indictment. Let's start with appearance for the government.

MS. GHISELLI: Good morning, Your Honor. Assistant United States Attorney Olivia Ghiselli and I have with me AUSA Tim VerHey as well.

THE COURT: Good morning. And I understand, Mr. Kuhl, you are representing yourself; is that correct?

THE DEFENDANT: Yes, I am.

THE COURT: All right. Good morning, and Mr. Graham is here as standby counsel although I understand there's a hearing on Tuesday to determine exactly what that role is; is that correct?

MR. GRAHAM: That's correct, Your Honor.

THE COURT: Good morning to both of you.

All right. Mr. Kuhl, this is just an arraignment which I'm going to explain to you the superseding indictment. First off, though, how far did you get in school?

THE DEFENDANT: I got a GED and I went to college but I didn't get any degree or anything.

THE COURT: All right. So able to read, write, and understand English just fine?

THE DEFENDANT: Yes, ma'am.

THE COURT: Anything bothering you today physically or mentally that would make it difficult for you to understand what's happening in court?

THE DEFENDANT: It's just this whole matter is just so -- it's arbitrary, you know, but --

THE COURT: All right. I understand that you have big feelings about the case, but what I'm asking is really just are you -- are you understanding what I'm saying? You certainly seem like you are.

THE DEFENDANT: Yeah.

THE COURT: All right. And have you taken any medications, other drugs or alcohol in the last 24 hours?

THE DEFENDANT: No, ma'am.

THE COURT: All right. You undoubtedly have been advised of this before, but you have the right to remain silent and anything you do say could you used against you in a subsequent proceeding, including the trial in this matter. Do you understand that?

THE DEFENDANT: Yeah.

THE COURT: All right. And you do have the right to have an attorney with you throughout these proceedings, although you have elected to represent yourself. Do you

understand that, too?

THE DEFENDANT: Yeah. Yeah.

THE COURT: All right. Have you had an opportunity to review the superseding indictment in your case?

THE DEFENDANT: Yeah. Yeah, briefly, yes, I did.

THE COURT: Okay. I'm going to go through it with you as well today. Do you have it in front of you?

THE DEFENDANT: No, I don't.

THE COURT: All right. Mr. Graham maybe has a copy. Just sometimes it's helpful to people to be able to see it as we're going through it, but in any case, in count one you are charged with sexual exploitation of a minor, and what's alleged is that between on or about May 8th of 2021 and August 31st of 2022 in the southern division of the Western District of Michigan it's alleged that you knowingly employed, used, persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct and attempted to do so, which depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by a computer, and specifically what's alleged is that you persuaded, enticed, and used a 15-year old girl, minor one, to engage in sexually explicit conduct and received and stored videos of that conduct using your Samsung and IPhone cellular

phones, both of which were manufactured outside the United States. If true, that would be a violation of 18 United States Code Section 2251(a) and (e) and 2256.

I don't want you to say anything about the charge at this point, but do you understand what you've been charged with in count one? In other words, do you understand the words that I've explained to you?

THE DEFENDANT: It says that I gave -- I did do this and I attempted to do this.

THE COURT: Right.

THE DEFENDANT: So I'm just confused as to what specifically the grand jury has found. Did they found that I did both, I did one or the other, or I did only one?

THE COURT: Well, what this says is the grand jury found that you did both, and that may be at different times, I don't know exactly, but that's what the -- that's what the indictment says.

I understand that you have a motion for a Bill of Particulars outstanding as well; is that correct?

THE DEFENDANT: Well, I'm -- I don't know if any of that even -- even is honorable in the fact that it's a superseding indictment. Doesn't that restart everything here?

THE COURT: Oh, I see. Okay. I didn't know that that was on the previous indictment.

So, all we're talking about today is do you

understand the charge against you, or is there some things you'd like me to explain about what's written on the paper?

THE DEFENDANT: I just want to know, then, it isn't enough to prove that either I attempted to do so or I did do so at trial. It must be proven by the word of this indictment that I did and I attempted to do.

