FILED - GR
May 27, 2025 1:17 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: JW / 5-27

UNITED STATES OF AMERICA,
Plaintiff,

Case No. 1:23-cr-44

v.

Hon. Jane M. Beckering

SAMUEL ALEXANDER KUHL,
Defendant.

# MOTION FOR RECONSIDERATION

Defendant now comes before this Honorable Court respectfully urging and requesting the Court reconsider its decision in Opion and Order ECF No. 184. Mr. Kuhl brings this motion under W.D. Mich. LCrR 47.3, and thus will try to abstain from presenting the same issues ruled upon by the Court. Further, Kuhl will do his best to briefly and concisely put forth his reasons for reconsideration in an organized manner.

1. An issue Defendant feels must be addressed is the Court's continued reference to a "blanket extension of the pretrial motion deadline." (PageID. 1412, 1431, & 1433) Defendant assumes that the Court means limitless or indefinite by "blanket extension." However, Kuhl is seeking nothing of the sort and apologizes for any confusion his lack of specificity may have caused. Indeed, Defendant was only ever seeking a time the Court deemed reasonable, which in his mind would be 4-6 weeks.

2. The Court continuously references Defendant's motions exceeding the 25 page limit prescribed under W.D. Mich. LCrR 47.1(b)(i). Defendant would like to apologize for his ignorance and resulting disregard of the rules. With that being said, the rule is violative of the Equal Protection Clause that has been incorporated into the Due Process Clause of the Fifth Amendment from the Fourteenth Amendment. See Johnson v. Robison, 415 U.S. 361, 94 S. Ct. (1974). Accordingly, the rule is unconstitutional respectfully. It allows for 10,800 words on a computer generated brief. Defendant gets, on average, 200 words per page, which at 25 pages equals a total of 5,000 words, and thus, Defendant is allowed half the words that the Government is allowed, to place in his briefs. Kuhl is only requesting the Court to refrain from disregarding or rejecting his motions as improper for exceeding the local rule's page limit. Again Kuhl apologizes for this and tries to write as legibly as possible, and prays for the Court's patience and leniency.

3. Defendant has become informed, by the experience and knowledge of the Court, that the Government may elect to proceed to trial on either one. Yet, as the Court notes, the Sixth Circuit has seemed to contradict itself on this matter. (PageID. 1414) Kuhl requests that the Court reconsider this so that, in the least, the Government decide on only one indictment, if Defendant's request for dismissal within this

pleading is denied. Because of the substantially different time frames charged between the original and superseding indictments, it would severely prejudice Mr. Kuhl to allow the Government such an option. Indeed, Kuhl requests the Court to follow its quote of the unpublished decision in United States v. Goff, 187 F. App'x 489, 491 (6th Cir. 2006), "that a superseding indictment 'becomes the only indictment in force.'" (PageID. 1414) If not, the Government can parse the evidence beyond October 31, 2021, to essentially get a second shot at prosecuting Kuhl if the Government chooses to proceed on the original indictment. Moreover, the original indictment was clearly returned on evidence presented to the grand jury far beyond the timeframe charged. Accordingly, if dismissal is not granted, Kuhl requests the Court clarify that only the superseding indictment is in force.

4. The Court properly states that the federal court for Northern District of Iowa held that an essential recitation of §2251(a)'s language in an indictment, even absent a statement of the facts and circumstances as to inform the accused of the specifics of his conduct, withstood constitutional scrutiny in United States v. Vogelpohl, 18-CR-3053-CJW-MAR, 2019 WL 2236263, at 2 (N.D. Iowa, May 23, 2019). Indeed, the Court goes on to note that such an analysis is not required because Count 1 of the

original indictment contains a second sentence identifying the age and gender of the victim, the type of depictions (i.e., photos or videos), and the manufacturer of the cell phones. (Page ID. 1418-1419). However, the Court must consider that the second statement does not fit the option for the second element described in the first statement's partial tracking of the statute's language. As the Court recognizes, by way of the Sixth Circuit Pattern Instruction §16.01, there are three options which can establish the second element of §2251(a), (Page ID. 1418) but Count 1 of both indictments state only one option. That is the depictions were produced using materials that were transported in interstate commerce, but the statement of facts and circumstances does not assert what materials were used to produce the depictions. Indeed, Count 1 does not state who produced the depictions, who supposedly sent the depictions Kuhl allegedly received, or how those depictions were sent. The second statement only alleges Mr. Kuhl used (original indictment), persuaded, and enticed (second indictment) Minor 1 to engage in sexually explicit conduct and received and stored depictions of that conduct. It does not say that Minor 1 sent the pictures/videos due to Defendant's use, persuasion, and enticement or produced them because of such. Just convincing a minor to engage in sexually explicit conduct is not enough to violate §2251(a), even if such minor decides completely on their own to capture

