UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FILED - GR
May 29, 2025 12:07 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: JU / 5-29

UNITED STATES OF AMERICA,
Plaintiff,
Case No. 1:23-cr-44

v.
Hon. Jane M. Beckering

SAMUEL ALEXANDER KUHL,
Defendant.
*ORAL ARGUMENT REQUESTED*

*REQUEST TO FILE UNTIMELY*

# MOTION TO DISMISS SUPERSEDING INDICTMENT

Defendant now comes before the Court requesting that he be granted leave to file this untimely motion. As the Court is well aware, a superseding indictment was returned against Mr. Kuhl on 4/15/25 (ECF No. 147). A substantial portion of the argument presented in this motion rests upon this superseding indictment, which was nonexistent before the 3/5/25 pretrial motion deadline. Moreover, Defendant's attempt to litigate this matter (ECF No. 182) was improperly joined with his request to have standby counsel Scott Graham replaced.

Furthermore, due to this Honorable Court's ruling in the 5/15/25 Opinion and Order (ECF No. 184 at PageID. 1414), Defendant's ignorance has been corrected once again, in that he is now aware that the Government may elect to proceed on either the original or superseding indictment. Indeed, the Government was not ignorant of this fact, which provides even

more substance to the argument Defendant will present in the brief he seeks to file.

Lastly, due to Kuhl's persistent investigation into the facts and records surrounding this case, more and more has come to light in regards to the intentional withholding, deliberate delay, and flagrant disregard exhibited by the Government relating to discovery, grand jury proceedings, investigating and preparing this case, the Federal Rules of Criminal procedure, effective and efficient use of judicial resources and taxpayers' dollars, and Defendant's Constitutional rights.

Accordingly, little to none of this information was known to Defendant before being granted pro se status, which the Court is well aware, was after the pretrial motion deadline. Thus, Mr. Kuhl was not able to present all of the grounds supporting his argument for dismissal before the pretrial motion deadline, and therefore prays that the Court grant him leave to file the untimely brief.

# BRIEF

## BACKGROUND

As the Court already knows much of the history behind this case since its initiation on April 25, 2023, Defendant will briefly touch on facts he feels are relevant.

The Federal Government returned this indictment while Mr. Kuhl was serving a 4 year mandatory sentence in the Michigan Department of Corrections. (MDOC). Indeed, the Government was aware of this as the lead federal law enforcement officer, Special Agent (SA) Jeff Buttery, of this case was present at Kuhl's criminal trial underlying the 4 year sentence. Moreover, SA Buttery is the one who arrested, or orchestrated the arrest, of Kuhl to ensure Defendant did not escape any sentence that was to be handed down due to the guilty verdict of the trial. At the time of the original indictment being returned, Defendant had over 3 years remaining of his 4 year sentence.

All of the evidence underlying this case was in the Government's possession while Kuhl was incarcerated and thus, the prosecution had ample time to thoroughly review such evidence. Moreover, the Government was clearly aware that Van Buren County of Michigan had returned criminal charges for the exact same conduct underlying the federal prosecution, months before the federal indictment was presented to, and returned by, a grand jury. Accordingly, there was no fear that

evidence might be lost or destroyed or that Kuhl may flee.

With that being said, the Government had plenty of time and oppurtunity to prepare and present a sufficient indictment that complied with Kuhl's Constitutional rights under the Fifth and Sixth Amendments, Federal Rule of Criminal Procedure 7(c), and other lawful authority. Moreover, the Government had ample time to prepare the requisite materials and information to provide Defendant with adequate discovery in compliance with due process, Fed. R. Crim. P., and other Constitutional and statutory authority.

Although the Government knew of Mr. Kuhl's whereabouts, they did not bring him before a federal judge until almost 4 months after the intitial indictment was returned. Indeed, Mr. Kuhl first appeared in federal court on August 11, 2023. This delay in bringing Mr. Kuhl into federal custody ~~and~~ to begin this process, only provided more time for the Government to review evidence and prepare an adequate discovery in compliance with the laws and Constitution of the United States.

