UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FILED - GR
June 9, 2025 2:24 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: JW / 6-9

UNITED STATES OF AMERICA,
Plaintiff,

v.

SAMUEL ALEXANDER KUHL,
Defendant.

Case No. 1:23-cr 44
Hon. Jane M. Beckering
*Hearing Requested*

*EXPEDITED CONSIDERATION REQUESTED*

MOTION SEEKING AUTHORIZATION FOR EXPERT TO EXAMINE LAW ENFORCEMENT DEVICES

Defendant now comes before the Court seeking the Court grant authorization for a Digital Forensics expert to examine the original devices utilized in this case to examine the cell phone extractions and Facebook Account content underlying the instant case. Defendant's conversation with Digital Forensics expert Adam Kelly has revealed such examinations are necessary for Kuhl to ascertain that the Fifth and/or Fourth Amendments, as well as Article 1, Sections 11 and 17 of the Michigan Constitution were not violated while officers searched and reviewed the digital data underlying this case. Adam Kelly seems to have concerns as to whether such examinations being conducted by him will cause ethical and/or conflict of interest issues with potential future clients' data being on these law enforcement/government

devices. Accordingly, hiring someone of the same field of expertise, who is not local, may be more appropriate.

Due to the need for Kuhl to have the information that will be provided by such examinations, to adequately understand and challenge the obtaining of evidence in this case, the Court should grant such authorization so as to ensure Kuhl is able to present a full defense and afforded due process. The material information that will be provided, if such examinations are authorized, will be laid out further in this pleading.

## STATEMENT OF FACTS

The data obtained from 2 cell phones and one Facebook account are the origin of the evidence the Government intends to introduce in its case-in-chief at trial. One cell phone, an iPhone 12 Pro Max, was seized by Indiana authorities on 11/20/21 and sent to the FBI Special Agent Brent Johnson on or about December 4, 2021. FBI Special Agent Jeff Buttery obtained a federal search warrant for the iPhone on 6/29/22, in relation to a fraud investigation. To search the iPhone, a device, most likely a computer, was used to operate an extraction program to extract the iPhone's data. Once the data was extracted, the device then utilized a program to analyze the data extraction. After the analysis was conducted, a copy of the data

and analysis was made into a report and, most likely, saved to a flash drive. Moreover, the extraction, its analysis, and the report are on the device utilized by SA Buttery, or whomever, actually extracted and analyzed the data. Accordingly, the only way to audit or review the original analysis of the data and exactly how such analysis was conducted is to examine the original device.

The Facebook Account's data that contains evidence the Government intends to use in its case-in-chief, was originally obtained under a federal search warrant issued on 3/8/22 in relation to the same fraud investigation underlying the iPhone 12 Pro Max mentioned above. The federal search warrant of 3/8/22 authorized the seizure of 5 Facebook Accounts in total, 2 of which were associated and/or operated by Mr. Kuhl. The other 3 Facebook Accounts were connected to 3 separate individuals. To execute such warrant it seems SA Buttery served the warrant on Facebook's parent company Meta via email. Accordingly, Meta provided the requested data ~~on or about 4/8/22~~ sometime after 3/8/22, assumingly by electronic file, which data was then opened, accessed, and analyzed by SA Buttery, or other law enforcement personnel, utilizing a government device, most likely a computer. After analyzing the data from these 5 Facebook Accounts, that data was stored somewhere to be further reviewed. When SA Buttery learned of the CSC/CSAM

investigation into Defendant by MSP, SA Buttery sought a second search warrant for one of the 5 facebooks searched under 3/8/22 search warrant. The one Facebook sought to be searched had a vanity name of "Shane Shane." However, the other Facebook Account associated with Mr. Kuhl also had the same vanity name of "Shane Shane." SA Buttery specifically sought only to search one of the "Shane Shane" Facebooks for evidence related to CSAM via a search warrant issued on 2/8/23. In order to execute the 2/8/23 search warrant, SA Buttery simply went back to review the data previously obtained under the 3/8/22 search warrant.

Just as with the Facebook search, SA Buttery conducted a second search of the iPhone 12 Pro Max, under a search warrant issued on 1/25/23 in connection with CSAM. To execute this second search of the iPhone 12 Pro Max, SA Buttery simply went back to review the extraction seized under the 6/29/22 search warrant for evidence of fraud.

The second phone at issue is a Samsung Galaxy S22 that was initially seized by Wyoming Police during the arrest of Mr. Kuhl on 10/13/22. Subsequent to the arrest, a search warrant was issued on 10/14/22 and the Samsung phone's data was extracted and analyzed by Sergeant Rob Meredith of Internet Crimes Against Children (ICAC). Supposedly, this extraction and analysis of the Samsung phone's data yielded evidence of fraud

and was turned over to MSP Detective Gensterblum. The method of turning over the extraction was to copy the extraction on to a USB Flash Drive, which was given to Gensterblum. Gensterblum then further reviewed the extraction using a device to open the USB Flash drive, most likely a computer. During Gensterblum's examination of the extraction he "came across" either, visual depictions he suspected may be CSAM, or a conversation that he believed may be evidence of sexual contact with a minor. Due to inconsistent claims as to what Gensterblum initially "came across, it is unclear as to what actually caused him to seek an additional search warrant of the Samsung phone's extraction for CSAM. The additional state search warrant for CSAM was issued on 11/09/22. Eventually, Gensterblum provided a copy of the Samsung phone's extraction to SA Buttery, as well as information Gensterblum learned of during his CSAM investigation.

