UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

SAMUEL ALEXANDER KUHL,

Defendant.
______________________________________/

Case No. 1:23-cr-44

Hon. Jane M. Beckering
U.S. District Judge

# GOVERNMENT'S TRIAL BRIEF

During May 2021, Kuhl met a then-14-year-old girl (Minor 1) on Facebook Messenger and thereafter began texting with her on his Apple iPhone and Samsung cell phone. He persuaded her to engage in sexual relations with him, and as part of that persuaded her to send him videos of herself. The United States respectfully submits this trial brief to provide a summary of the facts the government intends to prove at trial and to highlight legal issues that may arise.

## Factual Background

Kuhl was born in December 1991. During October 2022, Wyoming Michigan police arrested Kuhl and seized his Samsung cell telephone when he was discovered with fraudulent credit cards. When they searched the phone, they discovered proof that Kuhl had been engaged in a sexual relationship with a 14-year-old female. This led police to search an iPhone cell telephone they had previously seized from him in connection with

possession of counterfeit credit cards. This likewise led to the discovery of the sexual relationship. The proof on the phones consisted of messages discussing the sexual encounters as well as digital depictions of the female displaying her vagina in a lascivious manner.

Minor 1 confirmed that she had sexual intercourse with Kuhl several times, with two assignations occurring at a hotel in South Haven. Police were able to verify that "Michael Polito" rented a hotel room at the times Minor 1 indicated. Kuhl carried false identification in this name. Sexual relations under these circumstances is a crime under Michigan law, specifically Third Degree Criminal Sexual Conduct under Michigan Compiled Laws § 750.520d.

Minor 1 also indicated that Kuhl had persuaded her to send him sexually explicit photographs of herself. This led investigators to search Kuhl's Samsung cell telephone and his Facebook account for images and corroboration of the victim's statement. The messages, from Facebook Messenger texts on cell phones, reveal Kuhl and Minor 1 discussing meetings to have sex, and recollections of past sexual encounters. It also discloses Kuhl requesting sexual images from Minor 1, who complied by sending him nude videos of herself, including recordings displaying her genitals in a lascivious manner. The messages also indicate that Minor 1 first told Kuhl that she was 17, but later admitted her true age. This did not stop the sexual activity.

Kuhl's messages with Minor 1 also reveal that he frequently urged her to persuade a friend of hers to engage in group sexual activity.[1] They also show that he used and threatened violence against Minor 1, including the use of a firearm, to keep her docile.

**Elements**

**Count 1: Sexual Exploitation of a Minor, 18 U.S.C. § 2251(a), (e)**

Section 2251(a) has two elements: (1) defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and (2) the visual depiction was produced using materials that were mailed, shipped, or transported in or affecting interstate or foreign commerce. *E.g., United States v. Lively*, 852 F.3d 549, 558-59 (6th Cir. 2017). "Producing" prohibited images includes copying them onto a subsequent data receptacle. *Id. See also*, Sixth Circuit Pattern Jury Instruction 16.01 (Criminal) (November 15, 2024). *United States v. Sykes*, 65 F.4th 867, 881 (6th Cir. 2023) establishes that Section 2251 has been satisfied when a defendant caused minor to create CSAM images and send them to him using the requisite materials affecting commerce. This case also supports the proposition that the interstate nexus requirement can be met by examination of the phones at issue and establishing that they bear the logo "Made in China." *Id.* at 882.

---

[1] The government provided notice that it intends to introduce this evidence. (R. 66: Government's Pretrial Conference Summary Statement, PageID.248-50.)

**Count 2: Coercion & Enticement, 18 USC § 2422(b)**

"To convict a defendant under § 2422(b), the government must show that the defendant (1) 'use[d] the mail or any facility or means of interstate or foreign commerce'; (2) to 'knowingly persuade[ ], induce[ ], entice[ ], or coerce[ ]' or 'attempt[ ] to' persuade, induce, entice or coerce; (3) a person who the defendant believed to be under the age of eighteen; (4) 'to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense.' *United States v. Zulawski*, 2022 WL 247742 *11 (6th Cir. 2022)(*quoting United States v. Vinton*, 946 F.3d 847, 852 (6th Cir. 2020) (citations omitted, alterations in original).

**Evidentiary & Trial Issues**

1. **Cross examination questions and evidence related to the justification to search and other criminal procedure issues are irrelevant and should be excluded.**

The defendant has spent a lot of time prior to trial challenging the legality of the evidence collection done in this case. In addition, the defendant filed a proposed exhibit list that includes a number of search warrants and affidavits. (R: 251 Defendant's Proposed Exhibits, PageID.2187.) While these may be proper matters to discuss pretrial, they should not be raised during the trial. The government requests a blanket order instructing the defendant not to delve into such matters during the trial.

