UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FILED - GR
June 23, 2025 12:55 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: JW / 6-23

UNITED STATES OF AMERICA,
Plaintiff,

v.

SAMUEL ALEXANDER KUHL,
Defendant.

Case No. 1:23-cr-44
Hon. Jane M. Beckering
*EXPEDITED CONSIDERATION REQUESTED*

# REQUEST TO FILE UNTIMELY MOTION FOR EXPERT WITNESS TESTIMONY

*EXPEDITED CONSIDERATION REQUESTED*

Defendant now comes before the Court requesting to file the untimely motion to present expert witness testimony under FRE 702, or, in the alternative, Defendant be allowed to admit some of the expert's findings without objection to admissibility or authenticity or reliability.

This request is being submitted to the Newaygo County Jail's outgoing mail before 2PM on 6/18/25. Such filing and consideration of this pleading should be granted because Mr. Kuhl just received the expert's summary of findings yesterday 6/17/25, after returning to the jail from Court. It seems that the expert diligently executed his duties and developed his summary of findings with 7 days from 6/9/25 - 6/16/25, and standby counsel sent Defendant this material via overnight mail through UPS.

# BRIEF



Defendant seeks to present by way of testimony from the Digital Forensics Expert Adam Kelly. The Court previously approved of Mr. Kelly's funding under the CJA and was presented with his qualifications through standby counsel. Below are the facts sought to be covered by Mr. Kelly's testimony:

1. "The charged images were saved to the phone (text message database) because the items were sent to the phone, not by a specific action of the user of the phone." *Specific and exact quote from Adam Kelly on page 31 of summary.*

2. "Last Hotspot Activity is 11/30/21." *Specific and exact quote of Adam Kelly on page 32 of summary as to Indiana iPhone.*

3. "I believe the phone had a SIM present and active on this date, a Cellular Network Connection type is indicated in the Timeline for the device." *Specific and exact quote of Adam Kelly on page 2 of ~~summary~~ timeline notes as to Wyoming Samsung.* Date referred to is 10/14/22

4. "Indiana iPhone, activity on phone, why? Who? This is after the original extraction took place." *Specific and exact quote of Adam Kelly on page 2 of timeline notes as to 7/3/22.

5. "Indiana iPhone, activity on phone, why? Who? This is after the original extraction took place. The Location Data indicates that it was powered on in the vicinity of intersection I-94 and 1318."[35] Specific and exact quote of Adam Kelly on page 2 of timeline notes as to 7/13/22.

6. Adam Kelly references the messages surrounding the depictions that AUSA Ghiselli identified as charged depictions and specifically states that he sees Kuhl neither asking or directing S.D. to send such depictions.

## REASONS AND RELEVANCE TO PRESENT SUCH TESTIMONY AND/OR EVIDENCE

As to paragraph 1, this information negates any argument that Kuhl may have personally and intentionally stored these depictions, seeing as such argument could try to infer that Kuhl essentially reproduced the depictions by storing them to cloud/backup data. Moreover, this supports Kuhl's argument he did not seek out such depictions or have a specific interest in receiving them or purpose for them to be produced. If Kuhl did not even store the depictions directly it shows a lack of interest and want in such depictions.

As to paragraph 2, this information contradicts the claim by

Indiana Authorities that the iPhone did not contain a SIM card. It also questions the integrity of ISP maintaining and handling the iPhone. Specifically, it is of concern why was the phone turned on and its Hot Spot activated? Seeing as Indiana authorities will be there, this could also be used to discredit their statements. The iPhone was seized on 11/20/21 or 11/21/21 and kept as evidence by Indiana authorities.

As to paragraph 3, the Wyoming Incident report, search warrant, and affidavit claim that the SIM card, or a SIM card was taped to the Samsung upon it initially being seized, but this information raises concern as to the truthfulness of such claim. The Bodycam footage of officer Jack Tromp who was also present at the Wyoming traffic stop displays the Samsung phone, and there is no SIM taped to the back. Further, the fact that the affidavit prepared by Detective April Kroschel contained "criminal sexual conduct" as the crime for which the phones should be searched to find evidence of.

As to paragraph 4, this information raises concern as to the integrity of law enforcement's handling and maintaining of the iPhone seized by Indiana authorities. At this time, the iPhone was now in possession of the FBI, specifically SA Buttery and/or TFO John Stolsonburg. This also supports the need for

these officers to be present and explain this activity on the phone after the extraction (search) had already been executed.

As to paragraph 5, this also questions the integrity of law enforcement's maintaining and handling of the Indiana iPhone. Specifically, why it was turned on and accessed and where exactly in the vicinity of intersection I-94 and 131. Again, the phone was in possession of FBI SA Jeff Buttery and/or TFO John Stolsonburg, and these officers should be present to explain this activity on the phone.

As to paragraph 6, this testimony and/or evidence will corroborate and establish more credibility in the eyes of the jurors that Kuhl did not seek out or direct S.D. to produce or send these depictions.

## CONCLUSION

There are further concerns raised by Adam Kelly that should be addressed. Moreover, his testimony will lay the groundwork and allow for elaboration on the matters discussed within this pleading and answer any questions that may arise as to these matters.

This material information cannot only be used as possible

impeachment material, but can also be used to challenge the admissibility of evidence and show mistakes made in the investigation of this case. Indeed, such presentation that an investigation was flawed or mistakes were made, has been allowed to be presented to the jury at trial. See United States v. Turner, 23-cr-252 at 2 (KMM/JFD) (D. Minn. Feb. 24, 2025) ("nothing about its ruling would preclude Mr. Turner from arguing that the investigation against him was flawed or that mistakes were made").

Accordingly, presentation of the evidence and/or testimony of digital forensics expert Adam Kelly should be allowed to enable Kuhl to present a full defense and afford him due process. Both matters are protected under the Sixth and Fifth Amendments of the U.S. Constitution.

Wherefore, Kuhl respectfully requests this motion to be granted and if necessary pay for Adam Kelly's time to be present for testimony at trial. Mr. Kuhl assumes that the cost of Mr. Kelly's presence should not exceed 4 hours (including time for testimony and travel). Seeing as his rate is $200/hour, the fee should be no more than $800. Further, Kuhl has a family member willing to pay $25/month to pay back all or part of the requested funds.

Respectfully,

S. Kuhl 6/18/25

S. Kuhl 61189510

Samuel Alexander Kuhl
#61189-510
Newaygo (MCJ)
Newaygo County Jail
300 Williams St.
P.O. Box 845
White Cloud, MI 49349

GRAND RAPIDS MI 493
20 JUN 2025 PM 5 L




Clerk of Court
U.S. Dist. Court
399 Fed. Bldg.
110 Michigan NW
Grand Rapids, MI 49503

LEGAL MAIL

49503-239369