UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FILED - GR
July 16, 2025 12:00 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ns SCANNED BY: jm 7/16

UNITED STATES OF AMERICA,

v. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL. Hon. Jane M. Beckering

# MOTION FOR JUDGMENT OF ACQUITTAL

Defendant now comes before the Court seeking a judgment of acquittal under Federal Rule of Criminal Procedure 29. In the alternative, Kuhl seeks a new trial under Fed. R. Crim. P. 33.

## Reasons Supporting Acquittal of All Charges or New Trial

1. The Court erred in denying Defendant's Motion to Suppress (ECF No. 189). Reasons in support of this argument are as follows:

a) Due to a granting of the Motion to Suppress, consequently resulting in suppression of all evidence seized from the phones at issue, no evidence would have existed to sustain a prosecution and conviction.

b) Government's Response (ECF No. 243) stated that the Wyoming search warrant "requested that phones associated with Kuhl... be searched...." (PageID at 2029) However, this is not correct. Indeed, the search warrant requested that "Kuhl's phone," in the singular, be searched. Accordingly, the search warrant only identified the iPhone being "linked to Kuhl," not the Samsung from which the evidence underlying this case was seized.

c) The texts referenced in the Government's Response (PageID. 2030) were associated with a phone number and text string separate

from the phone number and text string associated with the CSAM. Indeed, SD texted from multiple numbers and nothing in the text string associated with this phone number, utilized by SD, displayed any CSAM. Further, the texts discovered and referenced in the Government's Response (PageID. 2030-2031), were several of hundreds of texts into a conversation that did not immediately appear to be associated with fraudulent activity. Accordingly, MSP officer Gensterblum had no authority to read this deeply into this string of texts. Such limitless rummaging violates the Fourth Amendment.

d) Government's Response states that the initial extraction "indicated that the [Samsung] phone was Kuhl's," and "[f]ollowing the authority granted by the warrant," the Samsung was searched for evidence of credit card fraud. (PageID. 2029) However, the warrant did not authorize the search of the Samsung phone for evidence of any crime (see warrant at PageID. 2046-2047).

e) Government states that Meredith extracted "the relevant data" after identifying the Samsung was Kuhl's and "sent the results to MSP Detective Gensterbloom." However, the warrant did not authorize the seizing (extraction) of any data from the Samsung phone. Indeed, the Samsung was not listed as a device authorized to have any data seized, secured, and tabulated from. As known from Meredith's trial testimony, he did not ~~recieve~~ receive and review the affidavit. Accordingly, Meredith had no legal authority to extract (seize) any data from the Samsung phone.

f) Kuhl was not aware of the issue concerning the number and text string

issue discussed above in subsection c until receiving the work product of Adam Kelly on 6/17/25. This is because all texts provided by the Government in discovery had the numbers associated with those texts redacted, but the expert's work product disclosed the fact that SD had contacted Kuhl from multiple numbers when texting the Samsung.

g) Meredith conducted the search of the Samsung phone with complete ignorance of the circumstances under which the warrant was obtained and was not provided with the affidavit. Due to the lack of listing who the Samsung was associated with, no authorization to seize any data from the Samsung, and a lack of identifying what, if any, criminal evidence was sought from the Samsung within the search warrant, Meredith violated Kuhl's Fourth Amendment in executing the search and seizure of the Samsung's data. Indeed, the Supreme Court has stated, "[n]othing in our opinion suggests... that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." United States v. Leon, 468 U.S. 897, 922 n.24, 104 S. Ct. 3405 (1984). Accordingly, a third party officer, ignorant of the circumstances underlying a search warrant, cannot blindly execute that warrant without ascertaining any probable cause existed for such warrant. This is especially so when the warrant in this case was so facially deficient as to, who the Samsung was associated with, why its collection from a vehicle was of importance, and the nexus of such vehicle to the criminal evidence sought, and what particular criminal evidence was to be seized from the Samsung

specifically. Indeed, Leon's good faith exception does not apply to a warrant so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid. See Leon, 468 U.S. at 923.

