UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FILED - GR
July 16, 2025 12:00 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ns SCANNED BY: jm 7/16

UNITED STATES OF AMERICA,

v. Case No. 1:23-cr-44

SAMUEL ALEXANDER KUHL. Hon. Jane M. Beckering

# MOTION TO ARREST JUDGMENT

Defendant now comes before the Court seeking an Arrest of Judgment under Federal Rule of Criminal Procedure 34.

## LEGAL STANDARD

Under Rule 34 a defendant may move the Court to arrest judgment if the Court does not have jurisdiction of the Charged offense. Such movement by the defendant must be made within 14 days of the Court accepting a finding of guilty.

"Evidence admitted at trial is not relevant to a motion for arrest of judgment." United States v. Kernell, 742 F. Supp. 2d 904, 906 (E.D. Tenn. 2010); see also U.S. v. McLemore, 815 F. Supp. 432, 433 n.3 (S.D. Ala. 1993) ("The evidence adduced at trial, is however, not relevant to a motion for arrest of judgment under Rule 34.") (citing United States v. Sisson, 399 U.S. 267, 90 S. Ct. 2117 (1970)).

## LACK OF JURISDICTION AS TO COUNT 1

1. Count 1 of the superseding indictment failed to establish federal jurisdiction because it did not contain a statement of facts and circumstances displaying that the materials used to produce the depictions had traveled in interstate or

foreign commerce. Indeed, this this is the jurisdictional prong that the prosecution based Count 1 upon as charged. However, only the materials used to receive and store the depictions were identified as being moved in interstate or foreign commerce. Accordingly, Count 1 of the superseding indictment failed to establish the federal jurisdictional hook.

2. The Court lacks jurisdiction due to §2251(a) being unconstitutionally vague and ambiguous in violation of the Due Process Clause of the Fifth Amendment. If this argument is deemed to be improper under a Rule 34 motion challenging jurisdiction, Kuhl seeks the oppurtunity to present such argument under Rule 29 for acquittal or other appropriate authority, and if deemed untimely, Kuhl seeks a decision on the merits under Rule 45(1) for good cause and ~~exed~~ excusable neglect.

Kuhl's basis for good cause and excusable neglect is based on: (1) His status as a pro se defendant; (2) this issue was not brought to light until trial due to the Court's ruling and revelation to Kuhl of certain definitions under §2256; (3) the language of Count 1 did not use the terms "transmit" or "live visual depiction; and (4) the statutory language of §2251(a) clearly shows and led to Kuhl to believe that "transmit" would not be applied and conflated in the manner it has in his case. Under the circumstances, Kuhl brings this argument in good faith and due diligence. Further, it seems this specific argument is one of first impression.

§2251(a)'s vagueness and ambiguity rests in the lack of definition for the word "transmitted," the term "live visual depiction," as well as the existing definition of the ~~defined~~ term ~~for~~ "visual depiction." In starting off it should be noted that the only use

of the terms "transmitted" and "live visual depiction" amongst §§ 2251-2252A is in the production ~~statutes~~ provisions of § 2251. Looking to the Amendments of § 2251, it is seen that "or for the purpose of transmitting a live visual depiction of such conduct" was added to subsections (a) and (b) in 2008 due to U.S. Public Law 110-401.

U.S. Public Law Title 3 states that section 301 is to "Prohibit the broadcast of live images of child abuse." Indeed, section 301 of Title 3 specifically describes the amendments to § 2251(a), (b) concerning the ~~words~~ terms "transmitted" and "live visual depiction." This clear, indisputable evidence that the word "transmitted" applies to the broadcast or streaming of "live visual depictions" via means such as Skype, Google Duo, Facetime, Zoom, etc.

This interpretation is further supported by the well established standard that "'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" Duncan v. Walker, 533 U.S. 167, 173 (2001) (quoting Bates v. United States, 522 U.S. 23, 29-30 (1997) and ~~Rusello~~ Russello v. United States, 464 U.S. 16, 23 (1983)). Indeed, the Supreme Court has also repeatedly held that "[i]t is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed." Montclair v. Ramsdell, 107 U.S. 147, 152, 2 S. Ct. 391 (1883).

While it seems clear that the term "transmitted" applies to the broadcast of "live visual depictions," the definition of "visual depiction" under § 2256(5)

creates an unconstitutionally vague and ambiguous application of the term "transmitted." Indeed, §2256(5) states "'visual depiction' includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format." By including the term "transmitted" in the definition for "visual depiction" it takes away from the clear logical understanding that "transmitted," in the context of §2251(a), means and applies to the broadcast of "live visual depictions." This vagueness and ambiguity is compounded by the lack of definition for the terms "transmitted" and "live visual depictions." The issue is further compounded by deeming data transmitted can be stored in a ~~perfe~~ permanent format because the "transmitting" or broadcasting of a "live visual depiction" is not permanent format. Possibly the most troubling and indicating factor that this matter is causing a clear misunderstanding of the word "transmitted" in the context of §2251(a) prosecutions are the Circuit Courts' conflation of the term in a way that makes it interchable with "sending," "transferring," or "distributing" an already produced "visual depiction," via the Courts' Pattern Jury instructions.