THE COURT: Actually, at trial you could be guilty in either attempt or the actual commission of the offense.

THE DEFENDANT: However, this doesn't say that I did or attempted to do so. It says that I did do and I attempted to do so. Therefore, under the word of this indictment both must be proven.

THE COURT: Well, actually, that's not correct under the law, but I am -- my only job today is to explain to you what the document says, so do you feel like you understand what the document says?

THE DEFENDANT: Yeah, I see what it says.

THE COURT: All right. And in count two you're charged with coercion and enticement and attempted coercion and enticement, and there what's alleged is between on or about May 8th of 2021 through August 31st of 2022 in the southern division of the Western District of Michigan, it's alleged that you used facilities and means of interstate and foreign commerce to communicate with an individual under the age of 18 to knowingly persuade, induce, entice, and coerce

that individual to engage in sexual activity for which any person could be charged with a criminal offense and attempted to do so.

Specifically what's alleged is that you used cellular telephones and Facebook Messenger, all of which were facilities of interstate and foreign commerce to communicate with minor one, a 15-year old female, in order to persuade, induce, and entice her to have sexual intercourse with you, conduct which constituted third degree criminal sexual conduct under Michigan Compiled Law Section 750.520d. If true, that would be a violation of 18 United States Code Section 2422(b). Do you understand what you've been charged with in count two?

THE DEFENDANT: Again, I guess I'm charged with doing this and attempting to do this.

THE COURT: Yes, that's correct.

So, moving on then to --

THE DEFENDANT: Is that not duplicity, Your Honor?

THE COURT: You know, these are all arguments that you should make with Judge Beckering. She's the district court judge in this case. I'm a magistrate judge and my job is just to arraign you today.

THE DEFENDANT: But quite typically that argument will be kicked down to you for --

THE COURT: Oh, not necessarily, no.

THE DEFENDANT: Okay.

THE COURT: All right. So, then, moving on, there are two forfeiture allegations in the indictment. A forfeiture allegation is just the government's -- it's not a separate charge. It's just the government's way of putting you on notice that it intends to forfeit or keep in this case items that it alleges were used in the offense; specifically, a Samsung -- is it a phone? And an IPhone.

So, do you understand the concept of a forfeiture allegation?

THE DEFENDANT: I -- I -- I lose these things. They're taken by the government.

THE COURT: If the government succeeds then, yes. It's just its way of putting you on notice that it intends to forfeit those items.

THE DEFENDANT: What if -- I'm quite certain I understand which Samsung phone this is. However, I'm not aware of what IPhone that this is at all.

THE COURT: All right.

THE DEFENDANT: I haven't been told. I mean, I've been told of one thing but it doesn't match this IPhone description here so I'm not certain the origin of how and where they obtained, when they obtained this phone. I don't know the phone numbers associated with these phones. There's strange stories about mysterious SIM cards that are popping up one place but are missing from another place in over a year

span apart from each other, so I'm just trying to see what's going on here, and supposedly this was all stumbled across as they were searching my phone for fraud, so I'm just -- I'm just wondering exactly what truly is happening here, you know? I mean, I certainly have, you know, knowledge of what truly is transpiring. I don't know if Your Honor does or even if VerHey and the people behind -- that are being used maybe just as pawns in a greater scheme here.

THE COURT: All I'm doing today is telling you what's in the charging indictment, the superseding indictment, and this is just a notice. It may be right. It may be wrong. That's for you and the government to determine in front of Judge Beckering down the road, so for today's purposes I just need to understand -- or know that you understand that you've been put on notice that the government wants to seize these two particular phones.

THE DEFENDANT: I don't know what two particular phones they are, ma'am.

THE COURT: They're the ones listed in the indictment.

THE DEFENDANT: I understand that.

THE COURT: And there's a model number and a factory number, so to the extent that you have a phone that isn't listed here, that's not up for grabs, and to the extent that a phone that you do have isn't listed here, they also haven't

put you on notice that they intend to forfeit those phones. Do you understand --

*(Cross talk; indiscernible)*

THE COURT: They're very specific with the model number and the serial number.