that conduct visually and then send it to their convincer. Due to the language of Count 1, this seems to be possibly what is alleged, but again, Count 1 does not say who even sent the depictions.

5. The Court compares United States v. Beasley, 688 F.3d 523 (8th Cir. 2012) to Kuhl's indictment in so much as the broad time frame is not grounds for lack of specificity. But Beasley consisted of at least ten different minor victims and countless depictions of child pornography.

6. While the Court correctly states that, unlike Hillie, Kuhl is not charged with identical counts (PageID.1421), the conduct alleged between Count 1 and Count 2 do not differentiate from one another and are alleged to have occurred during the exact same time frame. Indeed, sexual intercourse is sexually explicit conduct. Indeed, both counts allege Kuhl used Samsung and iPhone cellular phones. Indeed, both counts involve the same alleged victim. Thus, the lack of describing the type of sexually explicit conduct, renders the indictment defective because Kuhl cannot ascertain what, if anything, distinguishes his alleged conduct from Count 1 to that of Count 2 and vice versa.

7. The Court continuously states that Kuhl's decision to proceed

pro se is grounds to deny an extension of the pretrial motion deadline, but again Kuhl is lost as to what those benefits are (PageID.1433). The Court also states that Kuhl clearly did not agree with Mr. Graham's litigation strategy, but refuses to acknowledge that Mr. Graham told Kuhl he was nowhere near ready to go to trial, and was still gathering information and trying to understand the complex facts of the case. This was during a meeting Kuhl had with Mr. Graham after the Detention hearing on Feb. 19, 2025, and was still fully representing Mr. Kuhl, as is stated in ECF No. 175 at pageID.1276 and ECF No. 143 at PageID.1012. Thus, Mr. Graham would've had to request an extension of the deadline regardless, but did not do so due to Kuhl moving to represent himself. Neither Does the Court address the fact Kuhl did attempt advance the Faretta hearing to resolve this issue. Yet the Court continues to state Defendant has had 3 attorneys appointed. Defendant would like to remind the Court that Parker Douglas was the counsel originally appointed in this case. Accordingly, Parker Douglas up and left to California at the beginning of this year abandoning all clients on his caseload and thus, new counsel would've had to be appointed regardless. Further, the Court knows that Parker never spoke to Kuhl beyond the hearing on August 16, 2023 and one time Kuhl did get Parker on the phone, approximately April 2024, Parker hung up as soon as Kuhl stated his name. Indeed, Mr. Douglas is

going to be sued in Kent County Circuit Court for legal malpractice and other tort claims. Moreover, Parker admitted to attorney Mark Kriger on June 14, 2024, that Parker did not even know Kuhl was still in Newaygo County. The Court also refuses to address Kuhl's concern that his "untimely motions" whether decided on by this Court or not, are not preserved for appeal. The Court does acknowledge Kuhl's request for a continuance (PageID.1434), but states that request is premature. Excuse Kuhl's ignorance, but he requested the continuance to allow for the extension of the pretrial motion deadline.

Accordingly, Kuhl respectfully requests this Court to reconsider its rulings as to the specific ~~issued~~ issues discussed herein.

Respecfully,

S. Kuhl 5/21/25

S. Kuhl 61189510
1035 James
P.O. Box 845
White Cloud, MI 49349

S. Kuhl 61189510
1035 James
P.O. Box 845
White Cloud, MI 49349




THIS MAIL HAS ORIGINATED FROM THE NEWAYGO COUNTY JAIL

U.S. Dist. Court
399 Fed. Bldg.
110 Michigan NW
Grand Rapids, MI 49503

LEGAL MAIL

GRAND RAPIDS MI 493
22 MAY 2025 AM 4 L