However, this time and oppurtunity for the government does not stop there. August 16, 2023 a hearing was held where the Government, and then counsel Parker Douglas, moved to evaluate Defendant to determine competency. Although the commitment for such evaluation is limited to a period not to exceed 45 days, Defendant's competency hearing was not held until December 18,

2023, over 4 months later. After Defendant was deemed incompetent, an Order was entered on December 20, 2023 committing him to a period of hospitalization not to exceed 4 months.

Despite this clear limit under 18 U.S.C. §4241(d)(1), and an Order by this Court directing U.S. Marshals ~~and~~ to transport Kuhl to FMC-Butner within 10 days (ECF No. 29) entered on 12/27/23, Kuhl did not arrive at FMC-Butner until 6/17/24, six maths later. In between this time, Kuhl and his family tried to do what the incompetent and traitorious Parker Douglas would not: get to Kuhl to FMC-Butner so this process could move along. However, this Court continuously rejected and refused these attempts on purpose with full knowledge of Parker's worthless representation. Kuhl's family tried to raise due process and speedy trial issues by habeas corpus petitions which this Court ignored again, with the only option to address these issues to be going through Parker, which the Court clearly knew was no option at all.

Point being, this 8 month period spanning from October 19, 2023, when Kuhl was returned from the initial competency exam at MCC-Chicago to Western Dist. of Michigan, through June 17, 2024, was only more time for the government to review its evidence and prepare an adequate discovery for this case. It is now May 22, 2025, and Defendant is still not in possession of an adequate discovery, but has been spoonfed piece by piece, portions over

several months, as the Government reviews evidence and is continuing to investigate this case and going back to fix its mistakes caused by a reckless disregard for Kuhl's Constitutional rights, as well as the rules and laws of the U.S.

Although Kuhl's commitment under 4241(d) was not to exceed four months, he waited 6 months to get to FMC-Butner, then stayed at Butner until 11/5/24 despite the 4 months of just being at Butner expired on 10/15/24. Upon leaving Butner, Defendant spent over 30 days being transported back to the Newaygo County Jail on 12/6/24. During this almost 6 month span, the Government had more time to review the evidence it had now possessed for over 2 years to ensure that it had an adequate discovery prepared for this case, but did not do so.

Once being back in Michigan, the Court scheduled a competency hearing for December 18, 2024, which was then rescheduled for January 13, 2025 ~~[illegible]~~ due to one of the Government's witnesses being unavailable. That period of over one month was more time and oppurtunity for the Government to prepare its evidence and and have discovery ready, yet this did not happen. Also, during this period, the Government intentionally lied to the Court in its Initial Pretrial Conference Summary Statement (ECF No. 66) filed on 1/10/25 by stating that discovery materials, described therein, had been disclosed to defense counsel. However, as Mr. Graham states in his Report Regarding Discovery (ECF No. 144

at PageID. 1036), no discovery was provided to him until 1/15/25. This "portion" of discovery has become known as "Discovery 1."

Moreover, Kuhl tried to raise issue with the Court and Mr. Graham objecting to the rescheduling of the proceeding on 12/18/24 to 1/13/25, but of course Defendant was ignored. Indeed, it is also important to point out that, the period of time Kuhl was detained at Newaygo County Jail before being transfered to Butner, he was falsely imprisoned in federal custody under the guise of felony weapons charges and federal probation violation as this unlawful, retaliatory case was built.

Due to Kuhl adamantly asserting that arguments should be raised under multiple grounds, including speedy trial and due process violations, Magistrate Ray Kent removed Kuhl from the courtroom. After this, against Mr. Kuhl's wishes, Scott Graham asked for the hearing to be adjourned 30 days. Ironically, Kuhl can't get the pretrial motion deadline adjourned 1 week, let alone 30 days. Kuhl told Mr. Graham to raise his issues in Court, and only then, if the Court stated the matters needed to be briefed, then a continuance would be appropriate. That is not what happened.