Because the only way to see how the search or examination of the extraction was actually executed is to access the device used to execute the examination itself, not the contents of the extraction stored on a storage device such as a flash drive. Due to the circumstances present in the instant case, being able to see exactly <u>how</u> the data was searched is imperative to effectively challenge the constitionality of such search.

Indeed, as techology has evolved it is the manner in which the search of digital data is conducted, that has been brought to the forefront of such search's lawfulness. As Michigan Supreme Court Justice Viviano quoted the 10th Circuit's decision in United States v. Loera, 923 F.3d 907 at 916-17 (2019) in his concurrence in People v. Hughes, 958 N.W.2d 98, 506 Mich. 512 (Mich. 2020), "rather than focusing our analysis of the reasonableness of an electronic search on 'what' a particular warrant permitted the government agents to search (i.e., 'a computer' or 'a hard drive'), we have focused on 'how' the agents carried out the search, that is, the reasonableness of the search method the government employed. Our electronic search precedents demonstrate a shift away from considering what digital location was searched and toward considering whether the forensic steps of the search process were reasonably directed at uncovering the evidence specified in the search warrant."

"For electronic searches, courts look at how the agents carried out the search." United States v. Miller, 24-cr-00083-NYW-1 at 66 (D. Colo. May 6, 2025); see also Logan Koepke, Mass Extraction: The Widespread Power of U.S. Law Enforcement to Search Mobile Phones, page 65 (Oct. 2020) (quoting Association of Chief Police Officers Good Practice Guide for Computer Based ~~Electron~~ Electronic Evidence (March 2012)) ("An audit trail... of

all processes applied to digital evidence should be created and preserved. An independent third party should be able to examine those processes and achieve the same result."); In re Search of Three Cellphones and One Micro-SD Card, 14-MJ-8013-DJW, 2014 WL 3845157 (D. Kan. Aug. 4, 2014) (court refused to issue search warrant because it did not include a search methodology, holding that an "explanation of the government's search techniques is being required in order to determine whether the government is executing its search in both good faith and in compliance with the probable cause and particularity requirements of the Fourth Amendment"); In re Cellular Tels., 14-MJ-8017-DJW, 2014 WL 7793690 (D. Kan. Dec. 30, 2014) (same).

## ARGUMENT

The circumstances here are similar to that of Hughes cited above, in regards to the search of the iPhone 12 Pro Max data and Facebook Account data. Indeed, the data of the iPhone had already been seized via extraction under the 6/29/22 fraud investigation search warrant. Likewise, the Facebook data had been obtained under the 3/8/22 fraud investigation search warrant before being searched under the 2/8/23 CSAM investigation search warrant.

While additional warrants were obtained to go back and search the previously obtained data for evidence of a separate

crime, the question does not stop there. SA Buttery searched the Facebook at issue exactly 11 months prior to the 2/8/23 CSAM search warrant. Moreover, Buttery searched two other Facebook Accounts associated with Kuhl in March of 2022, one of which had the same vanity ID "Shane Shane." It seems to be beyond mere coincidence that Buttery remembered exactly which Facebook Account contained messages between Minor 1 and Defendant almost a year later. This is not even considering the other Facebook Accounts, associated with other people, that Buttery searched in this 11 month span. Accordingly, Kuhl is seeking authorization for the forensics expert, whomever that may be, to examine the device utilized by Buttery, or other government agent, to examine the Facebook's data to ascertain that such agent did not go searching through the data before obtaining the 2/8/23 search warrant.

As to the iPhone 12 Pro Max, Defendant seeks authorization for the expert to examine the device utilized to search the extraction taken from the iphone. This will ~~be able~~ allow such expert to see when and how the extraction was searched, and whether it was searched shortly before the second 1/25/23 search warrant for CSAM. Indeed, such examination will also reveal whether the government agent reviewed the Facebook data while examining the extraction of the iPhone 12, seeing as such data was likely amongst the vast contents of the

extraction.

Lastly, Defendant seeks authorization of the expert to examine the device utilized by Meredith in extracting and analyzing the data of the Samsung phone seized by Wyoming PD. Additionally, Defendant seeks authorization of the expert to examine the device used by Gensterblum when further examining the extraction given to him from Meredith. Such examination will determine exactly how Gensterblum "came across" the sexual content, whether depictions or texts, that led to this prosecution. For instance, it will display what search terms were used, if any, the specific image classification categories enabled such as nudity, guns, currency, etc., and other methods executed to examine the extraction of the Samsung Phone.

## CONCLUSION

Wherefore, Kuhl requests that the forensics expert to examine all requisite devices, due to the unique circumstances, to ensure due process of law, compliance with the Fourth Amendment, and ability to effectively defend against the entirety of this prosecution as guaranteed by the Sixth Amend.

Respectfully, [signature] 6/2/25
S. Kuhl 61189510



GRAND RAPIDS MI
[illegible] #08 [illegible]
THU 05 JUN 2025

...t. Court
... Bldg.
...higan NW
...apids, MI 49503

S. Kuhl 61189510
1035 James
P.O. Box 845
White Cloud, MI 49349

U.S. Di
399 Fed
110 Mi
Grand R