The propriety and legality of the search is a legal issue to be raised pre-trial, not a factual issue for the jury. Fed. R. Crim. P. 12(b)(3)(C); *United States v. Monsisvais*, 946 F.2d 114, 115 n.2 (10th Cir. 1991); *Mesmer v. United States*, 405 F.2d 316, 319 (10th Cir. 1969) ("Generally, the legality of a search warrant is one of law to be determined by the court

without the presence of a jury."). Any challenge at this point to the propriety and legality of the search is neither relevant nor material to the issues to be determined by the jury. "The purpose of the rule requiring that motions to suppress be made prior to trial is to provide orderly proceeding during the trial of a case by eliminating from the trial 'disputes over police conduct not immediately relevant to the question of guilt.' " *Mesmer,* 405 F.2d at 318-319, *citing Jones v. United States*, 362 U.S. 257, 264 (1960).

At trial, search and seizure issues are irrelevant and unduly prejudicial, in that they serve only to confuse the jury. This was recognized in *United States v. Sanders*, 196 F.3d 910, 914 (8th Cir. 1999). There, the Eighth Circuit affirmed a district court's ruling preventing defense counsel from continuing "to cast doubt on the legality of the stop and search." The Eighth Circuit further affirmed the district court's decision to instruct the jury: "The Court has ruled as a matter of law that the stop of defendant's vehicle, the subsequent search ... and the seizure of the gun ... were all lawful acts of the law enforcement officer performing law enforcement duties." *Id.* The government requests that the Court follow this rule and issue a similar instruction at the appropriate time.

The government will accordingly object to such lines of inquiry based on relevance and requests that the Court sustain such objections.

**2. Summary Evidence-- Fed. R. Evid. 1006**

As noted above, Kuhl and Minor 1 communicated on Facebook Messenger and via text message. These communications are voluminous and some refer to material that is irrelevant and prejudicial to the defendant. The government intends to introduce the

most relevant texts and place them into a summary for the jury to review. This is permitted under Federal Rule of Evidence 1006.

Federal Rule of Evidence 1006 provides:

> "The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court."

The Sixth Circuit has labeled summaries that meet the elements of Rule 1006 "primary-evidence summaries." *United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998). To be admitted under Rule 1006, the underlying information in a primary-evidence summary (1) must be so voluminous that it cannot be conveniently examined in court; (2) it must have been previously provided for examination by the opponent; (3) the summarized information must itself be admissible evidence; (4) the summary must be accurate and presented in a non-prejudicial manner; and (5) the summary must be properly introduced, by the person who oversaw its preparation. *United States v. Moon*, 513 F.3d 527, 545 (6th Cir. 2008); *United States v. Jamieson*, 427 F.3d 394, 409 (6th Cir. 2005); United States v. Modena, 302 F.3d 626, 633 (6th Cir. 2002). It is not necessary that it be literally impossible to examine all the underlying records, but only that an in-court examination would be inconvenient. *Bray*, 139 F.3d at 1109.

If the requirements of Rule 1006 are met for primary-evidence summaries, "the summary, and not the underlying documents, is the evidence to be considered by the factfinder." *Bray*, 139 F.3d at 1109. The admission of Rule 1006 exhibits as evidence "is a matter within the discretion of the district court, whose decisions in such matters will be

upheld absent an abuse of discretion." *Jamieson*, 427 F.3d at 409 (*quoting Bray*, 139 F.3d at 1109).

The prosecution submits that the requirements of Rule 1006 are met here. Kuhl's many messages with Minor 1 have been provided during discovery. They are voluminous, and many are irrelevant to the issues at trial and are prejudicial because they relate to Kuhl's fraud scheme.

In addition to primary-evidence summaries, the Sixth Circuit has described two other types of summaries: pedagogical-device summaries and secondary-evidence summaries. *Bray*, 139 F.3d at 1112. "Pedagogical-device summaries or illustrations . . . are intended to summarize, clarify, or simplify testimonial or other evidence that has been admitted in the case, but which are not themselves admitted, instead being used only as an aid to the presentation and understanding of the evidence." *Bray*, 139 F.3d at 1112. "For these the jury should be instructed that the summaries are not evidence and were used only as an illustrative aid." Id. at 1111.

Secondary-evidence summaries are a hybrid type of summary, which is a combination of the above two types of summaries.

> These secondary-evidence summaries are admitted in evidence not in lieu of the evidence they summarize but in addition thereto, because in the judgment of the trial court such summaries so accurately and reliably summarize complex or difficult evidence that is received in the case as to materially assist the jurors in better understanding the evidence. In the unusual instance in which this third form of secondary evidence summary is admitted, the jury should be instructed

that the summary is not independent evidence of its subject matter and is only as valid and reliable as the underlying evidence it summarizes. *Bray*, 139 F.3d at 1112.