h) The Court and the Government misinterpreted Kuhl's reliance and reference to United States v. Bouknight, 467 F. Supp. 3d 1227 (M.D. Fla. 2020) as being limited to a challenge of the warrant's lack of time restrictions. However, Kuhl referenced Bouknight AND United States v. Robinson, 358 F. Supp. 2d 975 (D. Mont. 2005) to in fact challenge the search and seizure of data from the Samsung due to the fact the Samsung was not in the section of the actual warrant authorizing the seizure, securing, tabulating, and making return of any type of information and evidence. While the warrant did state the Samsung at the top as a place to be searched, it did not state the Samsung in the next section for the seizing of anything. Because the warrant nor affidavit listed the Samsung as being associated with any specific criminal evidence, nor any specific person, it is clear that the judge intentionally omitted the Samsung from the seizure section in the warrant.

i) Gensterbloom stated in his interview of SD that a phone extraction provides him with a person's whole life and he is going through every single text on Kuhl's phone. Indeed, this is exactly what he did - go on a limitless rummaging of the

Samsung's data in search of anything incriminating regardless of the nature. As stated before, the texts identified in the Government's response were several of hundreds of texts into a conversation that had nothing to do with fraud and were in a completely separate string of text conversation than that which contained the CSAM as attachments. Thus, Gensterblum read far beyond a cursory view into a conversation that was not immediately incriminating in nature. Then, Gensterblum went to a separate string of texts, associated with a different number, which also was not immediately incriminating and read several of hundreds of texts into the conversation before coming across CSAM. Further, there was no specific information as to how old SD was except that, also deep into these conversations, she speaks of being in highschool.

j) For all of these reasons, the motion to suppress should have been granted, or in the least, an evidentiary hearing held to discuss and discover exactly how Gensterbloom conducted the search. Not holding such a hearing was clear error and a violation of Kuhl right to due process. Not granting the motion on its face or allowing supplemental briefing was also erroneous and resulted in a miscarriage of justice.

2. <u>The Court abused its discretion and erred in denying Kuhl's two Motions to Suppress due to being untimely and/or exceeding the page limit. Reasons supporting this argument are:</u>

a) The Court violated Kuhl's due process under the Fifth Amendment by refusing to give due consideration to Kuhl's Motions to Suppress (ECF Nos. 188 and 190). Indeed, Kuhl was not afforded the oppurtunity to fully litigate his motions to suppress prior to trial. This is clear by what has been established on the record, including but not limited to the Court's setting of Kuhl's Faretta hearing after his pretrial motion deadline, Court's refusal to extend the pretrial motion deadline, delay in discovery of information necessary to litigate the suppression motions, and the Court's incorrect finding that Kuhl's concern that even if granted leave to file such motions as untimely they would not be preserved for appeal.

b) The issues addressed in both motions raise meritorious grounds warranting a review and decision on their merits. Such review and decision is in the interest of justice and the refusal to do so under the circumstances has resulted in a miscarriage of justice. Indeed, Kuhl's continued seizure during the traffic stop was unlawful and the arrest subsequent of that seizure concluded in the prosecutor declining to pursue either charge for which Kuhl was arrested. Even the Government intentionally misstates what caused Kuhl's arrest in stating that Kuhl refused to exit the car and became belligerent (ECF No. 243 at PageID. 2029). As addressed in Kuhl's motion to suppress (ECF No. 190) and can be seen on the officers' bodycam footage, this is not true. Further, the intentional misleading of the magistrate by Detective Kroschel's affidavit warrants a Franks hearing in the least (ECF No. 188).

3. The evidence presented for Count 1 was insufficient to establish the elements beyond a reasonable doubt. Reasons supporting this argument are:

a) Kuhl does not contest the sexually explicit nature of the videos except to that entered as Exhibit 21 (shower video).

b) SD testified that at times she would send depictions of her own volition because that is what people in relationships do.

c) While SD stated sometimes Kuhl asked for depictions, she did not specifically identify any of the 4 videos as being sent due to a request by Mr. Kuhl. Indeed, there is no request or direction by Mr. Kuhl that SD engage in sexually explicit conduct and send him videos of that conduct.

d) As to the video entered as Exhibit 21, and on pages 121-122 of Exhibits 11 and 11A, Kuhl presented texts as Defense Exhibit A, that he was caught off-guard and not expecting this video.