The Seventh Circuit Pattern Criminal Jury Instructions, 18 U.S.C. §2251(a) (2020) state that the government must prove: (1) the victim was less than 18 years old; (2) the defendant employed, used, persuaded, or coerced the minor to take part in sexually explicit conduct for the purpose of producing any visual depiction of such conduct; and (3) the visual depiction

was transported or transmitted using any means or facility of interstate or foreign commerce. As can be seen, the instruction does not mention a "live visual depiction," to which the term "transmitted" only applies. Indeed, the term "transmitted" in this instance is easily interchangeable with "transported" or any similar term applicable to electronic transferring of a "visual depiction" already produced. See United States v. Ferris, 20-cr-40105-SMY (S.D. Ill. Mar. 28, 2023). Indeed, the ~~Seventh Circuit~~ Illinois N.D. Court most recently misinterpreted the term "transmitted" to apply to the travel of an individual across state lines while in possession of child pornography that had been sent to him previously. See United States v. Boltz, 20-CR-734 at 6 (N.D. Ill. Mar. 4, 2025). The Boltz Court again conflated the term "transmitted" improperly by holding that recently produced videos sent to him by the minor victim via an iPhone had been "transmitted by a facility of interstate commerce." Id.

Here, the district Court instructed the jury, in accordance with the Sixth Circuit pattern instructions, that the government must prove that the "visual depictions were produced or transmitted using materials" that had been transported" in or affecting interstate or foreign commerce by any any means, including computer." This allowed for the jury to be misled that "transmitted" simply meant the transfer of any "visual depiction," but not specifically a the broadcast of a "live visual depiction." This is especially so because of the by any means, "including computer" language because it seems that the mere sending of an image electronically meets this element and computers are commonly used for such. Indeed, it is the

other two alternative interstate commerce elements of §2251(a), which Kuhl was not charged with, that are established by the mailing, shipping, or transporting of the visual depictions in or affecting interstate comerce, which in the appropriate circumstances, applies to the sending of the depictions by digital means. However, "transmitted" only applies to "live visual depictions."

Due to the circumstances of Kuhl's case, the vague and ambiguous terms "transmitted" and "live visual depictions, §2251(a) allows for an arbitrary and irrational enforcement of the law, as well as an irreparable confusion as to what the law truly implies. Indeed, Kuhl can be, and most likely was convicted, on the jury's belief that simply receiving child pornography sent completely beyond any knowledge or intent/purpose of such reception, simply because it was sent by phone or computer.

3. The Court lacks jurisdiction over Count 2 because the use of facilities or means of interstate commerce must apply to interstate activities, which is not what is alleged against Kuhl. Furthermore, because §2422(b) does not contain the the terms "instrumentalities" or "channels" of interstate commerce, as are the two alternative categories invoking Congress' authority under the Commerce Clause apart from "affecting"; this lack of jurisdiction is further established.

Indeed, the channels and instrumentalities categories "are understood to involve activities in interstate commerce." United States v. Arif, 4:20-cr-35-DPM (E.D. Ark. May 24, 2024). Non-commercial statutory rape within a state is a paradigmatic state-law crime that does not fall

within the federal government's enumerated powers. See United States v. Morrison, 529 U.S. 598, 617 (2000). As the Supreme Court stated "undoubtedly the scope of [Congress's Commerce Clause] power must be considered in the light of our dual system of government and may not be extended so as to... obliterate the distinction between what is national and what is local and create a completely centralized government." NLRB v. Jones & Laughlin Steel Corp. 301 U.S. 1, 37 (1937). Merely using the most common and inevitable means of communication today during such non-commercial intrastate common-law criminal activity, does not invoke Congress's limited authority. Certainly, "the Federal Government has nothing approaching a police power." U.S. v. Lopez, 514 U.S. 549, 584-85 (1995) (Thomas, J., concurring).

4. The Court lacks authority and jurisdiction over this case as Michigan had custody and a criminal proceeding over the underlying conduct first. Interrupting that state proceeding is prohibited by the principles of comity and federalism, the Tenth Amendment, the Full Faith and Credit Clause, and the separation of powers clause. Indeed, Kuhl's entitled to invoke these powers to protect his liberty and due process ~~due process~~ protected by the Constitution. As the Supreme Court stated, an "individual, in a proper case, can assert injury from governmental action taken in excess of the authority that federalism defines." Bond v. United States, 564 U.S. 211 (2011).

# CONCLUSION

Relying on the grounds addressed in this pleading, Kuhl requests an arrest of judgment of both counts' verdicts of guilty. In the alternative, Kuhl seeks an arrest of judgment of either count the Court feels is warranted and a new trial on the remaining count due to the prejudice, inflammatory, and irrelevant evidence of the arrested count having an unjust and irreparably prejudicial impact on the verdict of the remaining count, and any other relief this Court feels is appropriate.

Respectfully,

/s/ S. Kuhl 7/10/25

S. Kuhl 6118956
1035 James
P.O. Box 845
White Cloud, MI 49349

S. Kuhl 611895
1035 James
P.O. Box 845
White Cloud, MI 49349

GRAND RAPIDS MI 493
14 JUL 2025 PM 3 L

"This mail has originated from the Newaygo County Jail"




Clerk of Court
U.S. Dist. Court
399 Fed. Bldg.
110 Michigan NW
Grand Rapids, MI 49503

LEGAL MAIL

49503-236399