THE DEFENDANT: I understand that, but there's an issue with the fact that it says the property to be forfeited includes but is not limited to, so, therefore, I'm not completely certain as to what all I am being, you know, asked to forfeit here.

THE COURT: Well, at this moment only those two items have been described sufficiently to put you on notice.

All right. Moving on to the potential penalties in the case which I'm required to advise you of as well.

For count one there is -- if you were convicted at trial there would be a mandatory minimum penalty of 15 years and up to 30 years in prison, a fine of up to $250,000, supervised release of at least five years and up to your lifetime, a special assessment of a hundred dollars, additional special assessments of $5,000 and up to $50,000, mandatory restitution and sex offender registration.

For count two, coercion and enticement and attempted coercion and enticement, if you were convicted at trial you could face a minimum of ten years in prison and up to your lifetime, a fine of up to $250,000, supervised release of at

least five years and up to your lifetime and a special assessment of a hundred dollars as well as an additional special assessment of $5,000 restitution, which is mandatory, and sex offender registration, and as to both counts there is the possibility of the forfeiture of those two phones as alleged in the superseding indictment.

Again, you don't need to say anything about the charge. Do you understand what the statutory penalties are that are associated with those offenses?

THE DEFENDANT: You say it's a -- it's a -- it's a lifetime supervised release?

THE COURT: Up to your lifetime.

THE DEFENDANT: How can -- I'm not understanding how that's -- how that's possible.

THE COURT: You continue to be supervised -- if you were convicted at trial and if Judge Beckering or whatever district court judge this is assigned to is assigned -- or sentences you to a lifetime of supervised release, you would remain under the supervision of the probation department for your lifetime.

THE DEFENDANT: But the -- the only -- only one case carries a -- or one statute carries a lifetime penalty of imprisonment so how can supervision exceed imprisonment?

THE COURT: It's what Congress has set out for those crimes.

THE DEFENDANT: Does any other crime carry this lifetime supervised release --

THE COURT: Yes.

THE DEFENDANT: -- that doesn't have a maximum penalty that is a life possibility?

THE COURT: I believe that there are a number, including drug crimes which do. This is something that you can take up with Congress, but that's what Congress has set out for this particular crime.

Do you understand what the penalties are that are in the statute at this point?

THE DEFENDANT: Yeah.

THE COURT: All right. To my knowledge -- oh, so the last thing we need to do is to take a plea. There are four ways that you can plead. You can plead not guilty. You can plead guilty. You can plead no contest with the approval of the district court judge and the United States Attorney's office, or you can stand mute in which case a not guilty plea will be entered on your behalf. How do you plead today?

THE DEFENDANT: I would like to plea an abatement in order to challenge the sufficiency here.

THE COURT: That's not one of your options. You have four options today. You can plead not guilty, you can plead guilty, you can plead no contest, or you can stand mute.

THE DEFENDANT: I feel as if I'm -- I'm -- this is

almost double jeopardy. I'm being reprosecuted here and I'm also being prosecuted under the state of Michigan for this same underlying conduct, and I understand the separate sovereign issue here. However, this is an issue of abstention and I understand abstention typically applies in the civil context --

THE COURT: If you're going to abstain from entering a plea you just stand mute in which case --

THE DEFENDANT: I'm saying that I feel that the federal government must abstain from this criminal proceeding.

THE COURT: Again, that's a motion you can take up with Judge Beckering. Today we're just entering a plea.

THE DEFENDANT: Because, you know, it's based on the whole idea behind -- abstention is based on the principles of federalism and the Tenth Amendment of the constitution.

THE COURT: Again, this is an argument you can make with Judge Beckering, but for today's purposes we're just entering a plea. If you want to stand mute, that's fine.

THE DEFENDANT: I mean, it's -- I plea abatement or I plea in bar, and if you won't accept that, then you can enter what you will.

THE COURT: Well, I would take those as you standing mute on these charges and so I will enter a not guilty plea on your behalf on both charges.