The competency hearing and arraignment reconvened on 2/12/2025, and in the meantime the Government disclosed only some discovery. Kuhl briefly raised this issue at arraignment (ECF No. 115 at PageID. 662), but was disregarded due to being "represented"

by counsel. During this proceeding, Kuhl also raised issues as to speedy trial, abstention, due process, and IDRA, all of which were also ignored. As a last resort, Kuhl moved to proceed pro se or have replacement counsel appointed and was told to file a motion on the matter (PageID. 671-72).

A detention hearing was held on 2/19/25, at which time Kuhl submitted his motion to proceed pro se himself (ECF No. 87). Defendant also strenuously moved to address the issue of not being provided with adequate discovery as required by law (ECF No. 121 at PageID. 747 and 763), as well as speedy trial concerns (PageID 747-748). Accordingly, Kuhl requested to resolve his pro se motion, to proceed pro se, immediately.

However, as the Court knows, Kuhl's Faretta hearing was set for the day after his pretrial motion deadline thus, literally causing any oppurtunity for Kuhl to file a timely pretrial motion, in his pro se capacity, to be forfeited. During all this time, the Government still did not prepare, let alone provide, discovery to Defendant that complied with due process, the right to be notified of the basis of the charges, or the federal rules of criminal procedure. Indeed, Kuhl's Faretta hearing was March 6, 2025 and the Government did not provide "Discovery 2" to Mr. Graham until 3/27/25. Again, the Government lied and stated that discovery had been supplemented in its Response to Defendant's Expedited Motion for Discovery (ECF No. 123 at Page ID. 774) filed on 3/26/25.

Since being granted pro se status, Kuhl filed motions that challenged one and/or both counts of the original indictment based on the facial validity of the charging instrument. (ECF Nos. 100-103). Additionally, due to Kuhl being provided with evidence in discovery from as late as August of 2022, while the initial indictment charged both counts based on conduct alleged to have occurred between May 13, and October 31, 2021, Kuhl filed a motion for disclosure of grand jury transcript underlying that original indictment. (ECF No. 99). Despite Mr. Kuhl establishing clear proof that the Government admitted evidence far beyond the timeframe charged in the intitial indictment (PageID. 371), and thus, improperly influencing the grand jurors, the Court denied Kuhl's motion (ECF No. 141). The Court reasoned that a legally constituted and unbiased grand jury cannot be challenged on the ground of inadequate or incompetent evidence presented (PageID. 1006). Sadly, the grand jury was biased on evidence not related to the time of the charged offenses being presented. It was not the way in which the evidence was obtained or whether it was hearsay or something of that nature. It was evidence outside the timeframe of the alleged conduct that the grand jury based its probable cause determination on, under the impression that the evidence was related to the conduct and took place during the time span between May 13 and October 31, 2021, when it didn't. This was clearly prosecutorial misconduct that improperly influenced

and biased the grand jury, which was caused by the Government's hasty recklessness and flagrant disregard for Kuhl's Constitutional rights and laws of the United States.

While the Government opposed all of Kuhl's motions to dismiss and for grand jury transcript (ECF Nos. 133 and 117), ironically they superseded the indictment to change some of the language Kuhl challenged, and almost tripled the timeframe charged (ECF No. 147). This superseding indictment was returned on 4/15/25 and Kuhl was arraigned on such on 4/25/25. It was not until 5/8/25 that Kuhl finally received the inventory returns and date of execution notices for 2 of the 4 federal search warrants provided to Mr. Kuhl in discovery. Due to these materials not being attached to the original search warrants provided to Mr. Kuhl, the credibility of their authenticity is very questionable. Especially seeing as the evidence described on these inventory returns were already seized under the first 2 of the 4 federal search warrants that Kuhl has not been provided inventory returns, nor dates of execution for, in violation of Fed. R. Crim. P. 41. Indeed, the digital evidence sought from 2 cell phones under the 1/25/23 federal search warrant had already been seized under the 6/29/22 federal search warrant. And the digital evidence sought from Kuhl's Facebook under the 2/8/23 search warrant had already been seized under the 3/8/22. No inventory returns or dates of execution for the 3/8/22 or 6/29/22 Federal search warrants

have been provided to Defendant and it is now 5/22/25.