Such summaries are admissible if the Court determines that they are "accurate and reliable depictions of the admitted evidence they sought to synthesize for the jury." *United States v. Kerley*, 784 F.3d 327, 341 (6th Cir. 2015). Admission of such exhibits is left to the sound discretion of the trial court. *Id.*

The government has prepared a proposed summary that it will attach to this pleading as Attachments A & B for the Court's review. The government asks the Court to review them and advise the government at the final pretrial conference that they are admissible or, if not, how they should be amended.

**3. Victim Propensity and Federal Rule of Evidence 412**

The government believes that the defendant will attempt to offer evidence that Minor 1, the victim of the offenses, consented to sexual activity and may have engaged in sexual activity with others. The Court should order the defendant not to engage in such lines of inquiry.

Rule 412 provides as follows:

**(a) Prohibited Uses.** The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:

(1) evidence offered to prove that a victim engaged in other sexual behavior; or

(2) evidence offered to prove a victim's sexual predisposition.

**(b) Exceptions.**

(1) Criminal Cases. The court may admit the following evidence in a criminal case:

> (A) evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;
>
> (B) evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and
>
> (C) evidence whose exclusion would violate the defendant's constitutional rights.

This Rule is called the federal rape shield law. Its purpose is to protect victims of rape to being exposed at trial to harassing or irrelevant inquiry into their past sexual behavior. *United States v. Anderson,* 467 Fed. Appx. 474, 477 (6th Cir. 2012). This Rule applies in cases such as this. *E.g., United States v. Jakits*, 129 F.4th 314, 330-31 (6th Cir. 2025).

None of the exceptions permitted by Rule 412 are present here. This is not a sexual assault case. As the elements of the offense cited above make clear, the crimes charged relate to using a means of interstate commerce to persuade a minor to transmit lascivious images and to engage in a state sex crime. Consent or the lack thereof is not an element of the crimes charged, nor is it a defense. All this evidence will do is traumatize the witness. Courts have not hesitated to bar such evidence where, as here, none of the exceptions found in Rule 412 are present. *See, e.g., United States v. Noble*, No. 19-20525, 2021 WL 9280683 (E.D. Mich. 2021)(citing cases).

The government requests that the Court order that Kuhl is prohibited from questioning Minor 1 about such matters.

**4. Kuhl's efforts to engage in sexual activity with Minor 1's friends—Fed. R. Evid. 403**

At the beginning of the case, the government advised Kuhl that it intended to introduce evidence that he made significant efforts to persuade Minor 1 to engage in group sexual activity with him and one of her friends (another minor girl). (R. 66: Government's Initial Pretrial Conference Summary Statement, PageID.249.) This notice was provided to satisfy the requirement that evidence subject to Fed. R. Evid. 404(b) be disclosed prior to trial. However, this was just a precaution as the evidence is not subject to that Rule. Kuhl opposes the introduction of this evidence. (R. 213: Motion in Limine, PageID.1794-95.)

The text messages indicate that Kuhl made several efforts to persuade Minor 1 to engage in group sex with him and her school friend. This female (born in May, 2004) is expected to testify at trial and provide proof that Kuhl and Minor 1 had an intimate relationship. Thus, a significant portion of her testimony provides important corroboration to one of the central issues at trial. She is also expected to confirm what the text messages indicate—that Kuhl importuned both females to have sex with him. Again, this corroborates the charge in Count 2, that Kuhl discussed a desire to engage in more sexual activity with Minor 1. The evidence can also be used by the jury as proof that the defendant was manipulating Minor 1 by suggesting that he might be tiring of her company, thus placing psychological pressure on her to keep him happy by agreeing to

sex and sending lascivious videos. This is all directly relevant to the charges against Kuhl and so is not subject to Rule 404(b). As such it is inextricably intertwined res gestae evidence. E.g., *United States v. Jackson*, 299 F.R.D. 543, 545 (W.D. Mich. 2014). Because of its importance to the central issue at trial, it does not run afoul of Rule 403's exclusion of slightly relevant evidence that is outweighed by the danger of unfair prejudice.

For these reasons, the evidence ought to be admitted.