e) As to the video entered as Government Exhibit 20, and on pages 67-68 of Exhibits 11 and 11A, no more than one minute passes between the texts and sending of the video on page 67 of Exhibits 11 and 11A. Looking at page 66 of Exhibits 11 and 11A, the texts minutes before the video being sent does not show requesting or directing SD to send such video, or even create such inference.

f) Due to the pattern displayed by the texts surrounding the depictions at issue, it is clear that SD is sending these videos of her own volition. As can be seen on pages 63-67 of Exhibits 11 and 11A, SD is reaching out seeking to see Kuhl. The same can be seen on page 121 of these same Exhibits. Again SD is telling Kuhl to Facetime her when Kuhl gets out of the shower, but Kuhl did not do so and eventually SD sent the video of herself. Looking to pages 141-142 of Exhibits

11 and 11A, again SD is trying to see Kuhl via videochat. Because the videochat does not occur fast enough, and because SD was missing Kuhl "like crazy," she sends the video, entered as Exhibit 23, of her own volition. Indeed, SD's "I miss you like crazy" text was sent at 10:13:36AM, exactly six seconds before the Ex. 23 video, although the government makes it seem as if this text was sent around 9:53AM (Page 141 of Exs. 11 and 11A). This pattern clearly shows SD is sending these videos of her own volition because she misses and wants to see Kuhl. Clearly this establishes reasonable doubt as to whether Kuhl acted with the intent to create visual depictions of sexually explicit conduct, and that he knew the character and content of the visual depictions, as is the definition of the term "for the purpose of." (Jury instruction 16.01)

g) Simply requesting a picture when SD said she was getting in the shower is not persuading her to engage in sexually explicit conduct. Indeed, mere nudity is not sexually explicit conduct. See United States v. Griesbach, 540 F. 3d 654, 656 (7th Cir. 2008); United States v. Brown, 579 F. 3d 672 (6th Cir. 2009); United States v. Perkins, 850 F. 3d 1109 (9th Cir. 2017). Further, no production or sending of depictions took place any time near this simple joke made by Kuhl as can be seen on page 17 of Government Exhibit 11. Moreover, the verdict form as to Count 1 did not contain an attempt offense as it did for Count 2. Regardless, this joking request by Kuhl is not enough to establish the substantial step element of an attempt offense.

h) No evidence proved that Kuhl stored the videos on either phone as alleged in the superseding indictment. Indeed, all of the videos were only present in the phones as text attachments in the SMS database as can be seen on pages

68, 122, 126, and 143 of Exs. 11 and 11A for the videos dated 10/27/21, 5/18/22, 5/27/22, and 8/22/22 respectively. Thus, the allegation of Count 1 that Kuhl "received and stored" videos was not proven beyond a reasonable doubt and the indictment in fact was amended.

i) It was not proven beyond a reasonable doubt that the materials used to produce the depictions were transported in interstate commerce, which was the element of Count 1 as charged. As was seen by SD's testimony, and other evidence, no one can ascertain whether Kuhl even bought SD a phone, when he did so if at all, and if such phone actually produced the videos. SD could not state when Kuhl supposedly bought her the phone and lied, either in Court or during her interview with Gensterbloom, as to whether she gave the phone back to Kuhl because he threatened her or sold the phone on Facebook Marketplace. SD lied and stated she did not have a phone when she first began talking to Kuhl, which is proven as a lie due to her messages on pages 18-19 of Ex. 11 stating she "just" broke her phone the prior day. Also, her several messages sent at evening, late night, and early morning hours on pages 14, 16, 20, 24-27, 32-35, and 38 of Ex. 11 clearly contradict her claim that she did not have a phone and was using a school computer. Furthermore, no metadata was presented to establish the materials used to produce the depictions, nor the materials actually used to produce the depictions.

j) Government Exhibit 21 displays SD's breasts briefly while in the shower which is not a lascivious exhibition of the <u>genitals or pubic area</u> of a person. Neither is it sexual intercourse, masturbation, or ~~saidist~~ sadistic or masochistic abuse.

k) It was not proven beyond a reasonable doubt that Kuhl specifically used SD to engage in sexually explicit conduct as specifically alleged in Count 1 of the superseding indictment. Indeed, Count 1 specifically states that Kuhl "used persuaded, and enticed" SD in its "statement of the facts and circumstances" ~~as will~~ informing Kuhl "of the specific offense, coming under the general description" of §2251(a). See United States v. Hess, 124 U.S. 483, 487 (1888). Accordingly, this specific statement goes beyond the mere general description of the offense and establishes the specific conduct that Kuhl was called to defend and the grand jury found probable cause for. However, as the jury instructions for §2251(a) offenses hold, "used" means the defendant produced the depictions himself. Thus, by allowing the jury to convict Kuhl on the government's theory that he persuaded SD to produce and send him videos, and not prove that he himself produced the videos amended the indictment and violated Kuhl's due process, the grand jury clause, and the rights to be notified of the charges and have a fair trial under the Fifth and Sixth Amendments.