Counsel, anything else we have to take up today?

MS. GHISELLI: No. Thank you, Your Honor.

THE COURT: All right. Mr. Kuhl, did you understand everything that happened in court today?

THE DEFENDANT: I'm just trying to figure out how -- how the government can continuously go back to the drawing board here.

THE COURT: I don't know what you mean by that, but that's -- if you need to raise a motion with Judge Beckering, that's the appropriate course for those types of questions.

THE DEFENDANT: All right. Okay. I'm just -- I just want to be informed of how that's, you know -- how that's adequate or --

THE COURT: I understand that you've asked to represent yourself, but these are the types of questions that a lawyer is very helpful in answering, and I don't know what will happen on Tuesday in terms of your relationship with Scott Graham going forward, but Mr. Graham is a very qualified attorney who could answer all of these questions for you.

THE DEFENDANT: I --

THE COURT: But I can't give you legal advice.

THE DEFENDANT: Even when Mr. Graham represented me, he's too busy to -- he's not very communicative.

THE COURT: Again, that's something you can take up on Tuesday with Judge Kent but I'm just giving you the information that these are the types of questions that a

lawyer can help you with.

Mr. Graham, anything from your perspective we need to take up today?

MR. GRAHAM: No, Your Honor.

THE COURT: All right. Then we will be adjourned.

THE DEFENDANT: I have a question.

THE COURT: Well, all right. Let's hang on. We'll hang on for just a second. What's your question?

THE DEFENDANT: As far as me proceeding pro se, I see that the government gets opportunity to bounce between two, three, four, five different lawyers and help each other prepare everything and all of this and they get the adequacy of having, you know, typing software, Microsoft Word and everything else, and I -- I don't have any of that stuff, and I've been trying -- I can't even, you know, properly review discovery and things that I need to adequately prepare so I'm -- I'm requesting for the Court to appoint, like, a co-counsel or something because the government gets three or four or five lawyers and it seems that -- just one moment. Pardon me.

THE COURT: Go ahead.

THE DEFENDANT: And it seems that, you know, you guys typically love to overload court-appointed cases with three, four, five, six, seven, eight, nine cases at a time all by themselves and that -- that is -- you know, it's completely

unfair. I'm already at a disadvantage here. The powers that be, you know, beyond just this room, it's -- you know, beyond thought, you know, it's -- I don't know. I can't eloquently think of the words to, you know, address what I'm trying to say here but it's basically mind blowing, you know? And whether or not Mr. Graham is a qualified attorney, if he can't adequately devote time and effort into this case, you know, and the resources into this case then --

THE COURT: I guess you should ask --

THE DEFENDANT: -- what is the purpose of even having him, you know what I mean?

THE COURT: I think you should ask yourself whether you actually want to be pro se or --

THE DEFENDANT: Oh, yes.

THE COURT: Hang on. Or if you wanted to ask for different counsel, but those are all questions that you've previously decided you wanted to be pro se, and you have a hearing in front of Judge Kent to talk about your role with counsel next Tuesday so I'm going to ask you at this point to take those up with Judge Kent on Tuesday.

THE DEFENDANT: I would just like to say one more thing real quickly. Even Mr. Graham himself, you know, has told me, I think it was the first or second time we had spoken that, you know, honestly, Mr. Kuhl, you need 12 lawyers so, I mean, I'm just saying there that --

THE COURT: That's the same theme and, again, I would ask you to take it up with Judge Kent on Tuesday.

THE DEFENDANT: With Judge Kent.

THE COURT: Yep. That's your hearing on Tuesday.

THE DEFENDANT: Okay.

THE COURT: We'll be adjourned.

THE DEFENDANT: I wasn't aware of a hearing.

*(Whereupon, hearing concluded at 10:20 a.m.)*

*C E R T I F I C A T E*

I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.

/s/ Genevieve A. Hamlin
Genevieve A. Hamlin, CSR, RMR, CRR
U.S. District Court Reporter
Grand Rapids, MI 49503