Still, Mr. Kuhl has not been provided with the audio/video recording of his alleged interview with Michigan State Police referenced in the Government's Initial Pretrial Conference Summary Statement (ECF No. 66 at PageID. 248). The specific text message disclosing Kuhl allegedly attempting to persuade a second minor female to have sexual relations with him, which the Government intends to use in its case-in-chief at trial (ECF No. 66 at PageID. 249). Kuhl needs to be informed of this text to enable him an oppurtunity to challenge such text's admissibility via a motion in limine.

Although the extraction of the Samsung phone's data was originally performed by Sgt. Meredith of the CCU/ICAC, Kuhl was never provided with this report in discovery. Indeed, this extraction is referenced in the MSP reports disclosed to Mr. Kuhl in discovery, as well as the CCU Report # related to the extraction's production. Moreover, this is the extraction from the Samsung phone described in the initial and superseding indictments' forfeiture allegations. Only after multiple FOIA requests to different agencies throught multiple months, Kuhl finally obtained a copy of the CCU Report which is sadly still incomplete. However, it does state who executed the extraction; how, and when it was executed. This information is material to any attempt to suppress such extraction yet the Government never

disclosed it. Kuhl has also not been provided with the computer forensics reports.

While Mr. Kuhl has continuously asserted his right to a speedy trial, the Government's continuous delay and ~~fail~~ failure in disclosing proper discovery to enable Kuhl to adequately and efficiently defend himself has seriously prejudiced Kuhl and basically resulted in him having to forfeit either his right to effectively defend himself by reviewing and challenging the charges and their underlying evidence, his right to a speedy trial, or both.

## ARGUMENTS

### I. Speedy Trial - Legal Standard. (Sixth Amendment)

Under the Sixth Amendment to the U.S. Constitution, all criminal defendants have the right to a public and speedy trial. There are four factors to consider when ~~determing~~ determining if a defendant's constitutional right to a speedy trial has been violated. Those four factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant resulting from the delay. See Barker v. Wingo, 407 U.S. 514 (1972).

As the Supreme Court held in Doggett v. United States, 505 U.S. 647 (1991), "affirmative proof of particularized prejudice is not essential to every speedy trial claim." Id at 655. The Court also held that "bad-faith delay would make relief virtually automatic." Id at 657.

The Sixth Circuit has held that "[a] delay of one year or more crosses the threshold and triggers analysis of the remaining Barkers factors." United States v. Ferreira, 665 F.3d 701, 705 (6th Cir. 2012).

Argument

As is known, the initial indictment against Kuhl was returned on 4/25/23. However, Defendant was not brought before a federal judge until 8/11/23 almost four months later, despite the fact the federal government was keeping close tabs on Kuhl, including listening to his phone calls while incarcerated (ECF No. 60 at Page ID. 228). This this 3 1/2 month period was attributable to the Government completely, and they used it as a tactical advantage.

Upon being ordered to undergo a competency evaluation on 8/17/23 (ECF No. 20), Kuhl was transported to MCC-Chicago on 8/23/23. This evaluation was not to exceed 45 days pursuant to 18 U.S.C. §4247(b). Thus, the 45 days expired on 10/09/2023, but the doctors exceeded this time and did not finish their evaluation and inform U.S. Marshals to return me to Michigan until 10/12/23. Accordingly, U.S. Marshals transported Defendant back to Newaygo County Jail on 10/19/23.

Despite the 45 days for the doctors to complete their evaluation expiring on 10/9/23, they did not complete their report until a month later on 11/8/23 (ECF No. 23 at Page ID. 62). "The statute

does not provide for 'two separate periods for evaluation and report preparation.'" United States v. Valdovinas-Hernandez, 2:23-mj-00733-NJK (D. Nev. Nov. 6, 2024) (quoting United States v. Rojas, 3:21-cr-00020-MMD-CSD, 2023 WL 5428665 (D. Nev. Aug. 23, 2023)). Moreover, it took over a month to hold a hearing on the report even though defense counsel merely stipulated to the report and Defendant was not allowed to attend. This hearing took place on 12/18/23, after being rescheduled twice (ECF Nos. 25 and 26).