**5. Factual setting surrounding the seizure of Kuhl's phones – F.R.E. 401 & 403**

The government has previously outlined for the Court that the two cell phones featured in this case were seized after the police discovered him engaged in illegal activities. The iPhone that will be offered into evidence was seized by the Indiana State Police in 2021 when they responded to a call that Kuhl had a woman in his custody and would not allow her to leave his car. This led to the discovery of evidence that Kuhl was engaged in fraud. The Indiana authorities forwarded this evidence, including the iPhone, to the Kalamazoo FBI office because agents there already an open fraud investigation stemming from the prior discovery of Kuhl's possession of fraud materials. (R. 123: Government's Discovery Response, PageID.771-72.) The Samsung phone was seized from Kuhl during 2022 by the Wyoming Police Department when officers discovered him to be in possession of multiple credit/debit cards in others' names and a large amount of cash, again indicating he was engaged in fraudulent activity. (*Id*. at PageID.772-73; R. 243: Government's Suppression Response, Page ID. 2028-29.) Kuhl objects to any

reference to the circumstances surrounding the Indiana incident. (R. 203: Motion in Limine, PageID.1719.)[2]

The jury should be given some information about why the Indiana State Police went looking for Kuhl. The Sixth Circuit has observed "the jury is entitled to know the setting of a case. It cannot be expected to make its decision in a void–without knowledge of the time, place and circumstances of the acts which form the basis of the charge." *United States v. Zulawski*, 2022 WL 247742 * 11 (6th Cir. 2022)(*citing United States v. Vincent*, 681 F.2d 462, 465 (6th Cir. 1982))(internal edits omitted). An important part of the government's case is that the police came into possession of the cell telephones, which led to the discovery of the illegal conduct charged here. The truth is the phones were legally seized as part of legitimate law enforcement investigations into illegal conduct by the defendant. If the jury is not made aware of that, there is a significant chance that jurors may wonder about the legality of the searches or speculate about why the defendant was stopped in the first place. This counsels in favor of admitting evidence about what led the police to go looking for Kuhl, to seize the phones and forward them to the FBI.

On the other hand, the government concedes that there is a risk of prejudice under Rule 403 that the jury will be distracted by the other crimes. If so, the government

---

[2] This situation arises again in connection with another episode, involving the seizure of a false identity and a hotel key linked to this case, which occurred when Kuhl fled the Kalamazoo County courthouse as a guilty verdict against him was about to be returned. The judge issued a bench warrant and the police arrested him, finding these items when the seized his wallet.

proposes to elicit testimony from the Indiana officers that testify that 1) they were asked to stop the car occupied by Kuhl by a concerned citizen about a matter unrelated to the present charges, 2) when they found the car Kuhl was gone but others were present, 3) they seized evidence as a result of this incident and were asked to send it to the Kalamazoo office of the FBI, which had an open case on Kuhl, and did so. At this point, the government would request that the Court give a limiting instruction advising the jury 1) that this testimony was admitted only to explain how law enforcement came into the possession of the iPhone, 2) the seizure of it was legal and 3) they should not speculate about the conduct that occurred in Indiana. This would be consistent with the instruction approved in *Sanders*, supra at p.5. Finally, as requested in section one of this trial brief, the Court should not permit the defendant to develop testimony about other aspects of the Indiana seizure to avoid opening the door to possibly prejudicial information.

6. **Self-authenticating documents—Fed. R. Evid. 902(11)**.

The defendant and the Court have been advised that the government intends to introduce statements from Samsung, Apple and Facebook indicating that the phones and messages affect commerce. (R. 242: Notice, PageID.2020.)

Rule 803(6) of the Federal Rules of Evidence provides as follows:

> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Rule 902(11) of the Federal Rules of Evidence provides as follows:

> (11) Certified Domestic Records of a Regularly Conducted Activity. The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them.

Admission of these business records will not violate Kuhl's Constitutional rights. In *Crawford v. Washington*, 541 U.S. 36, 56 (2004), the Supreme Court explicitly acknowledged that business records are non-testimonial, and their admission does not implicate the Confrontation Clause. ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy."). The Sixth Circuit subsequently held that business records do not implicate *Crawford* or the Confrontation Clause. *United States v. Jamieson*, 427 F.3d 394, 411 (6th Cir. 2005). Other circuits agree. *See, e.g., United States v. McIntosh*, 2006 WL 1158897, at *1 (7th Cir. May 3, 2006); *United States v. Hagege*, 437 F.3d 943, 958 (9th Cir. 2006); *United States v. King*, 161 F. App'x 296, 297 (4th Cir. 2006); *United States v. Shepard*, 154 F. App'x 849, 851 (11th Cir. 2005).

Respectfully submitted,

ANDREW BYERLY BIRGE
Acting United States Attorney

Date: June 12, 2025

*<u>/s/ Timothy VerHey</u>*
TIMOTHY VERHEY
OLIVIA KAY GHISELLI
Assistant United States Attorneys
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on June 12, 2025, a copy of United States' Trial Brief was mailed to the defendant at the following address of record:

Samuel Alexander Kuhl Reg. #61189-510
Newaygo County Jail
P.O. Box 845
White Cloud, MI 49349

*<u>/s/ Timothy VerHey</u>*
TIMOTHY VERHEY
OLIVIA KAY GHISELLI
Assistant United States Attorneys
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404