PROCEED TO NEXT PAGE DUE TO EDITING

4. <u>The evidence presented for Count 2 was insufficient to prove the elements beyond a reasonable doubt. Reasons supporting this argument are:</u>

a) No texts were presented beyond 8/22/22 at trial. Accordingly, the texts presented on 8/22/22 do not display in the slightest any persuasion, inducement, enticement, or coercion of SD by Kuhl to engage in sexual activity in violation of Michigan Compiled Law 750.520d CSC Third degree.

b) SD did not verify the last time she saw Kuhl nor the last time or place they had sex. Indeed, she stated she could not recall.

c) SD could not recall when she and Kuhl had went to the hotel in front of Walmart in South Haven.

d) SD did not remember nor know of Kuhl using the alias Michael Polito at any time, let alone when going to the South Haven hotel.

e) The hotel staff member testified she did not see who actually rented the room in South Haven under the name ~~Michale~~ Michael Polito. She also testified she did not see anyone who went into or out of the room.

f) No evidence was established that Kuhl ever drove a gray Ford Focus, which was the vehicle listed as being driven by the person who rented the room on 8/24/22.

g) Clearly the jury found an insufficient nexus between the phone or internet as to the date of 8/24/22 due to their question during deliberation.

h) The government did not prove beyond a reasonable doubt that the communications underlying this charge had travelled in interstate commerce. Indeed, "<u>Gonzales's</u> first and second categories - channels and

instrumentalies - are understood to involve activities in interstate commerce." United States v. Arif, 4:20-cr-35-DPM (E.D. Ark. May 24, 2024) (referring to Gonzales v. Raich, 541 U.S. 1 (2005) and citing United States v. Bollinger, 395 F.3d 1218, 1231 (11th Cir. 2005) (en banc)). As the Supreme Court stated in Caminetti v. United States, 242 U.S. 470, 37 S. Ct. 192 (1917), "transportation of passengers in interstate commerce ... is within the regulatory power of Congress, under the commerce clause of the Constitution, and the authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question." Accordingly, it is activities in interstate commerce that are regulated under the channels of interstate commerce category. The commerce clause power "does not comprehend the purely internal domestic commerce of a State which is carried on between man and man within a State or between different parts of the same State." Kidd v. Pearson, 128 U.S. 1, 17, 20-22 (1888).

CONCLUSION

Due to the grounds brought forth in this motion, the Court should acquit Defendant of all charges' guilty verdicts. In the alternative, Count 1 should be acquitted and a new trial ordered as to Count 2 while also deciding on Kuhl's suppression motions' merits. Alternatively, Count 1 should be acquitted, as well as a partial acquittal of Count 2 as to the 8/24/22 date of the offense, and a new trial ordered for the remaining date of the Count 2 offense. Indeed, this is necessary because of the inflamattory, irrelevant, and prejudicial evidence

presented under Count 1 and the evidence beyond the remaining date of Count 2. Such remedy is in the interest of justice and necessary to prevent a miscarriage of justice.

Wherefore, Defendant respectfully requests that the Court grant the relief prayed for in this motion, and any other relief the Court deems appropriate.

Respectfully,

S. Kuhl 7/10/25

S. Kuhl 61189510

Samuel Alexander Kuhl #61189-510
Newaygo County Jail
P.O. Box 845
White Cloud, MI 49349

GRAND RAPIDS MI 493
14 JUL 2025 PM 3 L







Clerk of Court
U.S. District Court
399 Fed. Bldg.
110 Michigan NW
Grand Rapids, MI 49503

"This mail has originated from the Newaygo County Jail"

LEGAL MAIL

49503-236399