Accordingly, this two month delay between the arrival of Kuhl back to this district and the holding of the hearing is solely attributable to the Government. And again, the Government used this delay as a tactical advantage to continuously investigate Kuhl and listen to his calls (ECF No. 60 at PageID.228 and 229). Yet the Government did not use this time to do what it should have: reviewed its evidence and taken the initiative to put together an adequate and lawful discovery, as well as fixed their unlawfully obtained indictment.

After the hearing on 12/18/23, which Kuhl was not present for in violation of his due process rights, the Court entered an order committing him to the custody of the Attorney General for four months under 18 U.S.C. 4241(d) on 12/20/23. Additionally, the Court entered another Order demanding Kuhl be transported to FMC-Butner within ten days on 12/27/23 (ECF No. 29).

Despite this clear order, the Government did not transport Kuhl to FMC-Butner until 6 months later on 6/17/24. This delay is solely attributable to the Government, and was known of for years. See United States v. Smith, 764 F. Supp. 2d 541 (2011 W.D. N.Y.); United States v. Pendleton, 15-13617 (11th Cir. Dec. 9, 2016); United States v. Patterson, 872 F. 3d 426 (7th Cir. 2017); United States v. Romero, 883 F. 3d 1151 (9th Cir. 2016); United States v. Hernandez-Amparan, 600 F. Supp. 2d 839 (W.D. Tex. 2009).

At this point, when Kuhl was finally transferred to FMC-Butner on 6/17/24, a year of the delay from the date of the original indictment on 4/25/23, was caused by the Government's ~~unnecessarily~~ unnecessary delay. However, it does not stop there, and the Government knew that Mr. Kuhl was already ordered to undergo restoration treatment in a secure State of Michigan medical facility. Yet the Government completely disregarded that process and brought Kuhl into federal custody under an indictment returned due to prosecutorial misconduct.

As noted above, Kuhl's transport from Butner back to Michigan took just over a month. Again, this is solely the Government's responsibility. In addition to this time getting Kuhl back to Michigan, the Government had the competency rescheduled from 12/18/24 to 1/13/25, over a month after Kuhl's return. All this time the Government already had the report

from FMC-Butner (ECF No. 60), which was filed on 10/30/24. Accordingly, this period of three months from the time Kuhl's four month period of hospitalization at FMC-Butner expired on 10/15/24 until the 1/13/25 court date was the Government's responsibility.

Not only was Kuhl's process unnecessarily and excessively delayed during this period exceeding one year, which is solely the Government's fault, he has been further hindered and delayed by the Government's delay in providing discovery and withholding of evidence. Indeed, the Government has used this further stall tactic to gain advantage over Kuhl in this case and make up for its haste and recklessness ~~over this case,~~ in bringing this indictment.

The Government knew that Defendant did not have the discovery he was entitled to, and conceded so to Mr. Graham during their brief cross-talk off the record at 2/19/25 detention hearing. Indeed, it was after this hearing that Mr. Graham spoke with Defendant in the conference room of the Federal Building to "clarify" that Kuhl did not have all of the discovery. Despite Kuhl clearly addressing this issue about discovery in Court, and the Government's clear knowledge of the lack in discovery, it took over one month for the discovery to be supplemented by providing Mr. Graham with what is labeled as "Discovery 2."

Even with the "Discovery 2" supplement, the discovery

disclosed to Defendant still does not comply with Fed. R. Crim. P. 16. Indeed, Mr. Kuhl asked specifically for complete transcripts of Facebook Messenger messages and phone texts the Government contends are between himself and Minor 1 (ECF No. 108-1 at PageID. 560-561). Instead of providing Defendant with what he is lawfully entitled, the Government chose to flagrantly disregard Kuhl's Constitutional rights of due process and ability to prepare a fully informed defense, as well as Fed. R. Crim. P. 16.

Due to all of the delays, most of which are the Government's responsibility, the Court has chosen to literally remove any chance for Defendant to file a timely pretrial motion. Indeed, the Court references the fact that Kuhl was indicted over 2 years ago as a strong factor in denying to extend the pretrial motion deadline (ECF No. 125 at PageID. 831). Because untimely motions, even if reviewed by this Court, are not preserved for appeal, the delay here has caused particularized and irreparable prejudice to Mr. Kuhl. See United States v. Obiukwu, 17 F.3d 816, 819 (6th Cir. 1994); United States v. Sachs, 801 F.2d 839, 847 (6th Cir. 1986); United States v. Worthington, 698 F.2d 820, 823-24 (6th Cir. 1983).

Additionally, the Government is now using its delay in providing, and withholding of discovery to gain a tactful advantage. The Government brought this case in a hasty reckless manner and is now going back through to essentially dot its "i's" and cross its "t's" all at the expense of Kuhl's right to due process and speedy trial.

Indeed, the Government has superseded the indictment almost two years later and has almost tripled the timeframe charged, as well as changed the type of depictions from photographs to videos that underlie Count 1, to fit the evidence it presented to the grand jury and plans to use at trial.

Meanwhile, Kuhl has not been provided a single message displaying he ever asked Minor 1 for videos or photographs of her engaged in sexually explicit conduct. Yet the Government claims that a search of Kuhl's Facebook, under the 2/8/23 search warrant, yielded many requests from Kuhl to send him sexually explicit images of Minor 1. These requests are alleged to be from Kuhl directly to Minor 1, but Kuhl has been provided the messages from this Facebook between Minor 1 and there is not one request showing Kuhl requesting sexually explicit depictions. However, the Court seems to just take the Government's word on this false claim (ECF No. 184 at PageID. 1413). Moreover, the Government asserts the search of the iPhone 12, seized from the November 2021 Indiana ~~ind~~ incident, pursuant to the 1/25/23 federal search warrant yielded two videos of Minor 1 (ECF No. 123 at PageID. 774). However, this does not fit the information disclosed to Kuhl in discovery. Indeed, SA Buttery seems to describe two depictions discovered during the search of the iPhone 12 under the 1/25/23 search warrant. This description is in SA Buttery's application for the 2/8/23 federal Facebook search warrant (ECF

No. 98-1 at PageID. 345-346). The issue is that only one of these depictions is supposedly of Minor 1 herself and it is described as a video, but the other is a photograph supposedly of Mr. Kuhl's penis. Again, the Court just continues to trust the Government's misleading claims (PageID. 1413).

Even more troubling is the Government's replacement of the word "photographs" in the original indictment (ECF No. 1) with "videos" in the superseding indictment (ECF No. 147). This is because Mr. Graham was clearly shown approximately 3 "photos" of a young black female from the waist up exposing her breasts, as well as two "videos" of a female's pubic area. Thus, the Government displays its hasty recklessness and flagrant disregard for Kuhl's right to be properly informed of the charges of which he is called to defend against and the evidence underlying those charges.

Obviously, the Government is now actually building its case in a manner and at a pace that it pleases, while Kuhl is misled, confused, delayed, and stressed trying to investigate, understand, and defend against these charges while continuing to be incarcerated.

Additionally, the numerous delays have prejudiced Kuhl in that he does not remember things exactly as they seemed to have occured. For instance, the traffic stop in Wyoming on 10/13/22, which led to this investigation and indictment was not exactly

as Mr. Kuhl remembered. Mr. Kuhl knows this from viewing body cam and vehicle cam footage from the incident. Accordingly, all of the allegations underlying the initial and superseding indictment took place before the Wyoming Traffic stop so obviously Kuhl will not be able to recall alot of the specifics to adequately contest any erroneous evidence or testimony.

Also, a consequence of the excessive delay here has resulted in helpful witnesses growing apart from Mr. Kuhl due to being incarcerated for so long. As they say, out of sight out of mind. These witnesses include people who can attest to Kuhl's character in that, while he is far from a saint, he is also not a child predator. Also, such witnesses include the driver of the vehicle that Kuhl was a passenger in during the Wyoming PD traffic stop, who can help establish that the Wyoming PD arrest of Kuhl was made unlawfully and was based on malice and retaliation. Further, there are two witnesses who can attest to Minor 1's dishonesty and tendency to exaggerate, especially when feeling judged, embarrassed, or guilty, and is also known to say things that are misleading or deceitful out of spite and anger.

Although at some points of the delays in this case motions were pending, it is not fair to say that the Government can be allowed to review evidence that is subject to disclosure and at the same time withhold that evidence from Defendant and then only turn it over later, leaving Defendant far less time to review

that evidence himself.

Kuhl ~~ch~~ and his family have continuously asserted his desire for a speedy trial and thus, the third factor under Barker has clearly been met and weighs in favor of dismissal. At this point the delay has exceeded 2 years and the Government still has not even provided adequate discovery, let alone taken Kuhl to trial. Accordingly, the presumption of prejudice has been established, but so has particularized prejudice. For these reasons, the superseding indictment should be dismissed with prejudice.

II. Prosecutorial Misconduct - (Grand Jury and Discovery Violations)

Legal Standard

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful oppurtunity to present a complete defense." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). "Federal Rule of Criminal Procedure 16 grants criminal defendants a broad right to discovery." United States v. Stever, 603 F.3d 747, 752 (9th Cir. 2010).

"To reverse a conviction for a discovery violation, we must find not only that the district court abused its discretion, but that the

error resulted in prejudice to substantial rights." United States v. Baker, 10 F. 3d 1374, 1398 (9th Cir. 1993), cert. denied, 513 U.S. 934, 115 S. Ct. 330 (1994).

"Delays intended to secure a tactical advantage weigh heavily against the Government." United States v. Deusie, 17-20583, at 10 (E.D. Mich. Dec. 26, 2017).

In United States v. Stewart, 107 F. 3d 872 (6th Cir. 1997), the Sixth Circuit held that the district court did not abuse its discretion by allowing the prosecution to cross-examine defense witnesses about evidence it discovered mid-trial. However, the Court did recognize a different decision would be appropriate "where the government has willfully withheld discoverable evidence and later sought to introduce that evidence ~~in its~~ during its case-in-chief." Id. In Stewart, the Court also identified three factors to be considered when deciding the appropriate resolution for a discovery violation. Such factors are: (1) the reasons for nondisclosure; (2) the extent of prejudice to the defendant; and (3) the possibility of ameliorating any prejudice by granting a recess or continuance.

Under Federal Rule of Criminal Procedure 16 (d) (2), if a party fails to comply with its discovery obligation, the court may "(A) order that party to permit ~~to permit~~ the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from

introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances."

Argument

1) The Government hastily and recklessly indicted Mr. Kuhl in April of 2023 under the original indictment and engaged in misconduct doing so. As mentioned above, the initial indictment charged a time frame between 5/13/21 and 10/31/21, but the Government introduced inflammatory evidence far outside the time frame, improperly influencing and creating bias in the grand jurors to Kuhl's detriment. Kuhl was incarcerated and the Government had possession and control of all evidence and thus, such reckless disregard for Kuhl's rights to due process, and to be indicted by a constitutionally conducted grand jury proceeding, under the Fifth Amendment, was unnecessary.

Additionally, the reckless and flagrant disregard for Kuhl's right to be informed of the nature of the charges against him, to enable his preparation and presentation of a complete defense, guaranteed under the Fifth and Sixth Amendments were violated by this misconduct of the Government. Indeed, the improper time frame caused confusion in Kuhl and resulted in him basing arguments that focus on challenging evidence as inadmissible due to it being outside the timeframe specified in the indictment.

Indeed, Kuhl concerned himself with strategizing to fight against 6 months worth of evidence, as opposed to the almost 16 months now under the superseding indictment.

Because the Government alleged only photographs were at issue in Count 1 of the original indictment, Kuhl focused on attacking only still ~~vide~~ photos which are easier to challenge than ongoing videos. Moreover, the discovery provided only described one photograph of Minor 1's buttocks while wearing a thong. Not only is this not sexually explicit conduct, it was supposedly sent to Kuhl's phone on 5/27/22, far outside the timeframe of the original indictment.

Then, the fact that only a timeframe of 2021 was being charged created greater confusion as to who the alleged minor is and how this case came to the federal government's attention. This is because the only matter brought to Kuhl's attention related to anything sexual involving a minor, was the search of his phone seized in 2022, that he did not have in 2021, by Wyoming PD and turned over to MSP.

Accordingly, Defendant has had to spend considerable time, money, resources, and mental focus on ascertaining what phones were referenced in the Forfeiture Allegation, where such phones came from, how and when they were obtained, and what actual depictions are being used against him. Still, Mr. Kuhl does not have a clear answer to this question. Indeed, Count 1 did, and still does, say only that depictions

were produced using materials that have been transported in interstate or foreign commerce, but only specifically alleges that Mr. Kuhl received and stored depictions, not who or what produced them.

Still, the Government has not informed Kuhl of the phone numbers associated with the devices used to communicate and receive depictions under Counts 1 and 2. Because Kuhl not been provided a single message by him requesting sexually explicit depictions he needs the phone #s to get call records to contest any claim that he called and requested photos. Also, Kuhl was not made aware of the origin of the 2 phones in the Forfeiture allegation until 3/31/25 when he received ECF No. 123 from the Government.

Accordingly, this was beyond the pretrial motion deadline and thus, Kuhl could not effectively challenge a phone's evidence if not informed of how the Government obtained such phone. The circumstances here required detail in discovery beyond just description of the phone because over 50 phones have been seized during investigations of Kuhl. Consequently, the lack of notice and discovery has literally prevented Kuhl from filing timely pretrial motions, and even if granted leave to file an untimely motion, such arguments are not preserved for appeal if necessary. Thus, Kuhl has been irreparably prejudiced by the Government's actions.

Because of the page limit Kuhl cannot fully and effectively brief all the discovery issues and how he has been prejudiced by such. For this reason, Kuhl will just state the issues and pray for oral argument.

2) Government did not disclose CCU Report pertaining to the extraction of the Samsung phone's data that is at issue in this case.

3) The Government did not disclose complete text transcripts despite Kuhl's request (ECF 108-1) and a Court Order to do so (ECF No. 140). Instead, a hearing had to be held almost 2 months after the pretrial motion deadline on 4/29/25 to have the Court reorder the Government to disclose messages between Minor 1 and Kuhl. Indeed, the Government had not even began preparing those messages because they never intended to disclose them.

4) AUSA VerHey has been a prosecutor for over 10 years and thus, is very well aware of the Federal Rules of Crim. P. and the requirements of due process governing discovery in criminal prosecutions. Thus, there is no excuse for the fact its over 2 years after Kuhl was indicted and over 3 months since being arraigned, and Kuhl has still not been provided with discovery basic to his defense and subject to mandatory disclosure under Fed. R. Crim. P. 16. Still, returns and dates of execution for two federal search warrants dated 3/8/22 and 6/29/22 have not been provided. Still, the two MSP reports provided are incomplete. Still, Kuhl's statement to MSP which is in audio and video form has not been provided. Still, the computer/phone forensics report has not been provided. Still, a specific and consistent

description of the number and content of depictions at issue. What else has the Government not provided that is subject to disclosure under Fed. R. Crim. P. 16, is anybody's guess.

5) The original indictment was clearly returned as a result of prosecutorial misconduct, yet Kuhl was held under this indictment in federal custody for almost 2 years. Indeed, the Government had to supersede the indictment to fix their mistakes.

For these reasons and more, Kuhl requests dismissal with prejudice or an order prohibiting the Government from presenting at trial any evidence that has not been disclosed to Defendant that is subject to disclosure under Fed. R. Crim. P. 16.

Respectfully,
S. Kuhl 5/23/25
S. Kuhl 61189510

S. Kuhl 611895 10
1035 James P.O. Box 845
White Cloud, MI 49349




[illegible]

FROM THE [illegible]

U.S. DISTRICT COURT
399 FEDERAL BLDG.
110 MICHIGAN NW
GRAND RAPIDS, MI 49503

LEGAL MAIL